1  David S. Kupetz (CA Bar No. 125062)
     *dkupetz@sulmeyerlaw.com*
2  Asa S. Hami (CA Bar No. 210728)
     *ahami@sulmeyerlaw.com*
3  Steven F. Werth (CA Bar No. 205434)
     *swerth@sulmeyerlaw.com*
4  **Sulmeyer**Kupetz
   A Professional Corporation
5  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California  90071-1406
6  Telephone: 213.626.2311

7  Attorneys for Debtor and Debtor in Possession, Shiekh Shoes, LLC

8              **UNITED STATES BANKRUPTCY COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

| | |
|---|---|
| 10 | In re | Case No. 2:17-bk-24626-VZ |
| 11 | | Chapter 11 |
| 12 | SHIEKH SHOES LLC,<br>a California limited liability company, | **EMERGENCY MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO:** |
| 13 | | |
| 14 | Debtor. | |
| 15 | | **(1) PAY PREPETITION CLAIM OF NIKE USA, INC., AS CRITICAL VENDOR;** |
| 16 | | **(2) INCUR POSTPETITION INDEBTEDNESS ON SUPERPRIORITY BASIS; AND** |
| 17 | | |
| 18 | | **(3) ENTER AND PERFORM UNDER AGREEMENT WITH NIKE USA, INC.;** |
| 19 | | |
| 20 | | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 21 | | [11 U.S.C. §§ 105(a), 363(b), and 364(c)(1);<br>Fed. R. Bankr. P. 4001(c); LBR 2081-1(a)(9),<br>(a)(12) and 9075-1(a)] |
| 22 | | |
| 23 | | [Omnibus Declaration of Shiekh S. Ellahi in<br>support of "first day" motions filed separately] |
| 24 | | |
| 25 | | Date:    TO BE DETERMINED<br>Time:    TO BE DETERMINED<br>Place:   Courtroom 1368 |
| 26 | | 255 East Temple Street<br>Los Angeles, CA  90012 |
| 27 | | |
| 28 | | |

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF FACTS ...................................................................................11

    A.    The Debtor.............................................................................................11

    B.    Critical Vendor Nike .............................................................................12

    C.    Events Precipitating This Bankruptcy Case ..........................................13

    D.    The Debtor's Bankruptcy Case ..............................................................14

II.   THE NIKE AGREEMENT ..................................................................................15

III.  THIS COURT SHOULD APPROVE THE NIKE AGREEMENT .....................16

    A.    The Court Should Authorize The Payments to Nike as a Critical Vendor .............16

    B.    The Court Should Authorize The Post-Petition Indebtedness on a
Superpriority Basis ................................................................................18

    C.    The Debtor Seeks Interim And Final Orders Granting The Motion ........20

        1.    Interim Relief .............................................................................20

        2.    Final Approval............................................................................21

    D.    The Court Should Waive Any Stay of Any Order Granting The Motion ................21

IV.   CONCLUSION ....................................................................................................22

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*Armstrong World Inds., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*,
    29 B.R. 391 (S.D.N.Y. 1983) ................................................................. 17

*Bray v. Shenandoah S&L Ass'n (In re Snowshoe Co., Inc.)*,
    789 F.2d 1085 (4th Cir. 1986) .............................................................. 19

*Burchinal v. Central Washington Bank (In re Adams Apple, Inc.)*,
    829 F.2d 1484 (9th Cir. 1987) .............................................................. 16

*Czyzewski v. Jevic Holding Corp.*,
    137 S. Ct. 973 (2017) ......................................................................... 17

*In re American Suzuki Motor Corp.*,
    Case No. 12-22808 (Bankr. C.D. Cal. Nov. 7, 2012) ................................ 17

*In re Ames Dept. Stores*,
    115 B.R. 34 (Bankr. S.D.N.Y. 1990) ..................................................... 20

*In re Fleetwood Enters.*,
    427 B.R. 852 (Bankr. C.D. Cal. 2010) .................................................. 19

*In re Ionosphere Clubs, Inc.*,
    98 B.R. 174 (Bankr. S.D.NY.Y. 1989) .................................................. 16

*In re Iridium Operating LLC*,
    478 F.3d 452 (2nd Cir. 2007) .............................................................. 17

*In re ISE Corporation*,
    Case No. 10-14198 (Bankr. S.D. Cal. Dec. 8, 2010) ................................ 18

*In re Simasko Production Co.*,
    47 B.R. 444 (D. Co. 1985) ................................................................. 20

*In re Structurlite Plastics Corp.*,
    86 B.R. 922 (Bankr. S.D. Ohio 1988) ................................................... 17

*In re Tropical Sportswear Int'l Corp.*,
    320 B.R. 15 (Bankr. M.D. Fla. 2005) ................................................... 17

*In re Victor Valley Community Hospital*,
    Case No. 10-39537 (Bankr. C.D. Cal., Sept. 17, 2010) ............................ 18

*In re Woodside Group, LLC*,
    Case No. 08-20682 (Bankr. C.D. Cal. Aug. 27, 2008) .............................. 18

*Weinstein, Eisen & Weiss, LLP v. Gill (In re Cooper Commons, LLC)*,
    424 F.3d 963 (9th Cir. 2005) .............................................................. 16

**SulmeyerKupetz, A Professional Corporation**
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**<u>STATUTES</u>**

11 U.S.C.
    § 105(a) ........................................................................................................ 16

11 U.S.C.
    § 363 ............................................................................................................ 17

11 U.S.C.
    § 363(b) ....................................................................................................... 16

11 U.S.C.
    § 364(c) ....................................................................................................... 18

11 U.S.C.
    § 364(c)(1) ................................................................................................... 19

**<u>RULES</u>**

Fed. R. Bankr. P.
    Rule 4001(c)(2) ........................................................................................... 20

Fed. R. Bankr. P.
    Rule 6004(h) .......................................................................................... 21, 22

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

2612694

1  **TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES**

2  **BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE,**

3  **SECURED CREDITORS, AND OTHER PARTIES IN INTEREST:**

4  **<u>EMERGENCY MOTION</u>**

5  Shiekh Shoes, LLC, a California limited liability company, debtor and debtor in possession

6  in the above-captioned case (the "<u>Debtor</u>"), pursuant to 11 U.S.C. §§ 105(a), 363(b), and

7  364(c)(1), Rule 4001(c) of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy

8  Rules 2081-1(a)(9), 2081-1(a)(12), 4001-2, and 9075-1(a), hereby moves this Court for interim

9  and final orders: (1) authorizing the Debtor to pay the pre-petition claim of Nike USA, Inc.

10  ("<u>Nike</u>") as the Debtor's critical vendor pursuant to agreement with Nike (the "<u>Nike Agreement</u>");

11  (2) authorizing the Debtor to incur post-petition indebtedness on a superpriority basis in favor of

12  Nike in accordance with Nike Agreement; (3) authorizing the Debtor to enter and otherwise

13  perform under the Nike Agreement; (4) waiving any stay of the order under Rule 6004(h) of the

14  Federal Rules of Bankruptcy Procedure; and (5) providing ancillary relief (the "<u>Motion</u>").  A true

15  and correct copy of the Nike Agreement is attached hereto as <u>Exhibit 1</u>.[1]

16  **<u>SPECIFIC RELIEF SOUGHT AND NEED FOR RELIEF ON EMERGENCY BASIS</u>**

17  On November 29, 2017 (the "<u>Petition Date</u>"), the Debtor commenced the above-captioned

18  bankruptcy case.  The Debtor is a retailer of shoes, apparel, and accessories.  As of the Petition

19  Date, the Debtor operates 124 retail locations in California, Nevada, Arizona, Texas, New Mexico,

20  Oregon, Washington, Illinois, Michigan, and Tennessee.  The Debtor also generates significant

21  revenue through online sales.

22  The Debtor's operations have not been profitable in recent years.  The Debtor commenced

23  this reorganization case in order to pursue implementation of a restructuring of its operations,

24  leases, and debt.  The Debtor believes that a successful overall reorganization would maximize the

25  value of the Estate, provide for payment to unsecured creditors, and allow the Debtor to emerge

26  ───────────────────

27  [1] In addition to the Debtor and Nike, the Debtor's principal (Shiekh S. Ellahi), and his spouse (Brenda L. Hastings), are party to the Nike Agreement.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

2612694

1

1  from chapter 11 with a reorganized and viable ongoing business.  However, a successful

2  restructuring that would maintain the Debtor's current business model and without a significant

3  alteration in the Debtor's operations will require the cooperation of Nike.

4        The Debtor is a longtime customer of Nike. Nike is the Debtor's critical, key supplier and

5  vendor.  Indeed, Nike's products account for more than 60% of the Debtor's gross revenues.  For

6  approximately 25 years, Nike shipped product to the Debtor on credit (like most vendors), which

7  the Debtor paid down monthly.  Nike holds the largest unsecured claim against the Debtor.  As of

8  the Petition Date, Nike asserts a general unsecured claim in the sum of approximately

9  $16,040,021.01 on account of products and goods supplied to the Debtor, much of which is

10  currently past due.

11        Nike product is also critical to the Debtor's current overall business model.  In early 2015,

12  to ensure it retained its most critical vendor, the Debtor commenced store remodels according to

13  various Nike designs and specifications.  Those store remodels initially were funded by a $15

14  million loan the Debtor's founder and Chief Executive Officer, Shiekh S. Ellahi ("Ellahi"),

15  provided to the Debtor.  To date, the Debtor has remodeled 61 of its 124 stores at a cost of

16  approximately $30 million, with the hope that the return on its investment would be realized in

17  years to come.

18        In October 2017, Nike finance indicated the line of credit extended to the Debtor needed to

19  be paid down significantly and relegated the Debtor to pre-pay all orders before being shipped.

20  Prior to execution of the Nike Agreement, Nike determined that, based upon payment trends,

21  financial conditions and other economic factors, Nike was unwilling to continue to supply Shiekh

22  with product, even on a cash-in-advance basis

23        The Debtor does not believe it would be in a position to successfully reorganize its affairs

24  in a manner that maintains its current product presentation, product mix, and overall business

25  concept and operations absent Nike's continued supply of products and its cooperation in this

26  case.  Moreover, the holiday season has already commenced and the Debtor must gear up for this

27  season by, among other things, preparing for various inventory liquidation sales.  As a result, the

28  Debtor needs Nike to resume shipping the Debtor products immediately to ensure the Debtor has

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    sufficient time to receive, catalogue, and properly display the products at the Debtor's various

2    stores and to otherwise be in a position to leverage and take full advantage of the holiday season.

