David S. Kupetz (CA Bar No. 125062)
 *dkupetz@sulmeyerlaw.com*
Asa S. Hami (CA Bar No. 210728)
 *ahami@sulmeyerlaw.com*
Steven F. Werth (CA Bar No. 205434)
 *swerth@sulmeyerlaw.com*
SulmeyerKupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California 90071-1406
Telephone: 213.626.2311

Attorneys for Debtor and Debtor in Possession
Shiekh Shoes, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:17-bk-24626-VZ |
| SHIEKH SHOES, LLC<br>a California limited liability company,<br><br>    Debtor. | Chapter 11<br><br>**NOTICE OF MOTION AND MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR AUTHORITY TO IMPLEMENT KEY EMPLOYEE RETENTION PLAN; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SHIEKH S. ELLAHI IN SUPPORT THEREOF**<br><br>Date:     January 9, 2018<br>Time:    1:00 p.m.<br>Place:   Courtroom 1368<br>         255 East Temple Street<br>         Los Angeles, CA 90012 |

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

2611876

1

## TABLE OF CONTENTS

2

**Page**

I. FACTS ...........................................................................................................................5

    A.    Background .........................................................................................5

        1.    The Debtor ...............................................................................5

        2.    Assets ........................................................................................5

        3.    Liabilities ..................................................................................5

    B.    Summary of Restructuring Goals And Means of Maximizing The Value of
The Estate .........................................................................................6

    C.    The Store Closing Sales And Lease Rejections .................................6

    D.    Employees ..........................................................................................7

        1.    General .....................................................................................7

        2.    Ryan Walker (In-House General Counsel) ...............................8

        3.    The Managers ...........................................................................9

    E.    The Proposed Retention Plan ...........................................................9

II. THE RETENTION PLAN SHOULD BE APPROVED .................................................12

    A.    Standard ..............................................................................................12

    B.    Immediate Implementation of The Retention Plan And The Corresponding
Proposed Retention Payments Are Justified by The Facts And
Circumstances of This Case ...............................................................13

III. CONCLUSION ..........................................................................................................15

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# TABLE OF AUTHORITIES

**Page**

**CASES**

*In re Borders Group, Inc.,*
        453 B.R. 459 (Bankr. S.D. N.Y. 2011) ............................................................... 14

*In re Global Aviation Holdings Inc.,*
        478 B.R. 142 (Bankr. E.D.N.Y. 2012) ............................................................... 12

**STATUTES**

11 U.S.C.
        § 101(31) ............................................................................................................. 7

11 U.S.C.
        § 503 .................................................................................................................. 12

11 U.S.C.
        § 503(b) .............................................................................................................. 12

11 U.S.C.
        § 503(c) .............................................................................................................. 12

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

2611876

ii

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1     **TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES**

2     **BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE,**

3     **SECURED CREDITORS, THE OFFICIAL COMMITTEE OF UNSECURED**

4     **CREDITORS, AND OTHER PARTIES IN INTEREST:**

5     **PLEASE TAKE NOTICE** that, on **January 9, 2018, at 1:00 p.m.**, in Courtroom 1368 of

6 the above-entitled Court, at 255 East Temple Street, Los Angeles, California 90012, before the

7 Honorable Vincent P. Zurzolo, United States Bankruptcy Judge, Shiekh Shoes, LLC, a California

8 limited liability company, the debtor and debtor in possession in the above-captioned chapter 11

9 bankruptcy case (the "Debtor"), pursuant to 11 U.S.C. § 503(c)(3), will, and hereby does, move

10 this Court for an order authorizing the Debtor to implement a key employee retention plan for

11 corporate level and managerial non-insider employees (the "Motion").

12     As more particularly set forth in the accompanying memorandum of points and authorities,

13 the Motion is made on the following grounds: As part of its overall efforts to reorganize, the

14 Debtor has already commenced inventory clearance/store closing sales at certain of its retail

15 stores, rejected two leases, currently is seeking to reject multiple other store leases, and otherwise

16 is reducing the size of its operations. Given this quick and ongoing adjustment and modification

17 to its operations, the Debtor has serious concerns that certain employees the Debtor has

18 determined is critical to the Debtor's reorganization process may seek out other employment and

19 leave the Debtor out of fear their position at the Debtor may be terminated in short order. As a

20 result, the Debtor seeks to implement a modest key employee retention program (described below)

21 for a select group of non-insider employees.

22     The employees the Debtor has identified as critical to the successful implementation and

23 achievement of its restructuring objectives and the goal of maximizing the value of the

24 bankruptcy estate (the "Estate") -- none of which are "insiders" of the Debtor as defined in 11

25 U.S.C. § 101(31) -- fall within the following two categories (collectively, the "Employees"): (1)

26 Ryan Walker, the Debtor's current in-house general counsel; and (2) Store Managers and Assistant

27 Managers at each of the Debtor's retail stores (collectively, the "Managers," and each, a

28 "Manager"). As detailed below, each of these Employees plays an essential role within the

2611876              1

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  company and are necessary to the successful implementation of the Debtor's restructuring goals.

2  Although the Debtor currently requires the continued services and employment of these

3  categories of employees as it proceeds through this chapter 11 case, as the Debtor sheds

4  unprofitable leases and stores, and generally shrinks the size of its operations, it may ultimately

5  eliminate the positions the Employees currently occupy with the Debtor. In an attempt to retain

6  these Employees in the interim and during the essential phases of this case, the Debtor seeks to

7  implement the following "Key Employee Retention Plan" (the "Retention Plan"):

8  • With respect to Mr. Walker, he shall be paid a one-time retention bonus in the amount

9  of $15,000.00 if he remains with the Debtor through January 31, 2018. Payment of the retention

10  bonus shall be made no earlier than February 1, 2018, and no later than February 5, 2018 (subject

11  to the Court's approval of the Retention Plan).

12  • With respect to the Managers, to the extent any retail store closes during this chapter

13  11 case, the Manager remains with the Debtor up to and including closure of its store, and the

14  Manager is not offered another position at another store location that remains open post-petition

15  (the "Manager Bonus Eligibility Requirements"): (a) Store Managers shall become eligible to

16  receive from the Debtor a single payment of $2,000, and (b) Assistant Managers shall become

17  eligible to receive from the Debtor a single payment of $1,000. Given the currently ongoing store

18  closing sales and the need to retain Managers at least through the conclusion of such sales, the

19  Debtor shall determine whether any particular Manager is entitled to such payment on or before

20  January 31, 2018. If any given Manager should resign or be terminated for cause before January

21  31, 2018, such Manager will not be eligible or entitled to collect, and will not receive, this

22  payment. To the extent a store closes after January 31, 2018, the Debtor seeks authority to extend

23  the foregoing program to other Managers who satisfy the Manager Bonus Eligibility

24  Requirements. The Debtor currently employs 108 Store Managers and 102 Assistant Managers.

25  This means that, even assuming all current Managers were to remain with the Debtor as indicated

26  and the Debtor determined to pay each of them the proposed bonus under the Retention Plan, the

27  maximum aggregate payout to them would be $318,000.