3    <u>**THE NIKE AGREEMENT AND SUMMARY OF TERMS AND CONDITIONS**</u>

4        In anticipation of the filing of the present bankruptcy case, the Debtor and Nike engaged in

5    extensive negotiations to reach an agreement under which Nike would agree to continue supplying

6    the Debtor with product immediately.  Those negotiations were successful.  More specifically, the

7    parties entered the following agreement under which the Debtor will commence payments to Nike

8    on account of its pre-petition debt as a critical vendor, in exchange for Nike's resumption of

9    shipments to the Debtor on credit terms, with all outstanding indebtedness owed to Nike afforded

10   superpriority administrative status:[2]

11       1.    <u>Critical Vendor Status</u>:  The Debtor will file a motion in this bankruptcy case set

12   for the "first day" hearing seeking approval of the Nike Agreement and Nike as a critical vendor in

13   this case pursuant to sections 363 and 364 of the Bankruptcy Code (the "<u>Critical Vendor</u>

14   <u>Motion</u>").  Any Critical Vendor Motion and order approving the Critical Vendor Motion must be

15   approved by Nike prior to submission to the Court for approval or entry.  Nike will be the only

16   critical vendor addressed in the Critical Vendor Motion.  The Critical Vendor Motion may seek

17   initial interim and subsequent final approval..

18       2.    <u>Critical Vendor Terms</u>:  If the Critical Vendor Motion is approved by the Court in

19   form and substance acceptable to Nike (the "<u>Critical Vendor Order</u>"), Nike will ship its products

20   to the Debtor only on the following terms and conditions:

21           a.    Prior to Nike's shipment of any product to the Debtor, the Debtor will wire

22   $1,000,000 to Nike, which Nike may apply to its earliest outstanding invoices (the "<u>Pay Down</u>

23   <u>Payment</u>").

24           b.    In addition to the Pay Down Payment, the Debtor will pay Nike an amount

25

26   _____

27   [2] The following is only a summary of the salient terms and conditions of the Nike Agreement.  A true and correct copy of the Nike Agreement is attached hereto as <u>Exhibit 1</u>.  In the event of any inconsistency between the actual Nike Agreement and the present summary, the Nike Agreement controls.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    equal to the full value of the product to be shipped, including taxes, fees, freight, shipping, and

2    costs (the "New Product Payment," and together with the Pay Down Payment, the "Payments").

3              c.        Upon receipt of the Payments, Nike will ship products to the Debtor in a

4    value, which includes taxes, fees, freight, shipping, and costs, equivalent to the New Product

5    Payments.  This product shall be invoiced (the "New Product Invoices") to the Debtor on terms

6    that require payment within 10 days following the date of the invoice; provided, however, that the

7    parties understand and agree that the satisfaction of the New Product Invoices shall be in

8    accordance with the payment and other relevant terms of the Nike Agreement.  For the avoidance

9    of doubt, the Debtor's failure to pay the New Product Invoices within 10 days following the date

10   of the invoice shall not constitute an Event of Default.

11             d.        Any payments Nike receives from the Debtor pursuant to the Critical

12   Vendor Order and/or this Agreement will be applied to satisfy the oldest outstanding invoices first

13   (including pre-petition invoices).

14             e.        For each $1,000,000 that Nike receives in Pay Down Payments, Nike will

15   ship a maximum of $3,000,000 in product, including taxes, fees, freight, shipping, and costs, to the

16   Debtor subject to Nike's receipt of the Payments in advance of shipping.  For the avoidance of

17   doubt, for every $4,000,000 million in Payments Nike receives, Nike will ship $3,000,000 in new

18   product, including taxes, fees, freight, shipping, and costs, to the Debtor.

19             f.        Nothing contained in the Nike Agreement shall obligate Nike to continue to

20   conduct business with the Debtor, and Nike may, in its sole discretion, determine not to accept or

21   otherwise fulfill any orders placed by the Debtor, without regard to whether the order was placed

22   prior to, or following, the negotiation and execution of the Nike Agreement.  Nike reserves the

23   right to accept, or not accept (in its sole discretion) any order already placed, or to be placed, by

24   the Debtor.  Nothing herein requires Nike to accept any Debtor orders, ship any product to the

25   Debtor (including on account of orders previously placed by the Debtor and/or accepted by Nike),

26   provide goods or services to the Debtor, or extend the Debtor any credit.  Notwithstanding the

27   termination of this Agreement or any Event of Default under the Nike Agreement, to the extent

28   that the Debtor has made any Payment(s) under section 2.a or 2.b of the agreement, Nike is

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

2612694

4

1  required to ship product ordered with respect to such Payment(s) under section 2.c of the

2  agreement or will return such Payment(s) to the Debtor.

3       3.    <u>Superpriority Administrative Claim Status</u>:  All outstanding amounts due and owing

4  to Nike will be entitled to super-priority administrative claim status pursuant to section

5  364(c)(1) of the Bankruptcy Code (the "<u>Superpriority Claims</u>"). The Superpriority Claims shall

6  be subject to a carve-out (the "<u>Carve-Out</u>") for fees and expenses of professionals retained by the

7  estate (each a "<u>Professional</u>") that are actually allowed in the case and provided for in the

8  Debtor-in-Possession cash collateral and/or financing budget and shall be subordinate to the

9  Senor Lender Claims (as defined below). During the Case, Shiekh may pay (as permitted by any

10  subsequent Order of the Court) fees and costs of Professionals in accordance with any cash

11  collateral and/or financing budget approved by the Court.

12       4.    <u>Senior Lender</u>.

13          a.    The Superpriority Claims of Nike shall be subordinate to any and all claims,

14  liens, and security interests of State Bank and Trust Company (as successor-by-merger to Alostar

15  Bank, "<u>Senior Lender</u>"), including, without limitation, all claims, liens, and security interests of

16  Senior Lender (collectively, the "<u>Senior Lender Claims</u>") arising under, or in connection

17  with, (i) any credit facility provided by Senior Lender to Shiekh before the Petition Date, and

18  (ii) any credit facility provided by Senior Lender to Shiekh on or after the Petition Date (any

19  such credit facility, a "<u>Senior Postpetition Facility</u>"). Subject to Bankruptcy Court approval, the

20  Superpriority Claims of Nike shall be senior to and have priority over all other superpriority

21  claims in the Case (other than the Senior Lender Claims) unless Nike consents to different

22  treatment in writing.

23          b.    Except to the extent set forth in any order entered by the Bankruptcy Court

24  approving any Senior Postpetition Facility (any such order, a "<u>Senior Postpetition Facility</u>

25  <u>Order</u>"), Shiekh will not cause any other superpriority claims to be incurred in the Case without

26  Nike's written consent.

27          c.    Nike acknowledges and agrees that: (i) it will not be entitled to receive any

28  further Payments after Senior Lender's delivery of a notice of termination of any Senior

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

2612694

1  Postpetition Facility unless and until all Senior Lender Claims have been paid in full, (ii) Nike will

2  not assert any rights of reclamation, repossession, stoppage in transit, or other similar rights with

3  respect to any product shipped by, or on behalf of, Nike to Shiekh (any such product, "Nike

4  Product") unless and until all Senior Lender Claims have been paid in full, (iii) Nike does not

5  assert any security interest in any Nike Product, and (iv) Nike will be deemed to have consented to

6  any disposition of any Nike Product to the extent that Senior Lender has given its consent to such

7  disposition.

8       5.    <u>Shipping and Delivery</u>.  It is understood by and between the parties that Nike will

9  use reasonable efforts to meet expected shipping and delivery time for product provided to the

10  Debtor; however, the actual delivery date of product may be dependent upon third-party logistics

11  companies, and is inherently outside of Nike's control.  Nike does not guaranty or warrant that any

12  product ordered during the pendency of the business relationship contemplated by the Nike

13  Agreement will be received by the Debtor on a particular date, and it shall not be a default or

14  breach of the Nike Agreement if product is not received by a date expressly (or impliedly)

15  requested.

16       6.    <u>Availability of Nike Products</u>.  Subject to Nike's receipt of the Payments, Nike will

17  make product available for the Debtor's orders currently open with Nike for November 2017 and

18  December 2017 product.  At the Debtor's request, Nike will consider, in its sole discretion,

19  making available certain styles to the Debtor from Nike's October product.  Other October 2017

20  orders, and the remaining September 2017 orders will be cancelled.  Nike does not guaranty or

21  warrant that any product ordered during the pendency of the business relationship contemplated by

22  the Nike Agreement will be available to the Debtor, and it shall not be a default or breach of the

23  Nike Agreement if product is not available.

24       7.    <u>Automatic Stay Relief</u>.  To the extent necessary, the Debtor hereby stipulates to

25  relief from the automatic stay of section 362 of the Bankruptcy Code to permit Nike to cancel any

26  orders and take any and all other actions necessary to effectuate the provisions of the Nike

27  Agreement.

28       8.    <u>No Impact on Product Allocations</u>.  Nothing is the Nike Agreement shall be

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

2612694

construed to increase, alter, amend, replace, rescind, or change, in any way, the product allocations afforded to the Debtor by Nike.  All product allocations remain in Nike's sole discretion, and Nike expressly reserves the right to alter, modify, amend, increase or decrease the allocation of any Nike product to the Debtor (at any time prior to, or following, the execution of the Nike Agreement and/or the filing of the chapter 11 petition).  For the avoidance of doubt, Nike product allocations to the Debtor remain subject to reconsideration.  To the extent necessary, the Debtor hereby stipulates to relief from the automatic stay of section 362 of the Bankruptcy Code to permit Nike to effectuate any of the provisions of this subsection or the Nike Agreement in its entirety.

    9.    <u>Release</u>:  As more particularly set forth in the Nike Agreement, the Debtor releases Nike from any and all claims, including, but not limited to, all avoidance actions under Chapter 5 of the Bankruptcy Code.

    10.    <u>No Discharge of Claim</u>:  Nike's outstanding balance will not be discharged through any confirmed plan or discharge granted pursuant to the Bankruptcy Code; rather, Nike will be entitled to continued Pay Down Payments prior to shipping any product in addition to each New Product Payment until the total outstanding balance the Debtor owes to Nike is reduced to zero (without regard to whether such paydown occurs during, or after, the confirmation and effective date of a plan of reorganization or liquidation).  After the entire outstanding balance the Debtor owes Nike is reduced to zero, the Nike Agreement shall terminate if not terminated already.  Nike will evaluate a credit application from the reorganized debtor entity to determine what, if any, credit will be provided to the Debtor on a go-forward basis.  No terms will be considered until the entire outstanding balance the Debtor owes to Nike is paid in full, and nothing set forth herein shall be construed as an offer of credit terms to the reorganized debtors.  Any extension of credit by Nike to the Debtor shall be in Nike's sole discretion.