28  As noted above, the Debtor has serious concerns that it may lose the Employees at this

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   essential period.  With the many store closures, the Debtor's shrinking operations, and the general

2   inherent uncertainty of the reorganization process, the Employees may be concerned for their

3   future with the Debtor and, in response, may be (or may soon start) searching for new

4   employment.  If the Employees were to leave, the Debtor believes that recruiting desirable

5   replacement employees with similar skills would be difficult because of the Employees' respective

6   levels of experience and personal knowledge regarding the Debtor's business operations, as well

7   as legal matters affecting the business (in the case of Mr. Walker).  Further, it makes no sense to

8   expend the time and effort to train new employees for what may be a relatively short time period

9   that they would be needed and the inefficiencies of a substantial learning curve.

10          The Debtor's ability to maintain its business operations, preserve the value of its assets,

11   and maximize stakeholder recoveries through a successful and expedient restructuring process

12   hinges on the Debtor's ability to retain the Employees during this critical period.  The Debtor is

13   convinced that the departure of any of the Employees would have an immediate and significant

14   adverse effect on the administration of this case and bankruptcy estate (the "Estate"), the

15   operations of the Debtor's business, and maximizing the value of the Estate.  Based on the

16   foregoing, the Debtor believes there are compelling business reasons for the Debtor's immediate

17   implementation of the Retention Plan for the select group of Employees.

18          The Debtor recognizes that any payments made under the Retention Plan (to the extent

19   approved) must be consistent with the Approved Budget (as that term is defined in the Court's

20   interim order approving the postpetition financing from State Bank and Trust Company [Dkt. No.

21   74] (the "Interim DIP Order") or any other budget in place at the time the proposed payments are

22   made.

23          This Motion is based on this notice of Motion and Motion, the accompanying

24   memorandum of points and authorities, the declaration of Shiekh S. Ellahi and any exhibits

25   thereto, the record in this case, all facts and documents that are the subject of judicial notice, and

26   any further evidence or argument that may be presented prior to or at the hearing on the Motion.

27          **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-

28   1(f), any opposition or other response to the Motion must be in writing, filed with the Court, and

1  served on counsel for the Debtor at the address set forth on the upper left corner of the first page of

2  this Notice, no later than 14 days before the date of the hearing on the Motion set forth above.

3       **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-

4  1(h), the failure to timely file and serve an opposition or other response to the Motion may be

5  deemed by the Court to be consent to the relief sought in the Motion.

6       **WHEREFORE**, the Debtor respectfully requests that the Court enter an order: (1)

7  granting the Motion; (2) approving the Retention Plan; (3) authorizing (but not directing) the

8  Debtor to implement the Retention Plan and take any and all actions necessary to implement and

9  effectuate the Retention Plan; and (4) providing such other or further relief.

10  Dated:  December 19, 2017

**Sulmeyer**Kupetz
A Professional Corporation

By:      */s/ Asa S. Hami*
       Asa S. Hami
       Attorneys for Debtor and Debtor in Possession
       Shiekh Shoes, LLC

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2611876

4

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

### I.

### FACTS

**A.   Background**

    **1.   The Debtor**

The Debtor is a retailer of footwear, apparel, and accessories, with its corporate headquarters in Ontario, California. Founded in 1991 with its first store in Hayward, California, as of the Petition Date (defined below), the Debtor was operating 124 specialty retail stores across ten states (California, Arizona, Nevada, Texas, Washington, Oregon, New Mexico, Illinois, Michigan, and Tennessee), as well as websites ShiekhShoes.com, Shiekh.com, Karmaloop.com, TiltedSole.com, and FBRKclothing.com.

All of the Debtor's store locations are leased. The store leases expire at various dates through January 31, 2028. As of the Petition Date, there were five leases that were on a month-to-month basis, and eight active leases with lease payments based upon a percentage of revenue (rather a fixed monthly sum).

    **2.   Assets**

The Debtor's primary assets include: (1) inventory, which, as of at or about the Petition Date, had a current retail value in the aggregate of approximately $65,918,224.35 (with an original retail value of approximately $80,987,971.96) and cost value of approximately $35,113,347.33; (2) fixtures, furniture, and equipment with an aggregate estimated book value of approximately $11,311,083 (as of October 2017); and (3) trademarks and various intellectual properties with an estimated value of approximately $250,000.

    **3.   Liabilities**

As of at or about the Petition Date, the Debtor had secured debt in the aggregate amount of approximately $17,169,546.65 held by two parties (although the claim of the junior secured claimant is disputed). As of at or about the Petition Date, the Debtor's top 20 general unsecured

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the motion to which this memorandum of points and authorities is appended.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  creditors held claims in the aggregate of approximately $24,745,201.95 owed to various trade

2  vendors, suppliers, and other parties (although certain claims of which are disputed, contingent,

3  and unliquidated).  In addition, the Debtor's founder and Chief Executive Officer (Shiekh S.

4  Ellahi) extended a $15 million unsecured credit facility to the Debtor in January 2015.

5  **B.**    **Summary of Restructuring Goals And Means of Maximizing The Value of The Estate**

6          On November 29, 2017 (the "Petition Date"), the Debtor filed its voluntary petition for

7  relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and

8  manage its affairs as a debtor in possession in this case.

9          Various challenges relating to particular investments the Debtor made in connection with

10  its operations, declining store revenues due to the rise of e-commerce, the generally weakening

11  retail environment (among other financial and operational issues), have made it increasingly

12  difficult for the Debtor to turn a profit in recent years.  As a result, with a growing liquidity crisis,

13  and a need for reorganization, the Debtor filed this chapter 11 case.

14          The Debtor commenced this reorganization case in order to pursue implementation of a

15  restructuring of its operations, leases, and debt.  The Debtor believes that a successful overall

16  reorganization would maximize the value of the Estate, provide for payment to unsecured

17  creditors, and allow the Debtor to emerge from chapter 11 with a reorganized and viable ongoing

18  business.  However, a successful restructuring that maintains the Debtor's current business model

19  may likely require cooperation of certain stakeholders in the Debtor, including the Debtor's senior

20  secured creditor, certain suppliers, and landlords.