    11.    <u>Personal Guaranty</u>:  Contemporaneously with the execution of the Nike Agreement, Mr. and Mrs. Shiekh Ellahi will each execute a personal guaranty as set forth in schedule B to the Nike Agreement in favor of Nike for the entire outstanding balance the Debtor owes to Nike (the "<u>Personal Guaranty</u>").  The Personal Guaranty is a condition precedent to Nike's execution and performance under the terms of the Nike Agreement.  The Personal Guaranty shall immediately

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    terminate the earlier of  (i) the date upon which all of Nike's accounts payable balances have been

2    paid in-full, or (ii) Nike unilaterally decides to stop shipping any orders placed by the Debtor

3    based upon the payment terms above—it being expressly understood that the decision to terminate

4    shipping shall not trigger termination of the Personal Guaranty if: (i) an Event of Default[3] has

5    occurred under the terms of the Nike Agreement; or (ii) the failure to ship is based upon

6    unavailability of product.  The Personal Guaranty shall also terminate in the event that a chapter

7    11 plan is not approved in the Debtor's bankruptcy case, the Debtor files a motion seeking court

8    approval of a complete liquidation of the Debtor's assets, or the Debtor's chapter 11 case is

9    converted to a chapter 7 case, or dismissed.

10            12.    Court Approval:  The Nike Agreement, including all of its terms and conditions, is

11   subject to approval of the Court.

12            Conditioned upon approval of the Debtor's "first day" motion for authority to obtain post-

13   petition financing and related relief (the "DIP Financing Motion"), the Debtor's Senior Lender,

14   State Bank and Trust Company, has informed the Debtor that the terms and conditions of the Nike

15   Agreement are acceptable to it.  In accordance with the proposed Senior Postpetition Facility ,

16   there will be no surcharge to the Senior Lender's collateral.  The budget for the DIP Financing

17   Motion (the "Budget") accounts for the various payments to be made to Nike on the present

18   arrangement and otherwise factors the terms and conditions of the Nike Agreement into the

19   Budget.

20            As noted above, the Nike Agreement was reached only after extensive arms-length

21   negotiations between the parties, their representatives and counsel.  Prior to execution of the Nike

22   Agreement, Nike determined that based upon payment trends, financial conditions, and other

23   economic factors, Nike was unwilling to continue to supply the Debtor with product, even on a

24   cash-in-advance basis.  Absent these terms and conditions, including the Court's approval of this

25   Nike Agreement, and certain assurances of payment set forth in the Nike Agreement, Nike

26   remains unwilling to resume supplying the Debtor with product.  This would force the Debtor to

27

28   [3] "Event of Default" is defined in section 13 of the Nike Agreement.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    completely shift its business focus and otherwise alter its business model and operations in order

2    to achieve a successful reorganization in this case.

3         For these reasons and as discussed in more detail below, and given the critical role Nike

4    and its product play in the Debtor's entire business concept, the Debtor believes Nike is a critical

5    vendor and supplier, the reinitiation of supply and other consideration granted by Nike under the

6    Nike Agreement are of significant value to the Debtor, and the Nike Agreement, and its terms and

7    conditions, are essential to this case and are in the best interests of the Estate and its creditors.

8         A copy of mandatory F 4001-2 form required by LBR 4001-2(a) is attached hereto as

9    Exhibit 2.  The proposed form of interim order on this Motion is attached hereto as Exhibit 3.  The

10   proposed form of final order on this Motion is attached hereto as Exhibit 4.

11        This Motion is based upon these moving papers, the accompanying memorandum of points

12   and authorities, the concurrently-filed omnibus declaration of Shiekh S. Ellahi (the "Ellahi

13   Declaration"), the record in this case, the arguments and representations of counsel, and any other

14   evidence or argument that may be presented prior to or at the hearing on this Motion.

15       **WHEREFORE**, the Debtor respectfully requests that this Court: (1) grant the Motion; (2)

16   set an initial, interim hearing on the Motion on an emergency basis; (3) grant the Motion and

17   related Nike Agreement on an interim basis pending a final hearing on the Motion to permit the

18   Debtor to make any Pay Down Payments and New Product Payments to Nike that the Debtor

19   deems necessary in its business judgment to obtain necessary product from Nike pending a final

20   hearing, in exchange for the corresponding shipment from Nike, to avoid immediate and

21   irreparable harm, and to allow Nike to apply the Pay Down Payments to its pre-petition claim

22   (with all other terms of the Nike Agreement remaining subject to final approval at a final hearing);

23   (4) set a final hearing on the Motion at the earliest available time that is within 14 days after the

24   interim hearing; (5) approve the Nike Agreement on a final basis and authorizing the Debtor and

25   Nike to perform under the Nike Agreement; (6) authorize the Debtor to make any payments to

26   Nike as a critical vendor as required under the Nike Agreement; (7) authorize the Debtor to incur

27   post-petition indebtedness on a superpriority administrative claim basis in favor of Nike in an

28   amount necessary to permit the Debtor to acquire Nike product in accordance with the Nike

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   Agreement; (8) allow all outstanding amounts due and owing to Nike as a superpriority

2   administrative claim basis (subject to the Carve-Out and subordinate to the superpriority claims of

3   Senior Lender); (9) waive any stay of any order granting the Motion imposed by Rule 6004(h) of

4   the Federal Rules of Bankruptcy Procedure; and (10) provide such other and further relief as is

5   proper.

6   Dated: November 29, 2017                    **Sulmeyer**Kupetz
                                                 A Professional Corporation

7

8

9                                        By:    */s/ David S. Kupetz*
                                                David S. Kupetz
10                                              Asa S. Hami
                                                Steven F. Werth
11                                              Attorneys for Shiekh Shoes, LLC
                                                Debtor and Debtor in Possession
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

2612694

1

## MEMORANDUM OF POINTS AND AUTHORITIES[4]

2    The Debtor hereby submits the following memorandum of points and authorities in support

3    of the Motion.

4    ### I.

5    ### STATEMENT OF FACTS

6    **A.**    **The Debtor**

7    The Debtor is a retailer of footwear, apparel, and accessories.  The Debtor's business

8    includes the Shiekh Shoes, Eilatan, TiltedSole and Karmaloop segments.  Founded in 1991 with

9    its first store in Hayward, California, the Debtor currently operates 124 specialty retail stores

10   across ten states (California, Arizona, Nevada, Texas, Washington, Oregon, New Mexico, Illinois,

11   Miami, and Tennessee), as well as websites under the domain names ShiekhShoes.com,

12   Shiekh.com, Karmaloop.com, TiltedSole.com, and FBRKclothing.com.

13   The Shiekh Shoes business segment of the Debtor focuses on serving the urban subculture

14   inspired by hip-hop, fashion, entertainment, and sports.  It offers a wide selection of premium

15   shoes and apparel, as well as its own private line of women's footwear and the newly launched

16   FBRK line of men's apparel.

17   The Debtor's fashion forward retailer, Eilatan and TiltedSole.com, focus on selling higher-

18   end and highly unique shoes and apparel catering to the young fashionista or trendy consumer

19   looking for an edge.  Currently there is only one Eilatan store located in the Beverly Center Mall

20   in west Los Angeles, and three Tilted Sole shoe stores located in Canoga Park, California, Irvine,

21   California, and Tukwila, Washington.

22   The Debtor's Karmaloop business segment (Karmaloop.com) is a leading edge "e-tailer"

23   featuring the latest and greatest in contemporary fashion.  Founded in 1999 and acquired by the

24   Debtor in March of 2016, Karmaloop is ahead of the curve and prides itself on exposing

25   consumers to new brands and trends on its linked e-commerce sites karmaloop.com, plndr.com,

26   _____

27   [4] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the motion to
which this memorandum of points and authorities is appended.

28

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  and kazbah.com.

2      The Debtor is a California limited liability company formed on or about January 14, 2014.

3  Prior to the Debtor's formation, Ellahi owned and operated the company as a sole proprietorship

4  doing business as Shiekh Shoes.

5      As of the Petition Date, the Debtor operates 124 leased retail locations in the various states

6  identified above.  The Debtor also generates significant revenue through online sales.

7      As of at or about the Petition Date, the Debtor has secured debt in approximate sum of

8  $7,169,546.65 from the Senior Lender.  The Debtor also has secured debt in the sum of

9  $10,000,000 from its junior secured lender Comvest Capital II, L.P., as agent for Karmaloop, LLC

10  ("Comvest," and together with the Senior Lender, the "Secured Parties").  For reasons set forth in

11  the Ellahi Declaration, the Debtor disputes the Comvest claim.

12  **B.**    **Critical Vendor Nike**

13      Nike holds the largest unsecured claim against the Debtor.  As of the Petition Date, Nike

14  asserts a general unsecured claim in the sum of approximately $16,040,021.01 on account of

15  products and goods supplied to the Debtor, much of which is currently past due.

16      Nike is the Debtor's critical, key supplier and vendor.  Nike's products (Nike and Jordan

17  brands) account for more than 60% of the Debtor's gross revenues.  In addition, the Nike product:

18  (i) is premium product that the Debtor is able to sell at a relatively high margin, generating

19  substantially more than the cost of the product; (ii) sells quickly; and (iii) drives more traffic to the

20  Debtor's stores and websites.  As such, the Debtor has expended considerable resources over the

21  years in order to maintain its relationship with Nike, including constructing specially-branded

22  space in each of its stores for Nike product, developing special marketing campaigns and launch

23  events, providing dedicated training of store managers and sales associates on all Nike product, as

24  well as executing on Nike's biggest initiative to date requiring the remodeling all the Debtor's

25  Shiekh Shoes stores beginning in 2015.

26      Nike product is also critical to the Debtor's overall business model.  In early 2015,

27  recognizing the significance of Nike product to the Debtor's business and to ensure the Debtor

28  retained its most critical vendor, the Debtor expended substantial funds and resources remodeling

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   retail stores in a manner geared towards the marketing and sale of Nike product.  Those store

2   remodels initially were funded by a $15 million loan Ellahi provided to the Debtor.  The store

3   remodels has already been done at 61 of the Debtor's stores at a cost of approximately $30

4   million, with the hope that the return on its investment would be realized in years to come.

5        The Debtor is a longtime Nike customer.  For approximately 25 years, Nike shipped

6   product to the Debtor on credit (like most vendors), which the Debtor paid down monthly.  Nike

7   historically has required Ellahi to personally guarantee credit it extended to the Debtor.  Ellahi's

8   personal guarantee was permitted to expire, however, when he contributed personal funds to

9   substantially pay down the Nike line at the end of 2016.

10        More recently, Nike determined that based upon payment trends, financial conditions and

11   other economic factors, Nike was unwilling to continue to supply the Debtor with product, even

12   on a cash-in-advance basis.  Prior to the commencement of the Debtor's chapter 11 case, the

13   Debtor and its counsel participated in discussions and negotiations with Nike and its counsel with

14   the goal of obtaining Nike's commitment to resume shipping (which negotiations ultimately

15   resulted in the Nike Agreement).