21          In order to protect the interests of the Estate, the Debtor also is exploring other alternatives

22  that may be implemented in the event that a restructuring through a reorganization plan is

23  determined not to be a viable approach, including liquidation options that might, if necessary, be

24  utilized to maximize the value of the Estate.

25  **C.**    **The Store Closing Sales And Lease Rejections**

26          Among the means of achieving its restructuring goals is the Debtor's pursuit of inventory

27  clearance/store closing sales (the "Store Closing Sales") and the rejection of various leases.  To

28  this end, on November 29, 2017, the Debtor filed an emergency "first day" motion to authorize the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  Debtor to conduct the Store Closing Sales (with the assistance of Gordon Brothers Retail Partners,

2  LLC, an outside consultant expert at conducting such sales) at 31 of its stores through the holiday

3  season.  These are the stores the Debtor has determined, as of this time, need to be closed,

4  following the inventory clearance sales.  The Debtor believes that under any scenario such

5  inventory clearance sales will advance the goal of maximizing the value of the Estate and benefit

6  creditors.  It may become necessary for additional stores to be closed, but as of now, 31 of the

7  stores have been identified for closure.  The Store Closing Sales are in progress and the Debtor

8  anticipates they will be completed in January 2018.

9       In addition, the Debtor has filed two separate motions relating to the rejection of multiple

10  leases.  First, on November 29, 2017, the Debtor filed a motion to reject two store leases in San

11  Diego, California, and Portland, Oregon, respectively.  On December 1, 2017, this Court entered

12  an order granting that motion.  Second, on December 6, 2017, the Debtor filed a motion for an

13  order authorizing the Debtor to reject 85 leases pursuant to a proposed notice procedure (subject to

14  the right to withdraw any given lease from the list of 85 leases to be rejected).  A hearing on this

15  second motion to reject currently is set forth December 28, 2017.

16       Further, consistent with the Debtor's restructuring goals, on December 7, 2017, the Debtor

17  filed an application to employ DJM Realty Services, LLC, d/b/a Gordon Brothers Real Estate, to

18  assist the Debtor with negotiating with its landlords to restructure and mitigate claims, as well as

19  to develop exit strategies in respect of the leases slated for rejection.

20  **D.    Employees**

21       **1.    General**

22       As of the Petition Date, the Debtor has approximately 1,743 employees.  The average

23  amount the Debtor needs for any given payroll period is approximately $1,655,000 (wages only

24  and not including benefits or employer taxes).  The Debtor also offers its full-time employees

25  various employee health plans, including, for example, medical, vision, and dental insurance.

26       Of these employees, the Debtor has determined that two categories of employees discussed

27  immediately below are critical to the Debtor's reorganization and restructuring efforts (none of

28  who is an insider of the Debtor under section 101(31) of the Bankruptcy Code).  As a result, to

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  incentivize these two groups of employees to remain in the Debtor's employ during this

2  reorganization process even as the Debtor downsizes operations, the Debtor created and seeks to

3  implement the Retention Plan (discussed below).

4      **2.**    **Ryan Walker (In-House General Counsel)**

5        The first group of critical Employees includes Ryan Walker only.  Since January 2013, Mr.

6  Walker has been, and currently is, the Debtor's in-house general counsel.  As in-house counsel for

7  the Debtor, Mr. Walker's duties generally include (among other duties): (a) managing all aspects

8  of legal matters affecting the Debtor nationwide, whether coordinating/managing legal work in-

9  house or with outside counsel; (b) analyzing legal risks, advising executive management of the

10  legal implications of proposed actions and recommending practical solutions to business

11  challenges; (c) supporting various business units by researching and analyzing contractual,

12  regulatory and other legal matters, as well as identifying potential legal issues and risks; (d)

13  working with operational management to understand commercial terms, drafting and negotiating

14  contracts/leases, as well as broad management of all employment, insurance and compliance

15  issues; (e) securing and maintaining all corporate IP matters, including license agreements,

16  trademarks, and copyrights; (f) ensuring business and employment compliance within the states in

17  which the Debtor currently does business; (g) advising executive teams and HR on recent

18  developments in employment & labor laws impacting the organization; and (h) working with

19  stakeholders across the Debtor to develop and draft specialized contracts /agreements / notices /

20  waivers / releases, as well as modifying current company practices and procedures to conform to

21  evolving state and federal legal requirements.

22        Aside from these standard duties and obligations as general counsel, Mr. Walker has been

23  and continues to be instrumental in the efficient and successful prosecution of this chapter 11 case.

24  Among other things, Mr. Walker: (a) has been and is a point person for the Debtor in respect of

25  interfacing with the Debtor's outside professionals (including its bankruptcy counsel and financial

26  consultants); (b) gathers and compiles necessary financial and other information requested by the

27  Debtor's professionals; (c) handles a variety of legal and operations issues that arise for the

28  Debtor; (d) directs and supervises the Debtor's staff in regard to the search and compilation of

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   information and documents, and preparation of materials for, this case; and (e) plays an essential

2   role in developing and implementing the overall strategy for this case.

3       **3.      The Managers**

4       The second group of critical Employees includes the Managers (Store Managers and

5   Assistant Managers).  The Debtor's store locations are grouped into seven geographic regions,

6   each managed by a dedicated district manager.  Operations at the store level typically consist of

7   one Store Manager and one Assistant Manager, as well as one "Third-Key" Manager (responsible

8   for opening and closing the store when the Store Manager and Assistant Manager are not present,

9   takes on other manager functions as well), sales associates, stockroom attendants, and cashiers.

10      The Mangers work at the retail stores.  They are essential to the smooth and efficient

11  operations of the stores. Necessary services rendered and supervision provided by the Managers at

12  the store level help ensure any given store generates maximum sales and increases the Debtor's

13  profits for the benefit of the Estate and creditors.  Their services at this time are particularly

14  essential to the success of the ongoing Store Closing Sales and are imperative in light of the

15  current very important holiday shopping season.

16  **E.      The Proposed Retention Plan**

17      At this time, the Debtor is uncertain as to whether or not it will maintain any in-house

18  counsel position within the company that Mr. Walker currently occupies in light of and after the

19  contemplated store closures, lease rejections, and overall decrease in size of the Debtor and its

20  operations.  As a result, with this position at risk, Mr. Walker has an incentive to begin seeking

21  alternate employment, accompanied by the risk of his departure from the Debtor, at a time when

22  the Debtor needs his services most.