16        Needless to say, only Nike is capable of supplying the Debtor with Nike product.  Nike's

17   goods are not replaceable without severe disruption and irreparable harm to the Debtor's current

18   business model and overall operations.  As a result, Nike and its product are critical to the

19   Debtor's current operations.

20   **C.    Events Precipitating This Bankruptcy Case**

21        In early 2012, the Debtor was looking for opportunities to expand its business into the

22   Midwest.  At the time, Sportsland, Inc., was operating a franchised chain of 45 Athlete's Foot

23   stores, principally located in the metropolitan areas of Chicago and Detroit.  The franchisor,

24   however, had recently lost its biggest and most profitable supplier, Nike.  Initially, the Debtor

25   considered acquiring all 45 stores, but as negotiations progressed only 34 of the most promising

26   locations were acquired.  Once the acquisition was final in late 2012, the Debtor began directing

27   significant resources to transitioning the 34 new stores, during which time the Debtor continued to

28   work on solidifying approval from Nike's Midwest team.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    Unfortunately, by the end of 2014, as construction was nearing completion, the Debtor was

2    unable to obtain approval from Nike's Midwest team.  The Debtor immediately pivoted and began

3    developing a store-closure plan to get out of the Midwest.  And as of today, only four of the

4    original 34 Midwest stores remain in operation.  By early 2018, the Debtor hopes to complete the

5    closure of all of its Midwest stores.  The financial repercussions of the failed entry into the

6    Midwest marketplace, coupled with declining store revenues due to the rise of e-commerce, has

7    made it increasingly difficult for the Debtor to turn a profit in recent years.

8    In October 2017, Nike finance indicated the line of credit extended to the Debtor needed to

9    be paid down significantly and relegated the Debtor to pre-pay all orders before being shipped.

10    Subsequently, Nike determined that, based upon payment trends, financial conditions and other

11    economic factors, Nike was unwilling to continue to supply Shiekh with product, even on a cash-

12    in-advance basis (except pursuant to the Nike Agreement).

13    The challenges described and, in the general retail environment, have negatively impacted

14    the Debtor's profitability.

15    **D.    The Debtor's Bankruptcy Case**

16    On November 29, 2017, the Debtor commenced this case.  The Debtor commenced this

17    reorganization case in order to pursue implementation of a restructuring of its operations, leases,

18    and debt.  The Debtor believes that a successful overall reorganization would maximize the value

19    of the Estate, provide for payment to unsecured creditors, and allow the Debtor to emerge from

20    chapter 11 with a reorganized and viable ongoing business.  However, a successful restructuring

21    that would maintain the Debtor's current business model and without a significant alteration in the

22    Debtor's operations will require the cooperation of Nike.

23    The Debtor does not believe it would be in a position to successfully reorganize its affairs

24    in a manner that maintains its current product presentation, product mix, and overall business

25    concept and operations absent Nike's continued supply of products.  Moreover, the very important

26    holiday season has already commenced and the Debtor must gear up for this season by, among

27    other things, preparing for various inventory liquidation sales.  As a result, the Debtor needs Nike

28    to resume shipping the Debtor products immediately to ensure the Debtor has sufficient time to

1   receive, catalogue, and properly display the products at the Debtor's various stores and to

2   otherwise be in a position to leverage and take full advantage of the holiday season.

3                                        **II.**

4                           **THE NIKE AGREEMENT**

5           The Debtor and Nike (together with their respective counsel) engaged in extensive, arms-

6   length negotiations to reach an agreement under which Nike would agree to continue supplying

7   the Debtor with product immediately.  The Nike Agreement is the culmination of those

8   negotiations.  As set forth more specifically in the Nike Agreement, and as summarized below, the

9   parties agreed to payment of Nike's pre-petition debt in exchange for Nike's shipment to the

10  Debtor of new product on credit terms, with all indebtedness granted superpriority administrative

11  status.  A true and correct copy of the Nike Agreement is attached hereto as <u>Exhibit 1</u>.  A

12  summary of the salient terms and conditions of the agreement are set forth above in the Motion.[5]

13          Conditioned upon approval of the DIP Financing Motion, the Senior Lender has informed

14  the Debtor that the terms and conditions of the Nike Agreement are acceptable to it.  In accordance

15  with the proposed Senior Postpetition Facility, there will be no surcharge to the Senior Lender's

16  collateral.  The Budget accounts for the various payments to be made to Nike on the present

17  arrangement and otherwise factors the terms and conditions of the Nike Agreement into the

18  Budget.

19          Absent the terms and conditions in the Nike Agreement, as well as the Court's approval of

20  this Nike Agreement, and certain assurances of payment set forth in the Nike Agreement, Nike is

21  unwilling to resume supplying the Debtor with product.  This would force the Debtor to

22  completely alter its business model and operations in order to achieve a successful reorganization

23  in this case.

24          For these reasons, and given the critical role Nike and its product play in the Debtor's

25  entire business concept, the Debtor believes Nike is a critical vendor and supplier, the reinitiation

26  _____

27  [5] In the event of any inconsistency between the actual Nike Agreement and the summary above, the Nike
    Agreement controls.

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    of supply and other consideration granted by Nike in the Nike Agreement are of significant value

2    to the Debtor, and the Nike Agreement, and its terms and conditions, are essential to this case and

3    are in the best interests of the Estate and its creditors.

4                                                **III.**

5                   **THIS COURT SHOULD APPROVE THE NIKE AGREEMENT**

6    **A.       The Court Should Authorize The Payments to Nike as a Critical Vendor**

7                   The Court may authorize payment of prepetition claims in appropriate circumstances based

8    on sections 105(a) and 363(b) of the Bankruptcy Code.  Section 105(a), which codifies the

9    inherent equitable powers of the bankruptcy court, empowers a bankruptcy court to "issue any

10   order, process, or judgment that is necessary or appropriate to carry out the provisions of this

11   title."  Under section 105(a), courts may permit pre-plan payments of prepetition obligations when

12   essential to the continued operation of a debtor's business.

13                  The Ninth Circuit has acknowledged that payment of prepetition claims is appropriate in

14   certain circumstances.  For instance, in *Burchinal v. Central Washington Bank (In re Adams*

15   *Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987), the Ninth Circuit acknowledged the importance

16   of paying certain prepetition claims in a reorganization case, even when the claimants are provided

17   an advantage over other creditors:

18                    [A] "fundamental tenet" -- rehabilitation of debtors . . . may
                      supersede the policy of equal treatment.  Cases have permitted
19                    unequal treatment of pre-petition debts when necessary for
                      rehabilitation, in such contexts as (i) pre-petition wages to key
20                    employees; (ii) hospital malpractice premiums incurred prior to
                      filing; (iii) debts to providers of unique and irreplaceable supplies;
21                    and (iv) peripheral benefits under labor contracts.

22   *Adams Apple*, 829 F.2d at 1490 (citation omitted).  *See also*, *Weinstein, Eisen & Weiss, LLP v.*

23   *Gill (In re Cooper Commons, LLC)*, 424 F.3d 963, 969 (9th Cir. 2005) (citing *Adams Apple* for its

24   rejection of the fundamental tenet of bankruptcy law that like creditors must always be treated

25   alike).

26                  Courts have also authorized payment of prepetition obligations under section 363(b) of the

27   Bankruptcy Code where a sound business purpose exists for doing so.  *See, e.g., In re Ionosphere*

28   *Clubs, Inc.*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

certain claims); *Armstrong World Inds., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 to allow contractor to pay prepetition claims); *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks.").

More recently, the United States Supreme Court tacitly sanctioned payments on pre-petition claims to critical vendors, as well as "roll up" agreements and other transactions that do not directly comport with the Bankruptcy Code's payment priority scheme, under appropriate circumstances. In *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017), the Supreme Court discussed *In re Iridium Operating LLC*, 478 F.3d 452 (2nd Cir. 2007), and noted the following:

> We recognize that *Iridium* is not the only case in which a court has approved interim distributions that violate ordinary priority rules. But in such instances one can generally find significant Code-related objectives that the priority-violating distributions serve. Courts, for example, have approved "first day" wage orders that allow payment of employees' wages, "critical vendor" orders that allow payment of essential suppliers' prepetition invoices, and "roll-ups" that allow lenders who continue financing the debtor to be paid first on their prepetition claims. [Citations omitted]. In doing so, these courts have usually found that the distributions at issue would "enable a successful reorganization and make even the disfavored creditors better off." [Citation omitted].

*Jevic*, 137 S. Ct. at 985.

The various courts' approaches to payment of prepetition claims, which the Supreme Court acknowledged, is particularly appropriate where prepetition creditors — here, Nike — provide vital goods to a debtor that would be unavailable if the debtor did not satisfy its prepetition obligations. *See In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) ("a bankruptcy court may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of survival of the debtors and payment of creditors in full or at least proportionately'").

Bankruptcy courts in the Ninth Circuit authorize payments to vital suppliers and trade creditors where the payment of such claims is essential for the continued operation of the business. *See, e.g., In re American Suzuki Motor Corp.,* Case No. 12-22808 (Bankr. C.D. Cal. Nov. 7, 2012)

1    [Docket No. 69] (authorizing payment of claims critical vendors such as equipment suppliers and

2    IT service providers); *In re ISE Corporation*, Case No. 10-14198 (Bankr. S.D. Cal. Dec. 8, 2010)

3    [Docket No. 276] (authorizing payment of critical vendor prepetition claim); *In re Victor Valley*

4    *Community Hospital*, Case No. 10-39537 (Bankr. C.D. Cal., Sept. 17, 2010) [Docket No. 34]

5    (authorizing the debtor to pay prepetition claims of emergency room doctors, medical director

6    doctors, and nursing registries who were critical vendors); *In re Woodside Group, LLC*, Case No.

7    08-20682 (Bankr. C.D. Cal. Aug. 27, 2008) [Docket No. 18] (approving stipulation allowing

8    debtors to pay ordinary course providers of goods and services in the ordinary course of business).

9        There is no legitimate dispute that Nike is a critical vendor.  As discussed above, among

10    other things:

11        • the large majority of the Debtor's gross revenues are from Nike products;

12        • the Nike product is premium product that the Debtor is able to sell at a relatively

13    high margin generating significant profits for the Debtor, sells quickly, and drives more traffic to

14    the Debtor's stores and websites;

15        • the Debtor has expended substantial resources and funds over the years in order to

16    maintain its relationship with Nike;

17        • the Debtor has expended substantial funds -- at least approximately $30 million --

18    remodeling 61 of its stores to meet Nike's requirements, constructing specially-branded space in

19    each of its stores for Nike product, developing special marketing campaigns and launch events,

20    and providing dedicated training of store managers and sales associates on all Nike product;

21        • the Debtor's primary business model has been directed towards the marketing and

22    sales of Nike products; and

23        • a successful reorganization in this case that maintains the Debtor's current business

24    concept and one that would benefit all constituencies (including, as the Supreme Court put it,

25    "disfavored creditors") requires the continued and immediate supply of Nike product (which Nike

26    will not permit without approval of the Nike Agreement).

27    **B.    <u>The Court Should Authorize The Post-Petition Indebtedness on a Superpriority Basis</u>**

28        Section 364(c) provides, in part:

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt--

2

3

> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title[.]