23      Likewise, in light of the contemplated store closures and reduction in the Debtor's store

24  count, and with more closures possible based on the manner in which this reorganization

25  progresses, Managers also may have serious concerns about losing their employment with the

26  Debtor.  In turn, as is the case with Mr. Walker, Managers currently have the incentive to search

27  for alternate employment at a time when the Debtor needs their services for a successful

28  reorganization and to maximize the value of the Estate.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    Therefore, in an attempt to retain these Employees during this important period in the

2    Debtor's case and business in general, the Debtor developed the following modest Retention Plan:

3    • With respect to Mr. Walker, he shall be paid a one-time retention bonus in the amount

4    of $15,000.00 if he remains with the Debtor through January 31, 2018. Payment of the retention

5    bonus shall be made no earlier than February 1, 2018, and no later than February 5, 2018 (subject

6    to the Court's approval of the Retention Plan).

7    • With respect to the Managers, to the extent a Manger meets the Manager Bonus

8    Eligibility Requirements: (a) Store Managers shall become eligible to receive from the Debtor a

9    single payment of $2,000, and (b) Assistant Managers shall become eligible to receive from the

10    Debtor a single payment of $1,000. Given the currently ongoing Store Closing Sales and the need

11    to retain Managers at least through the conclusion of such sales, the Debtor shall determine

12    whether any particular Manager is entitled to such payment on or before January 31, 2018. If any

13    given Manager should resign or be terminated for cause before January 31, 2018, such Manager

14    will not be eligible or entitled to collect, and will not receive, this payment. To the extent a store

15    closes after January 31, 2018, the Debtor seeks authority to extend the foregoing program to other

16    Managers who satisfy the Manager Bonus Eligibility Requirements. The Debtor currently

17    employs 108 Store Managers and 102 Assistant Managers. This means that, even assuming all

18    current Managers were to remain with the Debtor as indicated and the Debtor determined to pay

19    each of them the proposed bonus under the Retention Plan, the maximum aggregate payout to

20    them would be $318,000.

21    As noted above, the Debtor has serious concerns that it may lose the Employees at this

22    essential period. With the many store closures, the Debtor's shrinking operations, and the general

23    inherent uncertainty of the reorganization process, the Employees may be concerned for their

24    future with the Debtor and, in response, may be (or may soon start) searching for new

25    employment. If the Employees were to leave, the Debtor believes that recruiting desirable

26    replacement employees with similar skills would be difficult because of the Employees' respective

27    levels of experience and personal knowledge regarding the Debtor's business operations, as well

28    as legal matters affecting the business (in the case of Mr. Walker). Further, it makes no sense to

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   expend the time and effort to train new employees for what may be a relatively short time period

2   that they would be needed and the inefficiencies of a substantial learning curve.

3        The Debtor's ability to maintain its business operations, preserve the value of its assets,

4   and maximize stakeholder recoveries through a successful and expedient restructuring process

5   hinges on the Debtor's ability to retain the Employees during this critical period. The Debtor is

6   convinced that the departure of any of the Employees would have an immediate and significant

7   adverse effect on the administration of this case and Estate, the operations of the Debtor's

8   business, and maximizing the value of the Estate.

9        Based on the foregoing, the Debtor believes there are compelling business reasons for the

10   Debtor's immediate implementation of the Retention Plan for this select group of Employees.

11   With store closures and many lease rejections already underway, the Debtor has concluded that it

12   is imperative that it offer the Employees these potential retention benefits without delay to

13   incentivize them to elect to remain with the Debtor through the applicable retention period and

14   continue to expend the significant efforts they have performed to date in their respective roles, as

15   well as additional duties associated with administration of the chapter 11 case. The Debtor needs

16   approval to implement the Retention Plan so that the Employees do not leave the Debtor for

17   alternative jobs that may offer more stable employment situations and comparable, if not superior,

18   compensation packages.

19        The Debtor recognizes that any payments made under the Retention Plan (to the extent

20   approved) must, and will ensure they, comport with the Approved Budget (as defined in the

21   Interim DIP Order).

22        The Debtor believes that the amounts to be paid under the Retention Plan are extremely

23   modest, will be consistent with the Approved Budget, and are fair and reasonable. Moreover, the

24   Retention Plan only applies to a very limited pool of employees and, with respect to the Managers,

25   the payments are not guaranteed. While the Debtor has over 1,740 employees, the Retention Plan

26   applies to only 211 Employees, those the Debtor determined are most crucial to the Debtor's

27   continued business activities and most at risk of seeking alternate employment and departing the

28   Debtor's employ. The Retention Plan is tailored to retain these particular key Employees.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 · FAX 213.629.4520

1    Further, the Retention Plan incentives were developed after consideration of the Debtor's

2  market conditions and industry standards, and the Debtor believes that its Retention Plan is

3  consistent with current market conditions and industry standards.  The Retention Plan is designed

4  to retain the Employees through the periods set forth above and to ensure that they remain

5  productive during these periods.  Therefore, the Debtor has exercised sound business judgment in

6  developing and implementing the Retention Plan.

**II.**

**THE RETENTION PLAN SHOULD BE APPROVED**

**A.    Standard**

10    Section 503 of the Bankruptcy Code provides, in relevant part, that "[a]fter notice and a

11  hearing, there shall be allowed administrative expenses, other than claims allowed under section

12  502(f) of this title, including[.]"  11 U.S.C. § 503(b).  Bankruptcy Code section 503(b) continues

13  by listing various types of claims that are deemed to be administrative expense claims.

14    Section 503(c) of the Bankruptcy Code provides, in relevant part:

> (c) Notwithstanding subsection (b) there shall neither be allowed,
> nor paid –
>
> . . . .
>
>    (3) other transfers or obligations that are outside the ordinary
> course of business and not justified by the facts and circumstances
> of the case, including transfers made to, or obligations incurred for
> the benefit of, officers, managers, or consultants hired after the date
> of the filing of the petition.