4

5    11 U.S.C. § 364(c)(1). The only requirement to authorize the Debtor's "obtaining of credit or the

6    incurring of debt" post-petition on a "superpriority" basis is the Debtor's inability to obtain the

7    same with "priority under section 503(b)(1)." As one court explained:

8

> The language of § 364(c)(1) is clear enough -- a debtor's authority to obtain unsecured credit under that subsection is expressly premised on its inability to obtain credit under § 503(b)(1), i.e. as an allowable administrative expense under § 364(b). *There is no other legislative requirement under the statute*.

9

10

11    *In re Fleetwood Enters.*, 427 B.R. 852, 858 (Bankr. C.D. Cal. 2010) (emphasis added). The

12    Debtor satisfies this requirement.

13    As explained above, the Nike Agreement essentially "rolls up" Nike's pre-petition debt,

14    provides for the Debtor's incurring of additional post-petition debt and obtaining of related credit

15    with Nike's agreement to supply the Debtor with new product on credit terms as set forth, and on

16    the terms and conditions, in the Nike Agreement. In addition, the Nike Agreement elevates all

17    outstanding amounts due and owing to Nike to superpriority administrative claim status pursuant

18    to section 364(c)(1) of the Bankruptcy Code to be paid ahead of all other administrative claims,

19    subject to the Carve-Out and subordinate to the Senior Lender's claims.

20    The products the Debtor needs for its current business operations, especially to take full

21    advantage of the current holiday season, are Nike products. Only Nike could deliver these

22    products to the Debtor and its immediate recommencement of shipment of such product to the

23    Debtor is essential (as discussed above). Needless to say, therefore, the present arrangement could

24    not have been made with any party other than Nike.[6]

25

26

27    [6] Even if it could, it is well established that the "statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *See, e.g.*, *Bray v. Shenandoah S&L Ass'n (In re Snowshoe Co., Inc.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). Rather, in determining whether to approve a the

28    (footnote continued)

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

2612694

1        The Nike Agreement was extensively negotiated in the lead up to the filing of this case.

2   The terms and conditions set forth in the Nike Agreement, including, but not limited to, the grant

3   of superpriority status to Nike's claim, were reached following arms-length negotiations between

4   the parties and their counsel, and represent the only terms and conditions under which Nike agreed

5   to resume supplying the Debtor with Nike product.  In other words, there is no question that the

6   proposed postpetition indebtedness is only available if it is afforded "priority over any or all

7   administrative expenses of the kind specified in section 503(b) or 507(b) of this title" (except for

8   the carve-out for fees and costs of Estate professionals and subordinate to the Senior Lender's

9   claims).

10       Without the Nike Agreement, the Debtor would need to alter its business concept entirely

11  to achieve a successful reorganization in this case and avoid liquidation.  The Nike Agreement

12  avoids any such substantial shift in the Debtor's business model, allows the Debtor to maintain its

13  current operations, and will facilitate a successful reorganization in this case.  Moreover, the

14  Senior Lender informed the Debtor that, conditioned on approval of the DIP Financing Motion,

15  the Nike Agreement is acceptable to it.

16  **C.**   **The Debtor Seeks Interim And Final Orders Granting The Motion**

17      **1.**   **Interim Relief**

18       The Motion is brought pursuant to Bankruptcy Rule 4001(c)(2) and, as set forth above, the

19  Debtor seeks interim approval of the Nike Agreement.  More particularly, pending a final hearing

20  on the Motion, the Debtor seeks interim approval of the Motion and related Nike Agreement, but

21  only:

22      (i)  to authorize (but not direct) the Debtor to make an initial Pay Down Payment of

23  _____

24  incurring of postpetition debt, the Court should give broad deference to the business decision of a chapter
11 debtor, particularly with respect to a debtor's business judgment regarding the need for and proposed

25  use of funds.  *See, e.g.*, *In re Simasko Production Co.*, 47 B.R. 444, 448-49 (D. Co. 1985) (authorizing
interim financing agreement where debtor's best business judgment indicated financing was necessary and

26  reasonable for the benefit of the estate); *In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990)
(with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business

27  judgment consistent with their fiduciary duties).  For all the same reasons discussed above, the Nike
Agreement falls within the Debtor's appropriate business judgment.

28

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   $1,000,000 and related New Product Payment of $3,000,000 (for a total of $4,000,000),  in

2   exchange for the corresponding shipment from Nike as set forth in the Nike Agreement;

3          (ii) to authorize (but not direct) the Debtor to make any further Pay Down Payments and

4   related New Product Payments to Nike that the Debtor deems necessary in its business judgment

5   to obtain necessary product from Nike pending a final hearing, in exchange for the corresponding

6   shipment from Nike, to avoid immediate and irreparable harm; and

7          (iii) to permit Nike to apply any of the Pay Down Payments made pursuant to the interim

8   order to its pre-petition claim.

9          All other terms and conditions of the Nike Agreement, including, but not necessarily

10  limited to, Nike's application of any New Product Payments made in accordance with the interim

11  order to satisfy the oldest outstanding invoices first (including any pre-petition invoices) and the

12  elevation of any of Nike's outstanding claim to superpriority status, shall remain subject to final

13  approval of the Motion and Nike Agreement at a final hearing.

14         Authorizing such interim relief is necessary.  The interim relief sought will ensure Nike

15  begins shipping product immediately to the Debtor and, in turn, the Debtor will avoid any

16  immediate and irreparable harm to its ongoing business operations, especially in light of the

17  current holiday season.

18         **2.      Final Approval**

19         The Debtor also seeks final approval of the Motion and Nike Agreement following a final

20  hearing on the Motion.  The Debtor seeks a final hearing on the Motion no  later than 14 days after

21  the interim hearing.

22  **D.      The Court Should Waive Any Stay of Any Order Granting The Motion**

23         The Debtor seeks a waiver of any stay of the effectiveness of the order approving this

24  Motion.  Pursuant to Rule 6004(h) of the Bankruptcy Rules, "[a]n order authorizing the use, sale

25  or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of

26  the order, unless the court orders otherwise." As set forth in the Motion, the payments proposed

27  herein are essential to prevent immediate and irreparable harm to the Debtor's current business

28  operations and prospects for reorganization.  Accordingly, the Debtor submits that ample cause

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the

2  extent that it applies.

3                                        IV.

4                                  **CONCLUSION**

5            For the reasons set forth above, the Motion should be granted.

6

7  Dated:  November 29, 2017                **Sulmeyer**Kupetz
                                           A Professional Corporation
8

9

10                                         By: */s/ David S. Kupetz*_____
                                               David S. Kupetz
11                                             Asa S. Hami
                                               Steven F. Werth
12                                             Attorneys for Shiekh Shoes, LLC
                                               Debtor and Debtor in Possession
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

**<u>Critical Vendor Supply and Credit Agreement and Payment Plan</u>**

This Critical Vendor Supply and Credit Agreement and Payment Plan, dated as of
_____ (the "Agreement") is made by and among Shiekh Shoes, LLC ("Shiekh"),
Shiekh S. Ellahi, Brenda L. Hastings, and Nike USA, Inc. ("Nike," with Shiekh, the "Parties"),
and provides as follows:

WHEREAS, Shiekh is a retailer of shoes, apparel, and accessories and a longtime
customer of Nike; and

WHEREAS, Nike products constitute approximately 60% of Shiekh's sales, and Shiekh
has determined that the sale of Nike products are integral to Shiekh's business; and

WHEREAS, on November 27, 2017 (the "Petition Date"), Shiekh commenced a chapter
11 bankruptcy reorganization case pursuant to title 11 of the United States Code (the
"Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California
– Los Angeles Division (the "Court") numbered 17-[_____] (the "Case") and has determined
that a supply of Nike products immediately after the filing of the Case is essential to Shiekh's
reorganization efforts; and

WHEREAS, the immediate supply of Nike product is especially critical given that the
very important holiday shopping season has already commenced; and

WHEREAS, based upon the foregoing, Shiekh has determined that Nike is a critical, key
supplier and vendor, and this Agreement will allow Shiekh to continue to operate while
attempting to reorganize its businesses in chapter 11, for the benefit of all creditors; and

WHEREAS, Nike desires to continue doing business with Shiekh, but solely upon the
terms set forth in this Agreement; and

WHEREAS, the execution of this Agreement will allow Shiekh to continue to sell Nike's
products for the benefit of Shiekh's creditors and furtherance of its reorganization efforts; and

WHEREAS, prior to the execution of this Agreement, Nike determined that based upon
payment trends, financial conditions and other economic factors, Nike was unwilling to continue
to supply Shiekh with product, even on a cash-in-advance basis; and

WHEREAS, Nike remains unwilling to conduct business with Shiekh during the
pendency of the Case without certain assurances of payment from Shiekh as set forth below; and

WHEREAS, Shiekh acknowledges that it will receive substantial direct and indirect
benefits from the execution, delivery, and performance of the obligations under this Agreement,
and is, therefore, willing to enter into this Agreement; and

WHEREAS, Shiekh agrees that the reinitiation of supply and other consideration granted
by Nike in this Agreement are of significant value to the Shiekh, such that the execution of this
Agreement, and the concomitant granting of the rights set forth herein, and the payments made to
Nike pursuant to the business relationship contemplated by this Agreement, represent a

1

EXHIBIT 1  -  23

contemporaneous exchange of reasonably equivalent value by and among the Customer and Nike, and provide the Customer with breathing room to reduce its obligations to Nike over time.

NOW THEREFORE, in consideration of the foregoing promises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Shiekh and Nike hereby agree as follows:

1. <u>Critical Vendor Status</u>. Shiekh will file a motion in the Case set for the "first day" hearing seeking approval of this Agreement and Nike as a critical vendor in the Case pursuant to sections 363 and 364 of the Bankruptcy Code (the "Critical Vendor Motion"). Any Critical Vendor Motion and order approving the Critical Vendor Motion must be approved by Nike prior to submission to the Court for approval or entry. Nike will be the only critical vendor addressed in the Critical Vendor Motion. The Critical Vendor Motion may seek initial interim and subsequent final approval.

2. <u>Critical Vendor Terms</u>. If the Critical Vendor Motion is approved by the Court in form and substance acceptable to Nike (the "Critical Vendor Order"), Nike will ship its products to Shiekh only on the following terms and conditions:

a. Prior to Nike's shipment of any product to Shiekh, Shiekh will wire $1 million to Nike, which Nike may apply to its earliest outstanding invoices (the "Pay Down Payment").

b. In addition to the Pay Down Payment, Shiekh will pay Nike an amount equal to the full value of the product to be shipped, including taxes, fees, freight, shipping, and costs (the "New Product Payment," and together with the Pay Down Payment, the "Payments").

c. Upon receipt of the Payments, Nike will ship products to Sheikh in a value, which includes taxes, fees, freight, shipping, and costs, equivalent to the New Product Payments. This product shall be invoiced (the "New Product Invoices") to Shiekh on terms that require payment within 10 days following the date of the invoice ("Net 10 Terms"); provided, however, that the parties understand and agree that the satisfaction of the New Product Invoices shall be in accordance with the payment and other relevant terms of this Agreement, including, without limitation subsections 2.a. and 2.b. And for the avoidance of doubt, Shiekh's failure to pay the New Product Invoices within 10 days following date of the invoice shall not constitute an Event of Default.

d. Any payments Nike receives from Shiekh pursuant to the Critical Vendor Order and/or this Agreement will be applied to satisfy the oldest outstanding invoices first (including pre-petition invoices).

e. For each $1 million that Nike receives in Pay Down Payments, Nike will ship a maximum of $3 million in product, including taxes, fees, freight, shipping, and costs, to Shiekh subject to Nike's receipt of the Payments in advance of shipping. For the avoidance of doubt, for every $4 million in Payments Nike receives, Nike will ship $3 million in new product, including taxes, fees, freight, shipping, and costs, to Shiekh.