11 U.S.C. § 503(c).

    The Retention Plan "must be analyzed under § 503(c)(3), which governs bonus payments

to employees that are outside of the ordinary course.  Such payments are permitted only if they are

'justified by the facts and circumstances of the case.' 11 U.S.C. § 503(c)(3)." *In re Global

Aviation Holdings Inc.*, 478 B.R. 142, 150 (Bankr. E.D.N.Y. 2012).  The Court in *Global Aviation*,

stated that:

> The appropriate standard for determining whether an outside the ordinary course
> compensation proposal is justified by the facts and circumstances of a given case
> was articulated in *In re Dana Corp.*, 358 B.R. 567, 576-77 (Bankr.S.D.N.Y.2006)
> ("*Dana II*") as follows:

- whether the plan has a reasonable relationship to the results to be obtained;

- whether the cost is reasonable in light of the debtor's assets, liabilities, and earnings potential;

- whether the scope of the plan is fair and reasonable or discriminates unfairly;

- whether the plan comports with industry standards;

- whether the debtor undertook due diligence in investigating the need for a plan, the employees that should be incentivized, market standards; and

- whether the debtor received independent counsel in performing due diligence in creating and authorizing the incentive compensation.

*Id.*

**B.    Immediate Implementation of The Retention Plan And The Corresponding Proposed Retention Payments Are Justified by The Facts And Circumstances of This Case**

Considering the foregoing factors, the Debtor believes the proposed retention incentives are justified by the facts and circumstances of this case and should, therefore, be approved. First, the Debtor submits that the Retention Plan has a reasonable relationship to the result to be obtained. As set forth above, pursuant to the Retention Plan, the Debtor's goal is to retain the Employees at least through January 2018 or the closing of any given store to facilitate the efficient and successful pursuit of the Debtor's restructuring goals in this case. Since the retention amounts to be paid to the Employees pursuant to the Retention Plan will not be paid (to the extent deemed entitled to such payment) until, at least, after the period for which the Debtor requires the Employees, they will be inclined to remain with Debtor for that critical period. Therefore, the Retention Plan will aid the Debtor in the goal of retaining the Employees as needed.

Second, the Debtor submits that the amount proposed to be paid to the Employees under the Retention Plan is reasonable in light of the Debtor's assets and liabilities. Indeed, the proposed individual payment amounts are extremely modest, especially in light of the important roles the Employees play and the additional duties imposed upon them in light of the bankruptcy case (especially as to Mr. Walker). Furthermore, with assets and liabilities each in excess of $50 million, the maximum payments in the aggregate of $318,000 to Managers and $15,000 to Mr. Walker that would be distributed under the Retention Plan (even assuming each of the Employees

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 · FAX 213.629.4520

1    remain with the Debtor as required and the Debtor deemed each of the Managers entitled to the

2    proposed bonus payment) are reasonable in relation to total assets and liabilities. Additionally, the

3    Debtor will ensure that any payments made will comport with the Debtor's Approved Budget.

4        Third, the Retention Plan does not discriminate unfairly. Discrimination is permitted as

5    long as it is fair because different employees may have different values to the debtor's

6    reorganization efforts. *See In re Borders Group, Inc.*, 453 B.R. 459, 475-76 (Bankr. S.D. N.Y.

7    2011). As set forth above, while the Debtor currently has over 1,740 employees, all of whom are

8    very important to the Debtor's operations and reorganization, the Debtor has identified certain

9    corporate-level and managerial employees who are absolutely critical and key to the contemplated

10   tasks in this case (described above).

11       Moreover, given Mr. Walker's high-level duties within the Debtor and the expanded scope

12   of his duties in light of the bankruptcy filing, it is fair and not improperly discriminatory to

13   propose a higher bonus payment than those proposed for the Managers. The same rationale

14   justifies a higher proposed bonus for Store Managers versus Assistant Managers. In addition,

15   none of the Employees is an insider as such term is defined in the Bankruptcy Code. Therefore,

16   the Debtor submits that the Retention Plan does not discriminate unfairly.

17       Based upon the experience of the Debtor's Chief Executive Officer, and overall knowledge

18   of the Debtor's industry and other similarly-sized companies in this industry, the Debtor believes

19   that the Retention Plan falls well-within industry standards. This is especially true given the

20   relatively modest amounts proposed to be paid to each of the Employees under the Retention Plan.

21       As a result, the Debtor believes that the Retention Plan is fair, reasonable, justified, and

22   reflects a proper exercise of the Debtor's business judgement.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## III.

## <u>CONCLUSION</u>

For all of the reasons set forth above, the Motion should be granted.

Dated: December 19, 2017

**Sulmeyer**Kupetz
A Professional Corporation


By:    _/s/ Asa S. Hami_
Asa S. Hami
Attorneys for Debtor and Debtor in Possession
Shiekh Shoes, LLC

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# DECLARATION OF SHIEKH S. ELLAHI[2]

I, Shiekh S. Ellahi, declare:

1.    I am the founder, Managing Member, and Chief Executive Officer of Shiekh Shoes, LLC, a California limited liability company, the debtor and debtor in possession in the above-captioned case (the "Debtor"). In such capacity, I am actively involved in, and oversee, and am intimately familiar with, all aspects of the Debtor's business and operations.

2.    I make and executed this declaration in support of the foregoing motion.

3.    The Debtor is a retailer of footwear, apparel, and accessories, with its corporate headquarters in Ontario, California. I founded the company in 1991 with its first store in Hayward, California. As of the Petition Date, the Debtor was operating 124 specialty retail stores across ten states (California, Arizona, Nevada, Texas, Washington, Oregon, New Mexico, Illinois, Michigan, and Tennessee), as well as websites ShiekhShoes.com, Shiekh.com, Karmaloop.com, TiltedSole.com, and FBRKclothing.com.

4.    All of the Debtor's store locations are leased. The store leases expire at various dates through January 31, 2028. As of the Petition Date, there were five leases that were on a month-to-month basis, and eight active leases with lease payments based upon a percentage of revenue (rather a fixed monthly sum).

5.    The Debtor's primary assets include: (1) inventory, which, as of at or about the Petition Date, had a current retail value in the aggregate of approximately $65,918,224.35 (with an original retail value of approximately $80,987,971.96) and cost value of approximately $35,113,347.33; (2) fixtures, furniture, and equipment with an aggregate estimated book value of approximately $11,311,083 (as of October 2017); and (3) trademarks and various intellectual properties with an estimated value of approximately $250,000.

6.    As of at or about the Petition Date, the Debtor had secured debt in the aggregate amount of approximately $17,169,546.65 held by two parties (although the claim of the junior secured claimant is disputed). As of at or about the Petition Date, the Debtor's top 20 general

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the foregoing motion.