2

EXHIBIT 1  -  24

f.   Nothing contained in this Agreement shall obligate Nike to continue to conduct business with Shiekh, and Nike may, in its sole discretion, determine not to accept or otherwise fulfill any orders placed by Shiekh, without regard to whether the order was placed prior to, or following, the negotiation and execution of this Agreement. Nike reserves the right to accept, or not accept (in its sole discretion) any order already placed, or to be placed, by Shiekh. Nothing herein requires Nike to accept any Shiekh orders, ship any product to Shiekh (including on account of orders previously placed by Shiekh and/or accepted by Nike), provide goods or services to Shiekh, or extend Shiekh any credit.  Notwithstanding the termination of this Agreement or any Event of Default under this Agreement, to the extent that Shiekh has made any Payment(s) under Section 2.a or 2.b of this Agreement, Nike is required to ship product ordered with respect to such Payment(s) under Section 2.c herein or will return such Payment(s) to Shiekh.

3.    _Superpriority Administrative Claim Status_.  All outstanding amounts due and owing to Nike will be entitled to super-priority administrative claim status pursuant to section 364(c)(1) of the Bankruptcy Code (the "Superpriority Claims").  The Superpriority Claims shall be subject to a carve-out (the "Carve-Out") for fees and expenses of professionals retained by the estate (each a "Professional") that are actually allowed in the case and provided for in the Debtor-in-Possession cash collateral and/or financing budget and shall be subordinate to the Senor Lender Claims (as defined below).  During the Case, Shiekh may pay (as permitted by any subsequent Order of the Court) fees and costs of Professionals in accordance with any cash collateral and/or financing budget approved by the Court.

4.    _Senior Lender_.

a.   The Superpriority Claims of Nike shall be subordinate to any and all claims, liens, and security interests of State Bank and Trust Company (as successor-by-merger to Alostar Bank, "Senior Lender"), including, without limitation, all claims, liens, and security interests of Senior Lender (collectively, the "Senior Lender Claims") arising under, or in connection with, (i) any credit facility provided by Senior Lender to Shiekh before the Petition Date, and (ii) any credit facility provided by Senior Lender to Shiekh on or after the Petition Date (any such credit facility, a "Senior Postpetition Facility").  Subject to Bankruptcy Court approval, the Superpriority Claims of Nike shall be senior to and have priority over all other superpriority claims in the Case (other than the Senior Lender Claims) unless Nike consents to different treatment in writing.

b.   Except to the extent set forth in any order entered by the Bankruptcy Court approving any Senior Postpetition Facility (any such order, a "Senior Postpetition Facility Order"), Shiekh will not cause any other superpriority claims to be incurred in the Case without Nike's written consent.

c.   Nike acknowledges and agrees that: (i) it will not be entitled to receive any

3

EXHIBIT 1   -   25

further Payments after Senior Lender's delivery of a notice of termination of any Senior Postpetition Facility unless and until all Senior Lender Claims have been paid in full, (ii) Nike will not assert any rights of reclamation, repossession, stoppage in transit, or other similar rights with respect to any product shipped by, or on behalf of, Nike to Shiekh (any such product, "Nike Product") unless and until all Senior Lender Claims have been paid in full, (iii) Nike does not assert any security interest in any Nike Product, and (iv) Nike will be deemed to have consented to any disposition of any Nike Product to the extent that Senior Lender has given its consent to such disposition.

5.    <u>Shipping and Delivery</u>.  It is understood by and between the parties that Nike will use reasonable efforts meet expected shipping and delivery time for product provided to Shiekh; however, the actual delivery date of product may be dependent upon third-party logistics companies, and is inherently outside of Nike's control.  Nike does not guaranty or warrant that any product ordered during the pendency of the business relationship contemplated by this Agreement will be received by Shiekh on a particular date, and it shall not be a default or breach of this Agreement if product is not received by a date expressly (or impliedly) requested.

6.    <u>Availability of Nike Products</u>.  Subject to Nike's receipt of the Payments, Nike will make product available for Shiekh's orders currently open with Nike for November 2017 and December 2017 product.  At Shiekh's request, Nike will consider, in its sole discretion, making available certain styles to Shiekh from Nike's October product.  Other October 2017 orders, and the remaining September 2017 orders will be cancelled.  Nike does not guaranty or warrant that any product ordered during the pendency of the business relationship contemplated by this Agreement will be available to Shiekh, and it shall not be a default or breach of this Agreement if product is not available.

7.    <u>Automatic Stay Relief</u>.  To the extent necessary, Shiekh hereby stipulates to relief from the automatic stay of section 362 of the Bankruptcy Code to permit Nike cancel any orders (including, without limitation, those referenced in section 5 above) and take any and all other actions necessary to effectuate the provisions of this Agreement.

8.    <u>No Impact on Product Allocations</u>.  Nothing is this Agreement shall be construed to increase, alter, amend, replace, rescind, or change, in any way, the product allocations afforded to Shiekh by Nike.  All product allocations remain in Nike's sole discretion, and Nike expressly reserves the right to alter, modify, amend, increase or decrease the allocation of any Nike product to Shiekh (at any time prior to, or following, the execution of this Agreement and/or the filing of the chapter 11 petition).  For the avoidance of doubt, Nike product allocations to Shiekh, remain subject to reconsideration.  To the extent necessary, Shiekh hereby stipulates to relief from the automatic stay of section 362 to permit Nike to effectuate any of the provisions of this subsection or this Agreement in its entirety.

9.    <u>Release</u>.  In consideration for this Agreement and the availability of critical products from Nike, and subject to approval by the Bankruptcy Court on a final basis, Shiekh Shoes, LLC, along with its subsidiaries, affiliates, and entities under common ownership and/or control, on behalf of themselves, their respective bankruptcy estates, their respective predecessors, successors and assigns (collectively, the "<u>Releasing Debtor Parties</u>") and all

4

current and former officers, directors, employees, shareholders, members, partners, agents, attorneys, professionals, successors and assigns of the Releasing Debtor Parties, do forever release, acquit, waive, and discharge Nike USA, Inc. and its parent entities, subsidiaries, affiliates, and entities under common ownership and/or control, and their respective current and former officers, directors, employees, shareholders, members, partners, agents, attorneys, professionals, successors and assigns (collectively, the "Released Nike Parties") from any and all claims, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, including, but not limited to avoidance actions pursuant to chapter 5 of the Bankruptcy Code (collectively, "Liabilities"), whether such Liabilities are liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity or otherwise (including without limitation any Liabilities for contribution, cross-claim, indemnity or otherwise in connection with any past, current or future litigation), that could have been or may be asserted by or on behalf of any Releasing Debtor Parties, whether directly, indirectly, derivatively or in any representative or any other capacity, against the Released Nike Parties from the beginning of time.

10.    No Discharge of Claim.  Nike's outstanding balance will not be discharged through any confirmed plan or discharge granted pursuant to the Bankruptcy Code; rather, Nike will be entitled to continued Pay Down Payments prior to shipping any product in addition to each New Product Payment until the total outstanding balance Shiekh owes to Nike is reduced to zero (without regard to whether such paydown occurs during, or after, the confirmation and effective date of a plan of reorganization or liquidation).  After the entire outstanding balance Sheikh owes Nike is reduced to zero, this Agreement shall terminate if not terminated already. Nike will evaluate a credit application from the reorganized debtor entity to determine what, if any, credit will be provided to Shiekh on a go-forward basis.  No terms will be considered until the entire outstanding balance Shiekh owes to Nike is paid in full, and nothing set forth herein shall be construed as an offer of credit terms to the reorganized debtors.  Any extension of credit by Nike to Shiekh shall be in Nike's sole discretion.

11.    Personal Guaranty.  Contemporaneously with the execution of this Agreement, Mr. and Mrs. Shiekh Ellahi will each execute a personal guaranty as set forth in schedule B in favor of Nike for the entire outstanding balance Shiekh owes to Nike (the "Personal Guaranty"). The Personal Guaranty is a condition precedent to Nike's execution and performance under the terms of this Agreement.  The personal guaranty shall immediately terminate the earlier of (i) the date upon which all of Nike's accounts payable balances have been paid in-full, or (ii) Nike unilaterally decides to stop shipping any orders placed by Shiekh based upon the payment terms above—it being expressly understood that the decision to terminate shipping shall not trigger termination of the personal guaranty if: (i) an Event of Default has occurred under the terms of this Agreement; or (ii) the failure to ship is based upon unavailability of product.  The personal guaranty shall also terminate in the event that a chapter 11 plan is not approved in Shiekh's bankruptcy case, Shiekh files a motion seeking court approval of a complete liquidation of Shiekh's assets, or Shiekh's chapter 11 case is converted to a chapter 7 case, or dismissed.

12.    Court Approval.  This Agreement, including all of its terms and conditions, is subject to approval of the Court. Unless otherwise agreed upon by Nike, the terms and conditions of this Agreement are not severable, and failure to obtain Court approval of this Agreement, in

5

EXHIBIT 1 - 27

its entirety and in a Court order in form and substance acceptable to Nike, shall excuse the Parties' performance under the terms of this Agreement

13.    <u>Events of Default</u>.  If any of the following occur (each, an "Event of Default"), Nike may declare this Agreement in default and exercise any of the Default Remedies set forth below: (i) Shiekh fails to satisfy or perform any obligations due to, or requested by, Nike under this Agreement; or (ii) Shiekh fails to make any Payments required by this Agreement; or (iii) Shiekh fails to seek approval of this Agreement from the Court at the first day hearing set for the Case.  The Parties understand and agree that initially interim approval may be sought, with a subsequent hearing scheduled to address final approval of this Agreement.  Any waiver by Nike of any Event of Default under this Agreement must be reflected in a written agreement signed by an authorized representative of Nike.  Furthermore, Nike's waiver of an Event of Default or right on one occasion shall not: (i) waive any other Event of Default or right; (ii) constitute a continuing waiver; or (iii) waive that Event of Default or right on any other occasion.