1    unsecured creditors held claims in the aggregate of approximately $24,745,201.95 owed to various

2    trade vendors, suppliers, and other parties (although certain claims of which are disputed,

3    contingent, and unliquidated). In addition, I extended a $15 million unsecured credit facility to the

4    Debtor in January 2015.

5        7.    On November 29, 2017, I caused the Debtor to file its voluntary petition for relief

6    under chapter 11 of the Bankruptcy Code, commencing this bankruptcy case. The Debtor

7    continues to operate its business and manage its affairs as a debtor in possession in this case.

8        8.    Various challenges relating to particular investments the Debtor made in

9    connection with its operations, declining store revenues due to the rise of e-commerce, the

10    generally weakening retail environment (among other financial and operational issues), have made

11    it increasingly difficult for the Debtor to turn a profit in recent years. As a result, with a growing

12    liquidity crisis and a need for reorganization, the Debtor filed this chapter 11 case.

13        9.    The Debtor commenced this reorganization case in order to pursue implementation

14    of a restructuring of its operations, leases, and debt. The Debtor believes that a successful overall

15    reorganization would maximize the value of the Estate, provide for payment to unsecured

16    creditors, and allow the Debtor to emerge from chapter 11 with a reorganized and viable ongoing

17    business. However, a successful restructuring that maintains the Debtor's current business model

18    may likely require cooperation of certain stakeholders in the Debtor, including the Debtor's senior

19    secured creditor, certain suppliers, and landlords.

20        10.    In order to protect the interests of the Estate, the Debtor also is exploring other

21    alternatives that may be implemented in the event that a restructuring through a reorganization

22    plan is determined not to be a viable approach, including liquidation options that might, if

23    necessary, be utilized to maximize the value of the Estate.

24        11.    Among the means of achieving its restructuring goals is the Debtor's pursuit of

25    inventory clearance/store closing sales (the "Store Closing Sales") and the rejection of various

26    leases. To this end, on November 29, 2017, I caused the Debtor to file an emergency "first day"

27    motion to authorize the Debtor to conduct the Store Closing Sales (with the assistance of Gordon

28    Brothers Retail Partners, LLC, an outside consultant expert at conducting such sales) at 31 of its

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  stores through the holiday season. These are the stores the Debtor has determined, as of this time,

2  need to be closed, following the inventory clearance sales. The Debtor believes that under any

3  scenario such inventory clearance sales will advance the goal of maximizing the value of the

4  Estate and benefit creditors. It may become necessary for additional stores to be closed, but as of

5  now, 31 of the stores have been identified for closure. The Store Closing Sales are in progress and

6  the Debtor anticipates they will be completed in January 2018.

7       12.    In addition, the Debtor has filed two separate motions relating to the rejection of

8  multiple leases. First, on November 29, 2017, the Debtor filed a motion to reject two store leases

9  in San Diego, California, and Portland, Oregon, respectively. On December 1, 2017, this Court

10  entered an order granting that motion.

11       13.    Second, on December 6, 2017, the Debtor filed a motion for an order authorizing

12  the Debtor to reject 85 leases pursuant to a proposed notice procedure (subject to the right to

13  withdraw any given lease from the list of 85 leases to be rejected).

14       14.    Further, consistent with the Debtor's restructuring goals, on December 7, 2017, the

15  Debtor filed an application to employ DJM Realty Services, LLC, d/b/a Gordon Brothers Real

16  Estate, to assist the Debtor with negotiating with its landlords to restructure and mitigate claims, as

17  well as to develop exit strategies in respect of the leases slated for rejection.

18       15.    As of the Petition Date, the Debtor had approximately 1,743 employees. With this

19  number of employees, the average amount the Debtor needs for any given payroll period is

20  approximately $1,655,000 (wages only and not including benefits or employer taxes). The Debtor

21  also offers its full-time employees various employee health plans, including, for example, medical,

22  vision, and dental insurance.

23       16.    Of these employees, I have determined that two categories of employees discussed

24  immediately below are critical to the Debtor's reorganization and restructuring efforts (none of

25  who is an insider of the Debtor as defined in section 101(31) of the Bankruptcy Code as I

26  understand that definition). As a result, to incentivize these two groups of employees to remain in

27  the Debtor's employ during this reorganization process even as the Debtor downsizes operations,

28  the Debtor created and seeks to implement the Retention Plan (discussed below).

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

17.    The first group of critical Employees includes Ryan Walker only. Since January 2013, Mr. Walker has been, and currently is, the Debtor's in-house general counsel. As in-house counsel for the Debtor, Mr. Walker's duties generally include (among other duties): (a) managing all aspects of legal matters affecting the Debtor nationwide, whether coordinating/managing legal work in-house or with outside counsel; (b) analyzing legal risks, advising executive management of the legal implications of proposed actions and recommending practical solutions to business challenges; (c) supporting various business units by researching and analyzing contractual, regulatory and other legal matters, as well as identifying potential legal issues and risks; (d) working with operational management to understand commercial terms, drafting and negotiating contracts/leases, as well as broad management of all employment, insurance and compliance issues; (e) securing and maintaining all corporate IP matters, including license agreements, trademarks, and copyrights; (f) ensuring business and employment compliance within the states in which the Debtor currently does business; (g) advising executive teams and HR on recent developments in employment & labor laws impacting the organization; and (h) working with stakeholders across the Debtor to develop and draft specialized contracts / agreements / notices / waivers / releases, as well as modifying current company practices and procedures to conform to evolving state and federal legal requirements.

18.    Aside from these standard duties and obligations as general counsel, Mr. Walker has been and continues to be instrumental in the efficient and successful prosecution of this chapter 11 case. Among other things, Mr. Walker: (a) has been and is a point person for the Debtor in respect of interfacing with the Debtor's outside professionals (including its bankruptcy counsel and financial consultants); (b) gathers and compiles necessary financial and other information requested by the Debtor's professionals; (c) handles a variety of legal and operations issues that arise for the Debtor; (d) directs and supervises the Debtor's staff in regard to the search and compilation of information and documents, and preparation of materials for, this case; and (e) plays an essential role in developing and implementing the overall strategy for this case.

19.    The second group of critical Employees includes the Managers (Store Managers and Assistant Managers). The Debtor's store locations are grouped into seven geographic regions,

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1 each managed by a dedicated district manager. Operations at the store level typically consist of

2 one Store Manager and one Assistant Manager, as well as one "Third-Key" Manager (responsible

3 for opening and closing the store when the Store Manager and Assistant Manager are not present,

4 takes on other manager functions as well), sales associates, stockroom attendants, and cashiers.