14.    <u>Default Remedies</u>.  If Nike declares an Event of Default, Nike shall be immediately entitled to exercise any and all Default Remedies immediately upon the occurrence of an Event of Default without the need to request relief from the automatic stay of section 362 of the Bankruptcy Code, and without further notice to, or consent by, Shiekh: (i) accelerate all outstanding balances due to Nike; and (ii) terminate this Agreement, and/or all orders and shipments to Shiekh; and (iii) take any other action permitted by law and this Agreement. Notwithstanding the foregoing, to the extent that Shiekh has made any Payment(s) under Section 2.a or 2.b of this Agreement, Nike is required to ship product ordered with respect to such Payment(s) under Section 2.c herein or will return such Payment(s) to Shiekh.  Subject to the priorities set forth in this Agreement and the Bankruptcy Code, Nike may apply any funds received from exercising any Default Remedy at Nike's discretion.  Nike's failure or delay in the exercise of any of its rights, remedies, or Default Remedies, whether before or after an Event of Default, shall not operate as a waiver of that Event of Default or impair Nike's right to enforce fully and strictly that right, Default Remedy, or remedy or any other provision of this Agreement. Without in any way limiting the preceding, Nike's acceptance of a late payment, acceptance of interest at a default rate, or granting of any other accommodation to Shiekh shall not constitute a waiver of, or affect Nike's rights to exercise, any rights, remedies, or Default Remedies described in this Agreement or otherwise.  Nothing herein or in this Agreement's entirety shall be interpreted to limit any remedy available at law or equity to Nike if an Event of Default occurs.

<u>Other Material Terms and Conditions:</u>

15.    This Agreement shall in all respects be interpreted, construed, enforced, and governed under the laws of the State of Oregon and the United States of America.  THE UNITED NATIONS CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS WILL NOT APPLY.  From the Petition Date through the earlier of the following: (i) the effective date of any chapter 11 plan, (ii) the dismissal of the Case, or (iii) the final decree in the Case if the Case is converted to a case under chapter 7 of the Bankruptcy Code (collectively, the "Event"), any disputes hereunder or related in any manner to this Agreement, including, without limitation, any dispute relating to the interpretation, meaning or effect of any

6

parties hereof, will be resolved and must be filed in the United States Bankruptcy Court for the Central District of California – Los Angeles Division, to the extent Bankruptcy Court has jurisdiction of this matter.  After any Event, the Nike USA, Inc. Account Agreement by and between Nike and Shiekh (the "Account Agreement") shall govern.  The Parties agree that the Bankruptcy Court has core jurisdiction over this matter only after the Petition Date and prior to any Event (the "Jurisdiction Period"), and to the extent the Bankruptcy Court does not have core jurisdiction, the Parties consent to the Bankruptcy Court's jurisdiction over this matter during the Jurisdiction Period only.

16.    This Agreement shall be deemed jointly drafted by Shiekh and Nike, and the terms and provisions of this Agreement shall not be construed against any party.

17.    This Agreement shall be binding on Shiekh and their respective successors and assigns and shall inure to the benefit of Nike, Senior Lender, and each of their successors and assigns.

18.    Notices pursuant to this Agreement are deemed to be provided when sent and shall be by electronic mail unless otherwise stated herein addressed:

to Nike:

Jay Eckhardt
Assistant General Counsel
Nike USA, Inc.
One Bowerman Drive
FF-2
Beaverton, OR 97005
Email: Jay.Eckhardt@nike.com

to Shiekh:

Shiekh Shoes, LLC
1777 South Vintage Avenue
Ontario, CA 91761
Attention:  Shiekh Ellahi
Tel:  510-754-6916
Email:  shiekh@shiekhshoes.com

19.    Time is of the essence in this Agreement.

20.    This Agreement may be executed in counterparts and may be delivered electronically pursuant to paragraph 18 above.  Any copy so executed and delivered, when taken with another executed copy, shall be considered and deemed an original hereof.

21.    Shiekh and the undersigned, on behalf of Shiekh, represent and warrant that they have full power and authority to execute this Agreement on Shiekh's behalf and on behalf of all

7

EXHIBIT 1  -  29

entities listed on Schedule A.  Subject to Court approval, Shiekh and the undersigned, on behalf of Shiekh, further represent and warrant that they have the full power and authority to perform all obligations under this Agreement on Shiekh's behalf and on behalf of all entities listed on Schedule A.

22.    The terms of this Agreement shall be afforded full force and effect if terms between this Agreement and any particular invoice conflict.  Unless specifically modified herein, the Account Agreement remains in full force and effect.

23.    The terms of this Agreement may only be modified pursuant to further written agreement executed by both parties.

24.    Shiekh is not entering into this Agreement based upon any representations or warranties of Nike.


Dated:                                              _____
                                                    By:_____
                                                    For: Nike USA, Inc.

Dated:                                              _____
                                                    By:_____
                                                    For: Shiekh Shoes, LLC

Dated:                                              _____
                                                    Mrs. Brenda L. Hastings


Dated:                                              _____
                                                    Mr. Shiekh S. Ellahi

ATL 22496487v6

EXHIBIT 1  -  30

## Schedule A

Subsidiaries, Affiliates, and Entities under Common Ownership

and/or Control of Shiekh Shoes, LLC Bound by this Agreement

Shiekh Shoes, LLC

9

EXHIBIT 1  -  31

# **Schedule B**

Personal Guaranty

10

# EXHIBIT 2

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| David S. Kupetz (CA Bar No. 125062)<br> dkupetz@sulmeyerlaw.com<br>Asa S. Hami (CA Bar No. 210728)<br> ahami@sulmeyerlaw.com<br>Steven F. Werth (CA Bar No. 205434)<br> swerth@sulmeyerlaw.com<br>SulmeyerKupetz, APC<br>333 South Hope Street, 35th Floor<br>Los Angeles, California  90071<br>Telephone 213.626.2311<br>Facsimile  213.629.4520<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:*  Shiekh Shoes, LLC, Debtor and Debtor-In-Possession | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>SHIEKH SHOES, LLC,<br>a California limited liability company,<br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:17-bk-24626-VZ |
|---|---|
| | CHAPTER: 11 |
| | **STATEMENT REGARDING CASH COLLATERAL OR DEBTOR IN POSSESSION FINANCING [FRBP 4001; LBR 4001-2]** |
| | DATE: TO BE DETERMINED<br>TIME:  TO BE DETERMINED<br>COURTROOM: 1368<br>ADDRESS:  255 East Temple Street<br>              Los Angeles, CA 90012 |

Secured party(ies): State Bank and Trust Company; Comvest Capital II, L.P. (as Administrative and Collateral Agent for Itself and other Landlords); Toyota Motor Company

The Debtor has requested the approval of either (1) a motion for use of cash collateral, or postpetition financing, or both, or (2) through a separately-filed motion, a stipulation providing for the use of cash collateral, or postpetition financing, or both. The proposed form of order on the motion or the stipulation contains the following provisions or findings of fact:

| | **Disclosures Tracking FRBP 4001(c)(1)(B)(i) through (xi) and (d)(1)(B)** | **Page No.:** | **Line No. (if applicable)** |
|---|---|---|---|
| ☒ | (i): "[A] grant of priority or a lien on property of the estate under § 364(c) or (d)" | 3 (Agmt, ¶ 3) | |
| ☒ | (ii): "[T]he providing of adequate protection or priority for a claim that arose before the commencement of thes case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim"<br>☐ Cross-collateralization, *i.e.,* clauses that secure prepetition debt by postpetition assets in which the secured party would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law<br>☒ Roll-up, *i.e.,* provisions deeming prepetition debt to be postpetition debt or using postpetition loans from a prepetition secured party to pay part or all of that secured party's prepetition debt, other than as provided in § 552(b) | 2–3 (Agmt, ¶¶ 2-3) | |

2613340.1

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| | | |
|---|---|---|
| *Continued from page 1* | | |
| ☐      Grant a replacement lien in an amount in excess of the dollar amount of the lien on cash collateral as of the petition date | | |
| ☐   (iii): "[A] determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim" | | |
| ☒   (iv): "[A] waiver or modification of Code provisions or applicable rules relating to the automatic stay"<br><br>   ☒   Automatic relief from the automatic stay upon occurrence of certain events. | 4 (Agmt, ¶ 7) | |
| ☐   (v): "[A] waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364" | | |
| ☐   (vi): "[T]he establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order" | | |
| ☐   (vii): "[A] waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien" | | |
| ☒   (viii): "[A] release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action" | 4-5 (Agmt, ¶ 9) | |
| ☐   (ix): "[T]he indemnification of any entity" | | |
| ☐   (x): "[A] release, waiver, or limitation of any right under § 506(c)"<br>   ☐   The granting of any lien on any claim or cause of action arising under § 506(c) | | |
| ☐   (xi): "The granting of any lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a)" | | |
| **Additional Disclosures Required by LBR 4001-2** | **Page No.:** | **Line No. (if applicable)** |
| ☐   With respect to a professional fee carve out, disparate treatment for professionals retained by a creditors' committee from that provided for the professionals retained by the debtor | | |
| ☒   Pay down prepetition principal owed to a creditor | 2-3 (Agmt, ¶ 2), 2-3 (Int. Order, ¶¶ 5-6) | |
| ☐   Findings of fact on matters extraneous to the approval process | | |

| | | |
|---|---|---|
| November 29, 2017 | David S. Kupetz | /s/ David S. Kupetz |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
333 South Hope Street, 35th Floor, Los Angeles, CA  90071

A true and correct copy of the foregoing document entitled: **STATEMENTREGARDING CASH COLLATERAL OR DEBTOR IN POSSESSION FINANCING [FRBP 4001; LBR 4001-2]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On *(date)* November 29, 2017 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**:
On *(date)* _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *(date)* November 29, 2017 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 29, 2017 | | /s/ |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT 3

David S. Kupetz (CA Bar No. 125062)
  *dkupetz@sulmeyerlaw.com*
Asa S. Hami (CA Bar No. 210728)
  *ahami@sulmeyerlaw.com*
Steven F. Werth (CA Bar No. 205434)
  *swerth@sulmeyerlaw.com*
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California  90071-1406
Telephone: 213.626.2311

Attorneys for Debtor and Debtor in Possession
Shiekh Shoes, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2:17-bk-24626-VZ |
| SHIEKH SHOES, LLC,<br>a California limited liability company,<br><br>Debtor. | Chapter 11<br><br>**INTERIM ORDER ON EMERGENCY MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO: (1) PAY PREPETITION CLAIM OF NIKE USA, INC., AS CRITICAL VENDOR; (2) INCUR POSTPETITION INDEBTEDNESS ON SUPERPRIORITY BASIS; AND (3) ENTER AND PERFORM UNDER AGREEMENT WITH NIKE USA, INC.**<br><br>Date:     TO BE DETERMINED<br>Time:     TO BE DETERMINED<br>Place:    Courtroom 1368<br>            255 East Temple Street<br>            Los Angeles, CA  90012 |

2612969

EXHIBIT 3   -   36

1    The "Emergency Motion of Debtor And Debtor in Possession For Interim And Final

2    Orders Authorizing Debtor to: (1) Pay Prepetition Claim of Nike USA, Inc., as Critical Vendor;

3    (2) Incur Postpetition Indebtedness on Superpriority Basis; And (3) Enter And Perform Under

4    Agreement With Nike USA, Inc." (the "Motion"), filed by Shiekh Shoes, LLC, a California

5    limited liability company, debtor and debtor in possession in the above-captioned case (the

6    "Debtor"), came on for hearing on an emergency basis on _____, 2017, at ____:____

7    ___m., before the Honorable Vincent P. Zurzolo, United States Bankruptcy Judge.  Appearances

8    were as noted on the record of the hearing.