5    20.    The Mangers work at the retail stores. They are essential to the smooth and

6 efficient operations of the stores. Necessary services rendered and supervision provided by the

7 Managers at the store level help ensure any given store generates maximum sales and increases the

8 Debtor's profits for the benefit of the Estate and creditors. Their services at this time are

9 particularly essential to the success of the ongoing Store Closing Sales and are imperative in light

10 of the current very important holiday shopping season.

11    21.    At this time, the Debtor is uncertain as to whether or not it will maintain any in-

12 house counsel position within the company that Mr. Walker currently occupies in light of and after

13 the contemplated store closures, lease rejections, and overall decrease in size of the Debtor and its

14 operations. As a result, with this position at risk, I believe Mr. Walker may have an incentive to

15 begin seeking alternate employment, accompanied by the risk of his departure from the Debtor, at

16 a time when the Debtor needs his services most.

17    22.    Likewise, in light of the contemplated store closures and reduction in the Debtor's

18 store count, and with more closures possible based on the manner in which this reorganization

19 progresses, I believe Managers also may have serious concerns about losing their employment

20 with the Debtor. In turn, as is the case with Mr. Walker, I believe Managers currently may have

21 an incentive to search for alternate employment at a time when the Debtor needs their services for

22 a successful reorganization and to maximize the value of the Estate.

23    23.    Therefore, in an attempt to retain these Employees during this important period in

24 the Debtor's case and business in general, the Debtor developed the following Retention Plan:

25    a.    With respect to Mr. Walker, he shall be paid a one-time retention bonus in

26 the amount of $15,000.00 if he remains with the Debtor through January 31, 2018. Payment of the

27 retention bonus shall be made no earlier than February 1, 2018, and no later than February 5, 2018

28 (subject to the Court's approval of the Retention Plan).

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 · FAX 213.629.4520

1          b.      With respect to the Managers, to the extent a Manger meets the Manager

2 Bonus Eligibility Requirements: (a) Store Managers shall become eligible to receive from the

3 Debtor a single payment of $2,000, and (b) Assistant Managers shall become eligible to receive

4 from the Debtor a single payment of $1,000. Given the currently ongoing Store Closing Sales and

5 the need to retain Managers at least through the conclusion of such sales, the Debtor shall

6 determine whether any particular Manager is entitled to such payment on or before January 31,

7 2018. If any given Manager should resign or be terminated for cause before January 31, 2018,

8 such Manager will not be eligible or entitled to collect, and will not receive, this payment. To the

9 extent a store closes after January 31, 2018, the Debtor seeks authority to extend the foregoing

10 program to other Managers who satisfy the Manager Bonus Eligibility Requirements. The Debtor

11 currently employs 108 Store Managers and 102 Assistant Managers. This means that, even

12 assuming all current Managers were to remain with the Debtor as indicated and the Debtor

13 determined to pay each of them the proposed bonus under the Retention Plan, the maximum

14 aggregate payout to them would be $318,000.

15      24.     As noted above, I have serious concerns that the Debtor may lose the Employees at

16 this essential period. With the many store closures, the Debtor's shrinking operations, and the

17 general inherent uncertainty of the reorganization process, I believe the Employees may be

18 concerned for their future with the Debtor and, in response, may be (or may soon start) searching

19 for new employment. If the Employees were to leave, I believe that recruiting desirable

20 replacement employees with similar skills would be difficult because of the Employees' respective

21 levels of experience and personal knowledge regarding the Debtor's business operations, as well

22 as legal matters affecting the business (in the case of Mr. Walker). Further, I do not believe it

23 makes sense for the Debtor to expend the time and effort to train new employees for what may be

24 a relatively short time period that they would be needed and the inefficiencies of a substantial

25 learning curve.

26      25.     The Debtor's ability to maintain its business operations, preserve the value of its

27 assets, and maximize stakeholder recoveries through a successful and expedient restructuring

28 process hinges on the Debtor's ability to retain the Employees during this critical period. I am

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    convinced that the departure of any of the Employees would have an immediate and significant

2    adverse effect on the administration of this case and Estate, the operations of the Debtor's

3    business, and maximizing the value of the Estate.

4        26.    Based on the foregoing, I believe there are compelling business reasons for the

5    Debtor's immediate implementation of the Retention Plan for this select group of Employees.

6    With store closures and many lease rejections already underway, I have concluded that it is

7    imperative that the Debtor offer the Employees these potential retention benefits without delay to

8    incentivize them to elect to remain with the Debtor through the applicable retention period and

9    continue to expend the significant efforts they have performed to date in their respective roles, as

10   well as additional duties associated with administration of the chapter 11 case. The Debtor needs

11   approval to implement the Retention Plan so that the Employees do not leave the Debtor for

12   alternative jobs that may offer more stable employment situations and comparable, if not superior,

13   compensation packages.

14       27.    I recognize that any payments made under the Retention Plan (to the extent

15   approved) must, and I will ensure that they, comport with the Approved Budget (as defined in the

16   Interim DIP Order).

17       28.    I believe that the amounts to be paid under the Retention Plan are extremely

18   modest, will be consistent with the Approved Budget, and are fair and reasonable. Moreover, the

19   Retention Plan only applies to a very limited pool of employees and, with respect to the Managers,

20   the payments are not guaranteed. While the Debtor has over 1,740 employees, the Retention Plan

21   applies to only 211 Employees, those I determined are most crucial to the Debtor's continued

22   business activities and most at risk of seeking alternate employment and departing the Debtor's

23   employ. I believe the Retention Plan is tailored to retain these particular key Employees.

24       29.    With my founding of the Debtor's business in 1991, I have over 25 years of

25   experience in the retail industry in which the Debtor operates and, as a result, am extremely

26   knowledgeable of industry and market standards, conditions, and trends, including the operations

27   and standards of companies similar to the Debtor in size and type of business. Based on such

28   experience and knowledge, I believe the Retention Plan and its incentives are consistent with

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

2611876

1    current market conditions and industry standards, and fall well-within such standards. The

2    Retention Plan is designed to retain the Employees through the periods set forth above and to

3    ensure that they remain productive during these periods. Therefore, I believe that the development

4    and implementation of the Retention Plan reflects the Debtor's exercise of its sound business

5    judgment.

6         I declare under penalty of perjury that the foregoing is true and correct and that this

7    declaration was executed on December 19, 2017, at Ontario, California.

8

9

10                                                 Shiekh S. Ellahi

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

2611876

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Hope Street, Thirty-Fifth Floor, Los Angeles, CA 90071-1406.