9    This Court having considered the Motion, the agreement made by and among the Debtor,

10   Shiekh S. Ellahi, Brenda L. Hastings, and Nike USA, Inc. ("Nike"), which agreement is attached

11   as Exhibit 1 to the Motion (the "Nike Agreement"), the "Omnibus Declaration of Shiekh S. Ellahi

12   in Support of First Day Motions," all other papers filed in support of, in connection with, or

13   response to, the Motion, the record in this case, and all arguments, statements, and representations

14   of counsel on the record at the hearing; and the Motion and notice of the Motion having been

15   timely and properly served on all necessary parties in accordance with the directions of the Court

16   and the Local Bankruptcy Rules; and good cause appearing therefor, it is hereby **ORDERED** as

17   follows:

18       1.    The Motion is GRANTED on an interim basis as set forth herein.

19       2.    The Nike Agreement is approved on an interim basis as set forth herein.

20       3.    A final hearing on the Motion is set for _____, 2017, at ___:____

21   __.m., in Courtroom _____ of the above-entitled Court (the "Final Hearing").

22       4.    The Debtor may file any supplemental papers with respect to the Motion by no

23   later than _____, 2017.  Any opposition or other response to the Motion or any

24   supplemental papers the Debtor may file must be filed no later than _____, 2017.

25       5.    Pending the Final Hearing, the Debtor is authorized (but not directed) to: (i) make

26   an initial Pay Down Payment (as that term is defined in the Nike Agreement) of $1,000,000 and

27   the related New Product Payment (as that term is defined in the Nike Agreement) of $3,000,000

28   (for a total of $4,000,000), in exchange for the corresponding shipment of product from Nike as

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  set forth in the Nike Agreement; and (ii) make any further Pay Down Payment and related New

2  Product Payment to Nike that the Debtor deems necessary in its business judgment to obtain

3  necessary product from Nike pending the Final Hearing, in exchange for the corresponding

4  shipment of product from Nike, to avoid immediate and irreparable harm to the Debtor or its

5  business.

6        6.      Pending the Final hearing, Nike is authorized to apply any of the Pay Down

7  Payments made in accordance with this Order to satisfy the oldest outstanding invoices first

8  (including any pre-petition invoices).

9        7.      Except as otherwise expressly set forth in this Order, all other terms and conditions

10  of the Nike Agreement, including, but not necessarily limited to, Nike's application of any New

11  Product Payments made in accordance with this Order to satisfy the oldest outstanding invoices

12  first (including any pre-petition invoices) and the elevation of any of Nike's outstanding claim to

13  superpriority status, remain subject to final approval of the Motion and Nike Agreement at the

14  Final Hearing.  Nike is authorized to apply any Payments (as that term is defined in the Nike

15  Agreement) received in accordance with the Nike Agreement pursuant to the terms of the Nike

16  Agreement.  Any Payments made to Nike pursuant to this Interim Order, even if the Final Order is

17  not approved, shall not be subject to avoidance, disgorgement, reversal, clawback, modification,

18  reallocation, disallowance, adjustment, repeal, limitation, or any other impairment.

19        8.      Any Superpriority Claims (as defined in the Nike Agreement) of Nike shall be

20  subordinate to any and all claims, liens, and security interests of State Bank and Trust Company

21  (as successor-by-merger to Alostar Bank, "Senior Lender"), including, without limitation, all

22  claims, liens, and security interests of Senior Lender (collectively, the "Senior Lender Claims")

23  arising under, or in connection with, (i) any credit facility provided by Senior Lender to the Debtor

24  before the Petition Date, and (ii) any credit facility provided by Senior Lender to the Debtor on or

25  after the Petition Date (any such credit facility, a "Senior Postpetition Facility").  Subject to

26  Bankruptcy Court approval, the Superpriority Claims of Nike shall be senior to and have priority

27  over all other superpriority claims in the Case (other than the Senior Lender Claims) unless Nike

28  consents to different treatment in writing.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

9.      This Court recognizes that Nike has agreed to the following as part of the Nike Agreement and that such agreements shall be binding (i) Nike will not be entitled to receive any further Payments (as defined in the Nike Agreement) after Senior Lender's delivery of a notice of termination of any Senior Postpetition Facility unless and until all Senior Lender Claims have been paid in full, (ii) Nike will not assert any rights of reclamation, repossession, stoppage in transit, or other similar rights with respect to any all product shipped by, or on behalf of, Nike to the Debtor (any such product, "Nike Product") unless and until all Senior Lender Claims have been paid in full, (iii) Nike does not assert any security interest in any Nike Product, and (iv) Nike will be deemed to have consented to any disposition of any Nike Product to the extent that Senior Lender has given its consent to such disposition.

10.      Notwithstanding Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, this Order shall be effective and enforceable immediately upon its entry.

11.      This Court shall retain exclusive jurisdiction with regard to all issues or disputes arising from or relating to the implementation, interpretation, or enforcement of this Order.

# # #

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT 3  -  39

# EXHIBIT 4

1  David S. Kupetz (CA Bar No. 125062)
       *dkupetz@sulmeyerlaw.com*
2  Asa S. Hami (CA Bar No. 210728)
       *ahami@sulmeyerlaw.com*
3  Steven F. Werth (CA Bar No. 205434)
       *swerth@sulmeyerlaw.com*
4  **Sulmeyer**Kupetz
   A Professional Corporation
5  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California  90071-1406
6  Telephone: 213.626.2311

7  Attorneys for Debtor and Debtor in Possession
   Shiekh Shoes, LLC
8

9              **UNITED STATES BANKRUPTCY COURT**

10       **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

11  In re                                      Case No. 2:17-bk-24626-VZ

12                                             Chapter 11

13  SHIEKH SHOES, LLC,
    a California limited liability company,    **FINAL ORDER GRANTING**
                                               **EMERGENCY MOTION OF DEBTOR**
14                Debtor.                       **AND DEBTOR IN POSSESSION FOR**
                                               **INTERIM AND FINAL ORDERS**
15                                             **AUTHORIZING DEBTOR TO: (1) PAY**
                                               **PREPETITION CLAIM OF NIKE USA,**
16                                             **INC., AS CRITICAL VENDOR; (2) INCUR**
                                               **POSTPETITION INDEBTEDNESS ON**
17                                             **SUPERPRIORITY BASIS; AND (3)**
                                               **ENTER AND PERFORM UNDER**
18                                             **AGREEMENT WITH NIKE USA, INC.**

19                                             Date:    TO BE DETERMINED
                                               Time:    TO BE DETERMINED
20                                             Place:   Courtroom 1368
                                                        255 East Temple Street
21                                                       Los Angeles, CA 90012

22

23

24

25

26

27

28

2612984                                        EXHIBIT 4  -  40

1    The "Emergency Motion of Debtor And Debtor in Possession For Interim And Final

2    Orders Authorizing Debtor to: (1) Pay Prepetition Claim of Nike USA, Inc., as Critical Vendor;

3    (2) Incur Postpetition Indebtedness on Superpriority Basis; And (3) Enter And Perform Under

4    Agreement With Nike USA, Inc." (the "Motion"), filed by Shiekh Shoes, LLC, a California

5    limited liability company, debtor and debtor in possession in the above-captioned case (the

6    "Debtor"), came on for final hearing on _____, 2017, at ____:____ ____m., before

7    the Honorable Vincent P. Zurzolo, United States Bankruptcy Judge.  Appearances were as noted

8    on the record of the hearing.

9    This Court having considered the Motion, the agreement made by and among the Debtor,

10    Shiekh S. Ellahi, Brenda L. Hastings, and Nike USA, Inc. ("Nike"), which agreement is attached

11    as Exhibit 1 to the Motion (the "Nike Agreement"), the "Omnibus Declaration of Shiekh S. Ellahi

12    in Support of First Day Motions," all other papers filed in support of, in connection with, or

13    response to, the Motion, the record in this case, and all arguments, statements, and representations

14    of counsel on the record at the initial hearing and final hearing, and having previously granted the

15    Motion on an interim basis as set forth in the Court's "Interim Order on The Emergency Motion of

16    Debtor And Debtor in Possession For Interim And Final Orders Authorizing Debtor to: (1) Pay

17    Prepetition Claim of Nike USA, Inc., as Critical Vendor; (2) Incur Postpetition Indebtedness on

18    Superpriority Basis; And (3) Perform Under Agreement With Nike USA, Inc." [Dkt. No. ____] (the

19    "Interim Order"); and the Motion and notice of the Motion having been timely and properly

20    served on all necessary parties in accordance with the directions of the Court and the Local

21    Bankruptcy Rules; and good cause appearing therefor, it is hereby **ORDERED** as follows:

22    1.    The Motion is GRANTED on a final basis.

23    2.    The Nike Agreement is approved on a final basis.

24    3.    The Debtor and other parties to the Nike Agreement are authorized to take any and

25    all actions necessary to effectuate and perform under the Nike Agreement.

26    4.    The Debtor is authorized (but not directed) to make any and all payments to Nike

27    as a "critical vendor" in accordance with the Nike Agreement, and Nike is authorized to apply any

28    and all such payments, including any Pay Down Payments and New Product Payments, whether

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    made pursuant to the Interim Order or the present Order, to satisfy the oldest outstanding invoices

2    first (including any pre-petition invoices).

3        5.        The Debtor is authorized (but not directed) to incur post-petition indebtedness on a

4    superpriority administrative claim basis in favor of Nike in an amount necessary to permit the

5    Debtor to acquire Nike product in accordance with the Nike Agreement.

6        6.        All outstanding amounts due and owing to Nike are allowed as superpriority

7    administrative claims pursuant to 11 U.S.C. § 364(c)(1), subject to the Carve-Out for fees and

8    expenses of any Professional (as those capitalized terms are defined in the Nike Agreement) as set

9    forth in the Nike Agreement and subordinate to any claim of the Debtor's senior secured creditor,

10   Alostar Bank of Commerce, entitled to superpriority treatment under 11 U.S.C. § 364(c)(1), as set

11   forth in the Nike Agreement.

12       7.        Notwithstanding Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, this

13   Order shall be effective and enforceable immediately upon its entry.

14       8.        This Court shall retain exclusive jurisdiction with regard to all issues or disputes

15   arising from or relating to the implementation, interpretation, or enforcement of this Order.

16                                            # # #

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520