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR AUTHORITY TO IMPLEMENT KEY EMPLOYEE RETENTION PLAN; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SHIEKH S. ELLAHI IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 19, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Dustin P Branch on behalf of Creditors Centennial Real Estate Company/Passco Companies, LLC/Starwood Retail Partners LLC /The Macerich Company /Vintage Real Estate, LLC/Westfield, LLC - branchd@ballardspahr.com, carolod@ballardspahr.com; hubenb@ballardspahr.com; Pollack@ballardspahr.com
- Scott F Gautier on behalf of Creditors Comvest Capital II, L.P./Comvest Partners II, L.P. - sgautier@robinskaplan.com
- Ronald E Gold on behalf of Creditor Washington Prime Group Inc. - rgold@fbtlaw.com, joguinn@fbtlaw.com
- Asa S Hami on behalf of Debtor Shiekh Shoes, LLC - ahami@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com; agonzalez@ecf.inforuptcy.com; ahami@ecf.inforuptcy.com
- Brian D Huben on behalf of Creditors Centennial Real Estate Company/Starwood Retail Partners LLC/The Macerich Company/Westfield, LLC - hubenb@ballardspahr.com, carolod@ballardspahr.com
- Ivan L Kallick on behalf of Interested Party Manatt, Phelps & Phillips, LLP - ikallick@manatt.com, ihernandez@manatt.com
- Dimitri G Karcazes on behalf of Creditor Comvest Capital II, L.P. - dimitri.karcazes@goldbergkohn.com
- David S Kupetz on behalf of Debtor Shiekh Shoes, LLC - dkupetz@sulmeyerlaw.com, dperez@sulmeyerlaw.com; dperez@ecf.inforuptcy.com; dkupetz@ecf.inforuptcy.com
- Daniel A Lev on behalf of Interested Party Courtesy NEF - dlev@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com; dlev@ecf.inforuptcy.com; dwalker@sulmeyerlaw.com
- Kevin Meek on behalf of Creditor Comvest Capital II, L.P. - kmeek@robinskaplan.com, kevinmeek32@gmail.com; kmeek@ecf.inforuptcy.com
- Angela Z Miller on behalf of Creditor New Era Cap Co., Inc. - amiller@phillipslytle.com, styrone@phillipslytle.com
- Ali M Mojdehi on behalf of The Official Committee of Unsecured Creditors of Shiekh Shoes, LLC - amojdehi@cooley.com, jgertz@cooley.com; bbyun@cooley.com; arego@cooley.com
- Kelly L Morrison on behalf of United States Trustee (LA) - kelly.l.morrison@usdoj.gov
- Ernie Zachary Park on behalf of Creditor The Irvine Company - ernie.park@bewleylaw.com
- Kristen N Pate on behalf of Creditor GGP Limited Partnership - ggpbk@ggp.com
- Dean G Rallis, Jr on behalf of Interested Parties CAPREF Burbank LLC and CAPRF Lloyd II LLC - drallis@afrct.com, msinclair@afrct.com; AFRCTECF@afrct.com;mpham@afrct.com
- Allan D Sarver on behalf of Creditor 3829 Broadway LLC - ADS@asarverlaw.com
- Howard Steinberg on behalf of Creditor State Bank and Trust Company - steinbergh@gtlaw.com, pearsallt@gtlaw.com;laik@gtlaw.com
- Michael A Sweet on behalf of Interested Party Fictitious Party - msweet@foxrothschild.com, pchlum@foxrothschild.com; epaulsen@foxrothschild.com
- Wayne R Terry on behalf of Creditor Gordon Brothers Retail Partners, LLC - wterry@hemar-rousso.com
- Ronald M Tucker, Esq on behalf of Creditor Simon Property Group Inc - rtucker@simon.com, cmartin@simon.com; psummers@simon.com; Bankruptcy@simon.com
- United States Trustee (LA) - ustpregion16.la.ecf@usdoj.gov
- Steven Werth on behalf of Debtor Shiekh Shoes, LLC - swerth@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com; kmccarney@sulmeyerlaw.com; asokolowski@ecf.inforuptcy.com; swerth@ecf.inforuptcy.com
- Eric R Wilson on behalf of Creditor Rouse Properties, LLC - kdwbankruptcydepartment@kelleydrye.com, MVicinanza@ecf.inforuptcy.com

☐ Service information continued on attached page.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**

**2.  SERVED BY UNITED STATES MAIL**:

On (*date*) December 19, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) December 19, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Vincent P. Zurzolo – VIA PERSONAL DELIVERY
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street
Los Angeles, CA 90012-3332 - Bin outside of Suite 1360

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 19, 2017 | Maria R. Viramontes | */s/Maria R. Viramontes* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**SERVICE LIST**

**ATTORNEYS FOR CREDITORS COMMITTEE – VIA EMAIL**
Jay Indyke, Esq.
Max Schlan, Esq.
Cooley LLP
The Grace Building
1114 Avenue of the Americas, 46th Fl.
New York, NY  10036
Email:   jindyke@cooley.com
           mschlan@cooley.com

**Attorneys for Secured Creditor State Bank – VIA EMAIL
and Trust Company (Alostar Bank)**
Greenberg Traurig, LLP
John J. Dyer, Esq.
David B. Kurzweil, Esq.
Email:  DyerJ@gtlaw.com
           KurzweilD@GTLAW.com

**Secured Creditor – VIA U.S. MAIL**
Toyota Financial Services
Commercial Finance
Dept. 2431
Carol Stream, IL 60132

**LANDLORD – VIA U.S. MAIL**
M.S. Management Associates, Inc.
225 West Washington Street
Indianapolis, IN 46204

**INTERNAL REVENUE SERVICE – VIA U.S. MAIL**
Internal Revenue Service
Insolvency I Stop 5022
300 North Los Angeles St., Rm 4062
Los Angeles CA 90012-9903

**REQUESTS FOR SPECIAL NOTICE – VIA EMAIL**

**Attorneys for Gordon Brothers Retail Partners, LLC**
Steven E. Fox, Esq.
Reimer & Braunstein LLP
Email:  sfox@riemerlaw.com

**Attorneys for Rouse Properties, LLC**
Robert L. LeHane, Esq.
Jennifer D. Raviele, Esq.
Kelley Drye & Warren LLP
Email: KDWBankruptcyDepartment@kelleydrye.com
           rlehane@kelleydrye.com
           jraviele@kelleydrye.com

**Attorneys for Nike USA, Inc.**
Anthony M. Saccullo, Esq.
Mary E. Augustine, Esq.
A.M. Saccullo Legal, LLC
Email: ams@saccullolegal.com
           meg@saccullolegal.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**