David S. Kupetz (CA Bar No. 125062)
  *dkupetz@sulmeyerlaw.com*
Asa S. Hami (CA Bar No. 210728)
  *ahami@sulmeyerlaw.com*
Claire K. Wu (CA Bar No. 295966)
  *ckwu@sulmeyerlaw.com*
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Debtor and Debtor in Possession
Shiekh Shoes, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>SHIEKH SHOES, LLC<br>a California limited liability company,<br><br>        Debtor. | Case No. 2:17-bk-24626-VZ<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND DEBTOR'S COMBINED MOTION FOR ENTRY OF ORDERS: (I) ESTABLISHING BIDDING AND SALE PROCEDURES; (II) APPROVING THE SALE OF ASSETS; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF**<br><br>Date:     January 25, 2018<br>Time:    11:00 a.m.<br>Place:   Courtroom 1368<br>           255 East Temple Street<br>           Los Angeles, CA 90012 |

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# TABLE OF CONTENTS

**Page**

I.    JURISDICTION ........................................................................................................5

II.   FACTS ......................................................................................................................5

    A.    Background .................................................................................................5

    B.    The Store Closing Sales And Lease Rejections .........................................6

    C.    Sale and Marketing Efforts .......................................................................7

III.  RELIEF REQUESTED .............................................................................................9

    A.    General .......................................................................................................9

    B.    The Proposed Bidding Procedures ............................................................9

    C.    Proposed Assumption and Assignment Procedures .................................15

    D.    Proposed Notice of the Sale Hearing ......................................................17

IV.   BASIS FOR RELIEF ..............................................................................................18

    A.    The Bidding Procedures Are Fair And Designed to Maximize Value......18

    B.    Approval of The Sale is Warranted Under Section 363 ...........................19

    C.    The Purchaser is a Good Faith Purchaser.................................................21

    D.    Approval of the Sale Free and Clear of Liens, Claims and Encumbrances ............21

    E.    Approval of the Assumption and Assignment of Executory Contracts and
       Unexpired Leases .....................................................................................23

    F.    Basis for Relief For Liquidation Transaction..........................................25

    G.    Waiver of Rules 6004(h) and 6006(d).....................................................27

V.    CONCLUSION .......................................................................................................27

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alabama Surface Mining Comm'n v. N.P. Mining Co., Inc. (In re N.P. Mining Co., Inc.),*
    963 F.2d 1449, 1460-61 (11th Cir. 1992) ................................................................ 25

*Ames Dep't Stores,*
    136 B.R. at 359 ........................................................................................................ 26

*Belculfine v. Aloe (In re Shenango Group, Inc.),*
    186 B.R. 623, 628 (Bankr. W.D. Pa. 1995) ........................................................... 26

*Cinicola v. Scharffeberger,*
    248 F.3d 110, 120 (3d Cir. 2001) ........................................................................... 24

*Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),*
    780 F.2d 1223, 1226 (2d Cir. 1983) ....................................................................... 20

*Ewell v. Diebert (In re Ewell),*
    958 F.2d 276, 280 (9th Cir. 1992) ........................................................................... 21

*In re Headquarters Dodge, Inc.,*
    13 F.3d 674, 682 (3d Cir. 1994) ............................................................................. 24

*In re Abbots Dairies of Pennsylvania, Inc.,*
    788 F.2d 143 (3d Cir. 1986) .................................................................................... 20

*In re Bygaph, Inc.,*
    56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) ........................................................ 24

*In re Canyon P'ship,*
    55 B.R. 520, 524 (Bankr. S.D. Cal. 1985) ............................................................. 19

*In re DBSI, Inc.,*
    405 B.R. 698, 708 (Bankr. D. Del. 2009) ............................................................... 24

*In re Decora Indus.,*
    2002 U.S. Dist. LEXIS 27031, at *23 (D. Del. 2002) ............................................ 24

*In re Equity Funding Corp.,*
    492 F.2d 793, 794 (9th Cir. 1974) ........................................................................... 19

*In re Fleming Cos., Inc.,*
    499 F.3d 300, 305 (3d Cir. 2007) ........................................................................... 24

*In re HQ Global Holdings, Inc.,*
    290 B.R. 507, 511 (Bankr. D. Del. 2003) ............................................................... 23

*In re Huntington Ltd.,*
    654 F.2d 578, 589 (9th Cir. 1991) ........................................................................... 19

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

*In re Market Square Inn, Inc.,*
    978 F.2d 116, 121 (3d Cir. 1992) ...................................................................... 23

*In re PW, LLC,*
    391 B.R. 25, 35 (B.A.P. 9th Cir. 2008) .......................................................... 21, 22

*In re R. H. Macy and Co., Inc.,*
    170 B.R. 69, 73-74 (Bankr. S.D.N.Y. 1994) ...................................................... 26

*In re Rickel Home Center, Inc.,*
    209 F.3d 291, 299 (3d Cir. 2000) ...................................................................... 24

*In re TWA Airlines, Inc.*
    322 F.3d 283, 288-90 (3d Cir. 2003) ................................................................ 22

*In re Walter,*
    83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) .......................................................... 19

*Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.),*
    780 F.2d 1223, 1226 (5th Cir. 1986) ................................................................ 20

*Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),*
    163 F.3d 570 (9th Cir. 1998) ............................................................................ 21

*Richmond Leasing Co. v. Capital Bank,*
    762 F.2d 1303, 1311 (5th Cir. 1985) ................................................................ 23

*United Mine Workers of Am. Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.),*
    99 F.3d 573 (4th Cir. 1996) .............................................................................. 22

*Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.),*
    72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) ........................................................ 23

**STATUTES**

11 U.S.C. § 363(f) ................................................................................................ 22

11 U.S.C. § 363(m) .............................................................................................. 21

11 U.S.C. § 365(a) ................................................................................................ 23

11 U.S.C. § 365(f) ................................................................................................ 24

11 U.S.C. § 365(f)(2)(B) ...................................................................................... 24

11 U.S.C. 365(b)(1) .............................................................................................. 23

28 U.S.C. § 1334 (2008) ...................................................................................... 25

28 U.S.C. § 959(b) ................................................................................................ 25

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

CKW\ 2618338.3

363(b)  19, 20

## **RULES**

Bankruptcy Rules 6004(h) ................................................................................................................ 27

Bankruptcy Rules 6006(d) ................................................................................................................ 27

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  **TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES BANKRUPTCY**

2  **JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, SECURED CREDITORS,**

3  **THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND OTHER PARTIES**

4  **IN INTEREST:**

5      **PLEASE TAKE NOTICE** that, on January 25, 2018, at 11:00 a.m. in Courtroom 1368 of

6  the above-entitled Court, before the Honorable Vincent P. Zurzolo, United States Bankruptcy

7  Judge, Shiekh Shoes, LLC, a California limited liability company, the debtor and debtor in

8  possession in the above-captioned chapter 11 bankruptcy case (the "Debtor"), pursuant to sections

9  105, 363, 365, and 503 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002,

10  6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

11  Rules 6004-1 and 9013-1 of the Local Rules for the United States Bankruptcy Court for the

12  Central District of California (the "Local Rules"), will, and hereby does, move this Court for:

13      (i)  an order (the "Bidding Procedures Order"), substantially in the form attached hereto as

14  **Exhibit A**:

15          (a)    approving proposed auction and bid procedures (the "Bidding

16  Procedures"), which are more specifically set forth in Annex 1 to the proposed Bidding

17  Procedures Order (**Exhibit A** hereto), in connection with the marketing and potential sale (a

18  "Sale") of the Debtor's assets (collectively, the "Assets");

19          (b)    scheduling an auction (the "Auction") and a final sale hearing (the "Sale

20  Hearing") in connection with the Sale;

21          (c)    establishing procedures for the assumption and assignment of executory

22  contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and

23  Assignment Procedures"), and approving the form and manner of notice of the potential

24  assumption and assignment of executory contracts and unexpired leases in the form attached

25  hereto as **Exhibit B** (the "Assumption and Assignment Notice"); and

26          (d)    approving the form and manner of notice of the Auction and the Sale

27  Hearing, including the form and manner of notice (the "Auction and Hearing Notice") attached

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  hereto as **Exhibit C**; and

2        (ii)  an order (the "Sale Order") substantially in the form attached hereto as **Exhibit D**:

3            (a)      authorizing the Sale to the party or parties that are the successful bidders at

4  the Auction, free and clear of all liens, claims and encumbrances, except for permitted

5  encumbrances and assumed liabilities;

6            (b)      authorizing the assumption and assignment of certain executory contracts

7  and unexpired leases in connection with the Sale; and

8            (c)      granting certain related relief as described herein.

9        The Debtor recently began working with its professionals and the Committee and its

10  professionals (collectively, the "Sale Parties") to develop the proposed Marketing Process (defined

11  in the accompanying memorandum of points and authorities).  The Sale Parties intend to focus

12  marketing efforts on a targeted, limited group of approximately 30 strategic and financial investors

13  with the means and potential interest in investing in the Debtor and/or acquiring the Debtor's

14  assets.  This Motion is being brought at the request of and in coordination with the Committee.

15  The Debtor's primary goal at this time continues to be a viable reorganization.  This Motion and

16  the Marketing Process are being presented as a back-up to the primary goal and both approaches

17  will be pursued contemporaneously.

18        Upon entry of an order approving the Bidding Procedures, the Sale Parties will provide

19  targeted parties with a short "teaser" providing information regarding the Debtor's business,

20  assets, and financials, as well as a copy of the bid procedures.  The Sale Parties will then follow-

21  up and, in concert with the Debtor, respond to requests for information by the targeted parties;

22  provided, however, that the Debtor shall not be required to provide information it deems overly

23  sensitive, including identifiable store level financial information.[1]

24        As discussed in more detail below, the interested parties will enter into a non-disclosure

---

[1] For the avoidance of doubt, the Debtor contemplates providing prospective bidders with financial information analyzing the Debtor's operations and performance on a store by store basis.  However, in order to protect the Debtor's business from predatory competitors and/or others who could potentially harm the value of the Debtor's business or impose unnecessary expense on the Estate, store addresses and certain other identifying information will not be disclosed unless and until the prospective bidder submits a letter of intent satisfactory to the Debtor, and the Sale Parties unanimously determine that such information should be provided in their reasonable discretion.

agreement with the Debtor to allow access to a data room managed by the Sale Parties, and while the Sale Parties reserve the right to extend deadlines, adjourn any auction for the sale of the Assets, or terminate the Marketing Process, the Debtor proposes to proceed on the following timeline, developed with the Committee:

- February 8, 2018:  Deadline for Debtor to serve notice of proposed cure amounts, and the potential assumption and assignment of leases and contracts, to counterparties.

- February 18, 2018:  Deadline for contract and lease counterparties to object to the assumption and assignment of their contract or lease (on any grounds other than adequate assurance of future performance) and the cure amount set forth by the Debtor in the cure notice.

- February 18, 2018:  Deadline for parties to object to the Sale of substantially all of the Debtor's assets (i.e., the Assets) on the terms similar to those set forth in the form APA appended to the Bidding Procedures.

- February 20, 2018:  Deadline for parties to submit bids or other proposals to the Debtor.  Among other requirements, bids will need to be binding and not subject to any contingencies or further diligence.

- February 23, 2018:  Auction, if necessary.

- March 1, 2018:  Sale Hearing.

The Debtor seeks authority to sell the Assets free and clear of liens, claims and encumbrances, and contemplates the sale may entail the assumption and assignment of certain executory contracts and unexpired leases in connection therewith.  The Debtor may discontinue the marketing and sale process at any time.

**PLEASE TAKE FURTHER NOTICE** that, in support of this motion, the Debtor incorporates the statements contained in the *Omnibus Declaration of Shiekh S. Ellahi in Support of Debtor's "First-Day" Motions* [Dkt. No. 18] (the "First Day Declaration").  Additionally, contemporaneously with this Motion, the Debtor files the *Declaration of Shiekh S. Ellahi in Support of Debtor's Combined Motion for Entry of Orders: (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; (III) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* (the "Ellahi Declaration").

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 6004

2    1(b)(4), any party wishing to oppose or otherwise respond to the Motion with respect to the

3    proposed Bidding Procedures must file with the Bankruptcy Court and serve on counsel for the

4    Debtor a written opposition or other response at least one (1) day prior to the hearing.  Pursuant to

5    Local Bankruptcy Rule 9013-1(h), failure to timely file and serve a response in accordance with the

6    Local Bankruptcy Rules may be deemed by the Bankruptcy Court to be consent to the granting of

7    the relief requested in the Motion.

8    **WHEREFORE**, the Debtor respectfully requests that the Court enter an order: (1)

9    establishing bidding and sale procedures; (2) approving the sale of assets; (3) approving the

10    assumption and assignment of executory contracts and unexpired leases; and (4) providing such

11    other or further relief the Court deems necessary.

12    DATED:  January 18, 2018          **Sulmeyer**Kupetz
                                        A Professional Corporation
13

14                                      By:  */s/ Asa S. Hami*

15                                           Asa S. Hami
                                             Attorneys for Debtor and Debtor in Possession
16                                           Shiekh Shoes, LLC

17

18

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**JURISDICTION**

1.      The United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Court") has jurisdiction over this case and the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief requested herein are sections 105(a), 363, 365, and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 6004-1 and 9013-1.

**II.**

**FACTS**

**A.      Background**

3.      On November 29, 2017 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its affairs as a debtor in possession in this case pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.      Various challenges relating to particular investments the Debtor made in connection with its operations, declining store revenues due to the rise of e-commerce, the generally weakening retail environment (among other financial and operational issues), have made it increasingly difficult for the Debtor to turn a profit in recent years.  As a result, with a growing liquidity crisis, and a need for reorganization, the Debtor filed this chapter 11 case.

5.      The Debtor commenced this reorganization case in order to pursue implementation of a restructuring of its operations, leases, and debt.  The Debtor believes that a successful overall reorganization could maximize the value of the Debtor's estate (the "Estate"), provide for payment to unsecured creditors, preserve more than 1,000 jobs for the Debtor's employees, preserve the Debtor as a customer and tenant for its suppliers and landlords, and allow the Debtor to emerge

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    from chapter 11 with a reorganized and viable ongoing business.

2         6.     As the Debtor continues its efforts to reorganize and promulgate a plan of

3    reorganization, the Debtor, at the request of and in coordination with the Official Committee of

4    Unsecured Creditors appointed in this case (the "Committee"), simultaneously proposes to run the

5    sale and marketing process described herein (the "Marketing Process").  Specifically, the Debtor is

6    requesting authority to work with the Committee to market investment opportunities in the Debtor,

7    including potential joint ventures, asset sales, and liquidation sales, and to move forward with an

8    asset or liquidation sale if the Debtor determines doing so is in the best interest of the Estate.  To

9    preserve resources and maximize efficiency, and with the agreement of the Committee, the Debtor

10   intends to utilize the Committee's financial advisor, Province, Inc., to serve as the primary contact

11   person for the Marketing Process.

12        7.     The Debtor's primary assets (the "Assets") include: (1) inventory; (2) fixtures,

13   furniture, and equipment; (3) trademarks and various intellectual property; and (4) leasehold

14   interests.

15   **B.**     **The Store Closing Sales And Lease Rejections**

16        8.     Among the means of achieving its restructuring goals is the Debtor's pursuit of

17   inventory clearance/store closing sales (the "Store Closing Sales") and the rejection of various

18   leases.  To this end, on November 29, 2017, the Debtor filed an emergency "first day" motion to

19   authorize the Debtor to conduct the Store Closing Sales at 31 of its stores through the holiday

20   season.  These are the stores the Debtor determined, at that time, needed to be closed, following

21   the inventory clearance sales, subject to continuing operations at certain stores based on

22   agreements that have now been reached with landlords.

23        9.     The Debtor also filed two separate motions relating to the rejection of multiple

24   leases.  First, on November 29, 2017, the Debtor filed a motion to reject two store leases, in San

25   Diego, California, and Portland, Oregon, respectively.  On December 1, 2017, this Court entered

26   an order granting that motion.

27        10.     Second, on December 6, 2017, the Debtor filed a motion for an order authorizing

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

the Debtor to reject a number of leases identified in that motion pursuant to a proposed notice

procedure.  Following various objections raised by certain landlords and the Committee, the

Debtor reached an agreement with the Committee and certain landlords regarding the rejection of

certain of those leases and a procedure for the rejection of other leases subject to that motion.

11.     On December 27, 2017, the Debtor and the Committee entered into a stipulation

documenting their agreement [Dkt. No. 252] (the "Lease Rejection Stipulation"). The Court

approved the Lease Rejection Stipulation, pursuant to which the Debtor rejected eleven (11) leases

that the Debtor identified.  The Court's order approving the Lease Rejection Stipulation and

granting the motion was entered on January 10, 2018 [Dkt. No. 311].

12.     On January 16, 2018, pursuant to the procedures in the Lease Rejection Stipulation,

the Debtor filed and served notices of lease rejection with respect to two additional leases.

Further, since commencement of this case, the Debtor has engaged in discussions and negotiations

with its landlords.  In this regard, the Debtor retained DJM Realty Services, LLC, d/b/a Gordon

Brothers Real Estate, to assist the Debtor with such negotiations in the hope of restructuring and

mitigating landlord claims, as well as to develop exit strategies with respect to the leases intended

for rejection.  To date, the Debtor has reached agreements for lease modifications or rent

reductions with various landlords.

## C.   **Sale and Marketing Efforts**

13.     The Debtor recently began working with its professionals and the Committee and

its professionals (collectively, the "Sale Parties") to develop the proposed Marketing Process.  The

Sale Parties intend to focus marketing efforts on a targeted, limited group of approximately 30

strategic and financial investors with the means and potential interest in investing in the Debtor

and/or acquiring the Debtor's assets.

14.     Upon entry of an order approving the Bid Procedures, the Sale Parties will provide

targeted parties with a short "teaser" providing information regarding the Debtor's business,

assets, and financials, as well as a copy of the bid procedures.  The Sale Parties will then follow-

up and respond to requests for information by the targeted parties; provided, however, that the

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

Debtor shall not be required to provide information it deems overly burdensome or sensitive,

including identifiable store level financial information.[2]

15.    As discussed in more detail below, the interested parties will enter into a non-disclosure agreement with the Debtor to allow access to a data room managed by the Sale Parties, and while the Sale Parties reserve the right to extend deadlines, adjourn any auction for the sale of the Assets, or terminate the Marketing Process, the Debtor proposes to proceed on the following timeline:

- <u>February 8, 2018</u>: Deadline for Debtor to serve notice of proposed cure amounts, and the potential assumption and assignment of leases and contracts, to counterparties.

- <u>February 18, 2018</u>: Deadline for contract and lease counterparties to object to the assumption and assignment of their contract or lease (on any grounds other than adequate assurance of future performance) and the cure amount set forth by the Debtor in the cure notice.

- <u>February 18, 2018</u>: Deadline for parties to object to the Sale of substantially all of the Debtor's assets (i.e., the Assets) on the terms similar to those set forth in the form APA appended to the Bidding Procedures.

- <u>February 20, 2018</u>: Deadline for parties to submit bids or other proposals to the Debtor.  Among other requirements, bids will need to be binding and not subject to any contingencies or further diligence.

- <u>February 23, 2018</u>: Auction, if necessary.

- <u>March 1, 2018</u>: Sale Hearing.

16.    The Debtor seeks authority to sell the Assets free and clear of liens, claims and encumbrances, and contemplates the sale may entail the assumption and assignment of certain executory contracts and unexpired leases in connection therewith.  The Debtor retains the right to discontinue the marketing and sale process at any time.

---

[2] For the avoidance of doubt, the Debtor contemplates providing prospective bidders with financial information concerning the Debtor's operations and performance on a store by store basis.  However, in order to protect the Debtor's business from predatory competitors and/or others who could potentially harm the value of the Debtor's business or impose unnecessary expense on the Estate, store addresses and certain other identifying information will not be disclosed unless and until the prospective bidder submits a letter of intent satisfactory to the Debtor, and the Sale Parties unanimously determine that such information should be provided in their reasonable discretion.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311  •  FAX  213.629.4520

### III.

### RELIEF REQUESTED

**A.    General**

17.    By this motion, the Debtor seeks entry of the Bidding Procedures Order:

a.    approving (i) the Debtor's proposed Bidding Procedures governing the Marketing Process, which procedures are attached as Annex 1 to the Bidding Procedures Order; (ii) the Auction and Hearing Notice; and (iii) the Assumption and Assignment Notice;

b.    approving procedures to determine cure amounts for the Debtor's executory contracts and unexpired leases that may be assumed and assigned in connection with a Sale Transaction (defined below);

c.    establishing February 20, 2018 at 4:00 p.m. (prevailing Pacific Time) as the deadline for the submission of binding bids (the "Bid Deadline");

d.    scheduling the Auction, if necessary, no later than February 23, 2018; and

e.    scheduling the Sale Hearing for on or about March 1, 2018, subject to the Court's availability, to consider any Sale Transaction accepted by the Debtor at the Auction.

18.    In addition, the Debtor respectfully requests the entry of the Sale Order:

a.    approving the sale of all or any of the Assets to such party that is the successful bidder at the Auction;

b.    approving the assumption and assignment, or rejection, as the case may be, of executory contracts and unexpired leases in connection with the Sale;

c.    finding that the party that is the successful bidder is a "good faith purchaser," as that term is defined in section 363(m) of the Bankruptcy Code, and has not violated section 363(n) of the Bankruptcy Code;

d.    waiving the 14 day stay requirements of Bankruptcy Rules 6004(h) and 6006(d); and

e.    granting certain related relief.

**B.    The Proposed Bidding Procedures**

19.    The following is a summary of the proposed Bidding Procedures, developed together with the Committee.[3]

20.    <u>Participation Requirements</u>. Unless otherwise ordered by the Court, to participate

---

[3] The form of Bidding Procedures Order contains dates proposed by the Debtor and developed with the Committee. These dates are subject to the availability of the Court and may change.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  in the bidding process, each person or entity (each, an "Interested Party") will be required to

2  deliver (unless previously delivered) the following materials to the Sale Parties:  (1) an executed

3  confidentiality agreement in form and substance reasonably satisfactory to the Sale Parties; (2) a

4  statement and other factual support demonstrating to the Sale Parties' satisfaction a *bona fide*

5  interest in purchasing or liquidating the Assets (a "Sale Transaction") or some other investment in

6  or transaction with the Debtor (a "Non-Sale Transaction", and together with a Sale Transaction, a

7  "Transaction"); and (3) sufficient information, as determined by the Sale Parties, to allow the Sale

8  Parties to determine that the Interested Party has the financial wherewithal, and any required

9  internal corporate, legal or other authorizations to complete a going concern transaction or

10  liquidation transaction, as applicable or other proposed transaction , including financial statements

11  of the Interested Party (or such other form of financial disclosure reasonably acceptable to the Sale

12  Parties in their discretion).  A person or entity that has a *bona fide* interest in a Transaction is

13  hereinafter referred to as a "Potential Bidder."  After receipt of the above-information to the Sale

14  Parties' satisfaction, the Sale Parties will grant such Potential Bidder access to the data room.

15      21.    Due Diligence. The Sale Parties will establish an electronic data room into which

16  substantial information about the Debtor and its business will be deposited.  All Potential Bidders

17  will be granted full access to the data room.  The Sale Parties will coordinate all reasonable

18  requests for additional information and due diligence access from Potential Bidders.  In the event

19  that any such due diligence material is in written form and has not previously been provided to any

20  other Potential Bidder, the Sale Parties will simultaneously provide access to such materials to all

21  other Potential Bidders (unless such information is deemed sensitive, in which case it will not be

22  provided to all parties, but the data room will reflect that certain parties have been provided the

23  information).  Except as provided above with respect to access to the data room, the Sale Parties

24  are not obligated to furnish any information of any kind whatsoever relating to the Assets or

25  Debtor's business to any party.

26      22.    Bid Deadline.  On or before the Bid Deadline, a Potential Bidder that desires to

27  make a bid is required to deliver written copies of its bid in both Portable Document Format (.pdf)

28

1  and Microsoft Word (.doc/.docx) format to the Sale Parties.

2      23.    Bid Requirements.  All bids must: (a) identify the legal name of the Potential

3  Bidder (including any equity holders or other financial backers, if the Potential Bidder is an entity

4  formed for the purpose of consummating the Transaction); (b) with respect to bids for a going

5  concern transaction for any portion of the Assets, provide that the Potential Bidder offers to

6  purchase the assets at the purchase price and upon the terms and conditions set forth in a copy of

7  an asset purchase agreement enclosed therewith, marked to show any proposed amendments and

8  modifications to the form agreement annexed to the Bid Procedures (the "Marked Agreement");

9  (c) state that all necessary filings under applicable regulatory, antitrust and other laws will be

10  made (pursuant to the terms and conditions in the applicable bid documents) and that payment of

11  the fees associated with such filings will be made by the Potential Bidder; (d) be formal, binding

12  and unconditional, not subject to any further due diligence, and be irrevocable by the Potential

13  Bidder until the earlier of March 14, 2018 and the first business day following the closing of an

14  alternative Transaction; (e) be accompanied by a cash deposit (a "Good Faith Deposit") with an

15  escrow agent selected by the Debtor equal to 10% of the gross consideration payable at closing

16  pursuant to the applicable Transaction documents, as calculated in good faith by the Sale Parties;

17  and (f) be received by the Bid Deadline.[4]

18      24.    A Potential Bidder must accompany its bid with: (a) written evidence of available

19  cash, a commitment for financing (not subject to any conditions) or such other evidence of ability

20  to consummate the transaction contemplated by the bid documents (and, as applicable, to provide

21  adequate assurance of future performance of all obligations to be assumed in connection with such

22  Transaction) as the Sale Parties may reasonably request; (b) written documentation sufficient to

23  demonstrate the Potential Bidder's ability to provide adequate assurance of future performance,

24  including, without limitation, (i) the name of the prospective bidder and the relationship of the

25  proposed assignee to the prospective bidder (if not the prospective bidder), and the proposed trade-

26  _____

27  [4] In the event that the Debtor subsequently files a motion and obtains entry of an order granting it authority to enter
into a stalking horse agreement with a potential purchaser prior to the Bid Deadline, all bids must provide
consideration to the Debtor of at least the sum of (i) the stalking horse proposal, (ii) any break-up fee or expense

28  reimbursement approved by the Court.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

name under which the assignee intends to operate the leased premises if not a current trade-name of the Debtor; (ii) the proposed assignee's intended use for the space if different from the present operation; (iii) if available, audited financial statements and annual reports of the Potential Bidder and any other assignee for the past two (2) years; (iv) if available, cash flow projections for the proposed assignee, and any financial projections, calculations and/or pro formas prepared in contemplation of purchasing the assets, including the leases; (v) all documents and other evidence of the proposed assignee's retail experience and experience operating in a shopping center; and (vi) a contact person for the proposed assignee whom non Debtor parties may contact directly in connection with adequate assurance of future performance; (c) a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed; and (d) a signed statement that such bid is irrevocable until the later of  March 14, 2018 and the first Business Day following the closing of an alternative Transaction.

25.    A bid received from a Potential Bidder for any portion of the Assets that is determined by the Sale Parties to meet the above requirements will be considered a "Qualified Bid" and each Potential Bidder that submits such a Qualified Bid will be considered a "Qualified Bidder."

26.    The Debtor may, in its discretion, in consultation with the Committee, withdraw, some or all of the Assets from the Auction or sale process at any time before entry of an order approving a sale of the Assets to a Qualified Bidder.

27.    The Debtor may value a Qualified Bid based upon any and all factors that the Debtor deems pertinent, including, among others: (a) the purported amount of the Qualified Bid, including non-cash consideration, if applicable; (b) the value to be provided to the Debtor under the Qualified Bid; (c) contingencies with respect to the Transaction and the ability to close the proposed Transaction on a basis acceptable to the Debtor, and any incremental costs to the Debtor in closing delays; (d) the ability to obtain any and all necessary antitrust or other applicable regulatory approvals for the proposed transaction; and (e) any other factors the Debtor may deem

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    relevant (as may be determined by the Debtor following consultation with the Committee).

2          28.    Baseline Bids. Qualified Bidders that have submitted Qualified Bids are eligible to

3    participate in the Auction.  The Sale Parties will select what they determine to be the highest

4    and/or otherwise best Qualified Bid or combination of Qualified Bids for any portion of the Assets

5    (the "Baseline Bid(s)") to serve as the starting point at the Auction taking into account all relevant

6    considerations, including the financial condition of the applicable bidder and certainty of closing.

7          29.    Auction.  If more than one Qualified Bid is received by the Bid Deadline, the

8    Debtor will conduct the Auction.  The Auction will take place at the offices of the Debtor's

9    counsel, on February 23, 2018 at 10:00 a.m. (prevailing Pacific Time) or such other time and place

10   as the Debtor may notify Qualified Bidders who have submitted Qualified Bids.  Only a Qualified

11   Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction, subject to

12   such limitations as the Sale Parties may impose.  At the Auction, participants will be permitted to

13   increase their bids and improve their terms; provided that any such increased or improved bid

14   must be a Qualified Bid (except that the Bid Deadline will not apply).  Bidding for any part of the

15   Assets will start at the purchase price and terms proposed in the applicable Baseline Bid.

16   Following consultation with the Debtor's pre- and postpetition secured lenders (the "Consultation

17   Parties"), the Sale Parties will announce the bidding increments for bids on one or more of the

18   Assets at the outset of the Auction, which shall be no less than $100,000.  The Sale Parties may at

19   any time adopt rules for the Auction that they reasonably determine to be appropriate to promote

20   the goals of the Bidding Process and are not in conflict with the Bidding Procedures, including one

21   or more adjournments of the Auction.

22         30.    Prior to the conclusion of the Auction, the Sale Parties will:  (a) review and

23   evaluate each bid made at the Auction on the basis of financial and contractual terms and other

24   factors relevant to the Marketing Process, including those factors affecting the speed and certainty

25   of consummating a Transaction; (b) in the exercise of their good faith business judgment and

26   consistent with the Bidding Procedures, identify the highest or otherwise best offer or collection of

27   offers  (the "Successful Bid(s)"); (c) inform and consult with the Consultation Parties regarding

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

the foregoing; and (d) notify all Qualified Bidders participating in the Auction, prior to its

adjournment, of the successful bidder or bidders (the "Successful Bidder(s)") and the amount and

other material terms of the Successful Bid(s).  After determining the Successful Bid(s) for the

Assets, the Debtor may determine, in their reasonable business judgment, in consultation with the

Consultation Parties, which Qualified Bid(s) are the next best bid or bids (the "Next Best Bid(s)").

31.    Acceptance of Qualified Bids.  The Debtor's selection of the Successful Bid will

not constitute the Debtor's acceptance of that bid.  The Debtor will have accepted a Qualified Bid

only when a contract therefor has been executed and such Qualified Bid has been approved by the

Court at the Sale Hearing.  If the Successful Bidder does not close the Sale by the date agreed to

by the Debtor and the Successful Bidder, then the Debtor shall be authorized, but not required, to

close with the party that submitted the Next Best Bid (the "Next Best Bidder"), without a further

court order.

32.    Modification of Bidding Procedures.  The Sale Parties may amend the Bidding

Procedures or the bidding process at any time and from time to time in any manner that they

determine in good faith will best promote the goals of the process, including extending or

modifying any of the dates described herein.

33.    Return of Good Faith Deposit.  The Good Faith Deposits of all Qualified Bidders

will be held in escrow, without interest, and while held in escrow will not become property of the

Estate unless released from escrow pursuant to terms of the applicable escrow agreement or

pursuant to further order of the Court.  At the closing of a Transaction contemplated by a

Successful Bid, the applicable Successful Bidder will be entitled to a credit for the amount of its

Good Faith Deposit.  The Good Faith Deposits of each Next-Highest Bidder shall be retained until

seven (7) days after the applicable closing.  The Good Faith Deposits of the other Qualified

Bidders will be returned as soon as practicable but no later than ten (10) days following the

Auction.

34.    The Debtor believes that the proposed Bidding Procedures provide an appropriate

framework for selling the Assets and will enable the Debtor to fully review, analyze and compare

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  all Bids received to determine which Bid is in the best interests of the Estate.

2  **C.**    **Proposed Assumption and Assignment Procedures**

3      35.    Additionally, the Debtor, as part of a Sale Transaction, may assume and assign

4  Assumed and Assigned Agreements.  By no later than February 8, 2018, the Debtor will file a

5  schedule of cure obligations (the "Cure Schedule") for its executory contracts and unexpired

6  leases.  The Cure Schedule will include a description of each executory contract and unexpired

7  lease potentially to be assumed and assigned by a potential buyer and the amount, if any, the

8  Debtor believes is necessary to cure any monetary default under such agreements pursuant to

9  section 365 of the Bankruptcy Code (the "Cure Costs").  A copy of the Cure Schedule, together

10  with an assumption and assignment notice (the "Assumption and Assignment Notice") will be

11  served on each of the nondebtor parties listed on the Cure Schedule by first class mail on the date

12  that the Cure Schedule is filed with the Court.

13      36.    The Debtor proposes that any objections to the assumption and assignment of any

14  executory contract or unexpired lease identified on the Cure Schedule, including, but not limited

15  to, objections relating to the Cure Costs set forth on such schedule, must be in writing, filed with

16  the Court, and be actually received on or before February 18, 2018 to (a) Debtor; (b) Debtor's

17  counsel; (c) counsel to the Committee; (d) counsel to any postpetition lender; and (e) counsel to

18  Comvest (collectively, the "Notice Parties"); *provided, however*, that the deadline for objecting to

19  the assignment of the executory contracts and unexpired leases to such Successful Bidder on the

20  basis of adequate assurance of future performance will be the commencement of the Sale Hearing.

21  Any such objection shall set forth a specific default in any executory contract and unexpired lease

22  and claim a specific monetary amount that differs from the amount (if any) specified by the Debtor

23  in the Cure Schedule.

24      37.    If no objections are received, then the Cure Costs set forth in the Cure Schedule

25  will be binding upon the nondebtor parties to the executory contracts and unexpired leases set

26  forth in the Cure Schedules for all purposes in these chapter 11 cases and will constitute a final

27  determination of the total Cure Costs required to be paid by the Debtor in connection with the

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   assumption and assignment of the executory contracts and unexpired leases.  In addition, all

2   counterparties to the executory contracts and unexpired leases set forth in the Cure Schedules will

3   (a) be forever barred from asserting any additional cure or other amounts, and the Debtor and any

4   Successful Bidder will be entitled to rely solely upon the Cure Costs set forth in the Assumption

5   and Assignment Notice; (b) be deemed to have consented to the assumption and assignment; and

6   (c) be forever barred and estopped from asserting or claiming against the Debtor or a Successful

7   Bidder that any additional amounts are due or other defaults exist, that conditions to assignment

8   must be satisfied under such executory contracts and unexpired leases, or that there is any

9   objection or defense to the assumption and assignment of such executory contracts and unexpired

10  leases.

11      38.     Where a nondebtor counterparty to an executory contract or unexpired lease set

12  forth in the Cure Schedules files an objection asserting a cure amount higher than the proposed

13  Cure Costs (the "Disputed Cure Amount"), then (a) to the extent that the parties are able to

14  consensually resolve the Disputed Cure Amount prior to the Sale Hearing, and subject to the

15  Successful Bidder's consent to such consensual resolution, the Debtor shall promptly provide the

16  Notice Parties and the Successful Bidder notice and opportunity to object to such proposed

17  resolution, or (b) to the extent the parties are unable to consensually resolve the dispute prior to the

18  Sale Hearing, the amount to be paid under section 365 of the Bankruptcy Code with respect to

19  such Disputed Cure Amount will be determined at the Sale Hearing or at such other date and time

20  as may be fixed by this Court.  All other objections to the proposed assumption and assignment of

21  executory contracts and unexpired leases will be heard at the Sale Hearing.  The Debtor intends to

22  cooperate with the counterparties to executory contracts and unexpired leases set forth in the Cure

23  Schedules, to attempt to reconcile any differences with respect to a particular cure amount.

24      39.     Within 48 hours of the Auction, the Debtor will provide the financial information

25  to demonstrate that any Successful Bidder or Next-Highest Bidder, as applicable, can provide

26  adequate assurance of future performance under section 365 of the Bankruptcy Code to those

27  counterparties who have (i) submitted a written request (which may be by e-mail to Debtor's

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

counsel) for such information, and (ii) confirmed in writing (by e-mail is acceptable) their

agreement to keep such information strictly confidential and use it solely for the purpose of

evaluating whether the bidder has provided adequate assurance of future performance under the

counterparty's contract or lease; provided, however, that the Successful Bidder or Next-Highest

Bidder, as applicable, may require the counterparties to execute confidentiality agreements prior to

the remittance of any confidential, non-public information.

40.    The Debtor requests that any party failing to object to the proposed transactions be

deemed to consent to the treatment of its executory contract and/or unexpired lease under section

365 of the Bankruptcy Code.  Moreover, the Debtor requests that each such party be deemed to

consent to the assumption and assignment of its executory contract and/or unexpired lease

notwithstanding any anti-alienation provision or other restriction on assignment.

**D.**    **Proposed Notice of the Sale Hearing**

41.    Pursuant to Bankruptcy Rule 2002(a) and Local Rule 9013-1(d), the Debtor is

required to provide its creditors with 21 days' notice of the Sale Hearing.  Pursuant to Bankruptcy

Rule 2002(c), such notice must include the date, time, and place of the Auction and the Sale

Hearing, and the deadline for filing any objections to the relief requested in the Sale Motion.  The

Debtor proposes that the deadline for objecting to approval of a Sale of substantially all of the

Debtor's assets on terms similar to those set forth in the form APA shall be 4:00 p.m. (Pacific

Time) on February 18, 2018.

42.    The Debtor has provided notice of this Motion and the relief requested herein to the

following parties or their counsel: (a) the office of the United States Trustee (the "U.S. Trustee");

(b) the Committee; (c) all parties who have asserted a lien or security interest against any of the

Assets; (d) all parties to the Debtor's executory contracts and unexpired leases that may be

assumed and assigned in connection with the Sale; (e) the Internal Revenue Service; and (f) all

parties requesting notice in these chapter 11 cases (clauses (a) through (f) above, the "Bid

Procedures Notice Parties").  In addition, within one day after entry of the Bidding Procedures

Order, the Debtor will serve the Auction and Hearing Notice by first-class mail, postage prepaid

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

upon the Bid Procedures Notice Parties and all parties listed in the Debtor's creditor matrix. Further, within two days after entry of the Bidding Procedures Order, or as soon as practicable thereafter, the Debtor will place a publication version of the Auction and Hearing Notice for one day in the national edition of the Los Angeles Times.

43.    The Auction and Hearing Notice will include, among other things, the date, time and place of the Auction and the Sale Hearing and the deadline for filing any objections to the relief requested in the Sale Motion once they are set by the Court, and, will therefore, comply with Bankruptcy Rule 2002(c) and Local Rule 6004-1.  The Debtor submits that the methods of notice described herein comply fully with Bankruptcy Rule 2002 and constitute good and adequate notice of the proposed sale of the Assets.  Therefore, the Debtor respectfully requests that this Court approve the notice procedures proposed above.

## IV.

## BASIS FOR RELIEF

### A.    The Bidding Procedures Are Fair And Designed to Maximize Value

44.    The Debtor believes that the Bidding Procedures (a) provide ample notice of each element of the proposed sale and marketing process, (b) facilitate a value maximizing sale or other transaction, and (c) ensure an unbiased and good faith process. The detailed Bidding Procedures outlined above and in Exhibit 1 to the proposed Bidding Procedures Order provide notice designed to fully inform all parties with a stake in the marketing process regarding the portions of the process most relevant to their interests. For example, the Bidding Procedures ensure that entities asserting an interest in the Assets or that are party to the executory contracts or unexpired leases will receive notice of a proposed Sale Transaction, the procedures for objecting to a Sale Transaction, or the assumption and assignment of their respective contracts or leases (as applicable). Similarly, the Bidding Procedures outline all material aspects of the potential purchaser notification, bid qualification, due diligence, bid submission, bid selection, and auction process, including the timing for each. Thus, the Bidding Procedures provide assurance to each entity potentially interested in purchasing the Assets or consummating some other Transaction that

their respective rights will be protected and the Marketing Process will be fair and reasonable. At the same time, the Bidding Procedures provide the Debtor with the opportunity to consider all competing offers and to select, in its reasonable business judgment, and after consultation with the Notice Parties, the highest and best offer.

45.     Accordingly, the Debtor believes the Court should approve the Bidding Procedures.

**B.      Approval of The Sale is Warranted Under Section 363**

46.     Section 363(b) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

47.     The Ninth Circuit has ruled in bankruptcy cases that a sale of a debtor's property should be approved if it is in the best interests of the estate and creditors.  *In re Huntington Ltd.,* 654 F.2d 578, 589 (9th Cir. 1991); *In re Equity Funding Corp.*, 492 F.2d 793, 794 (9th Cir. 1974). The application of the business judgment test affords the debtor in possession discretion in balancing the costs and benefits of administering or disposing of estate assets according to the needs of the estate.  *See In re Canyon P'ship,* 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).

48.     In determining whether any sale of assets out of the ordinary course of business should be approved, bankruptcy courts usually consider the following factors:

      a.      Whether a sufficient business reason exists for the sale;

      b.      Whether the proposed sale is in the best interest of the estate, which in turn consists of the following factors:

      i.      that terms of the sale are fair and reasonable;

      ii.     that the proposed sale has been adequately marketed;

      iii.    that the proposed sale terms have been properly negotiated and proposed in good faith;

      iv.     that the purchaser is involved in an "arms-length" transaction with the seller; and

      c.      Whether notice of the sale was sufficient.

*In re Walter*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988).

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

49.      Courts have uniformly held that approval of a proposed sale of property pursuant to section 363(b) of the Code is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the debtor or trustee.  *See Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (stating that "there must be articulated business justifications for using, selling, or leasing the property outside of the ordinary course of business); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 780 F.2d 1223, 1226 (2d Cir. 1983).  Courts have permitted a proposed sale of all or substantially all the assets of a debtor outside the ordinary course of business if such a sale is necessary to preserve the value of the assets for the estate, its creditors, or interest holders.  *See In re Abbots Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d at 1063.

50.      Here, a strong business justification exists for the Sale.  Should it be determined that a reorganization is undesirable, any extended delay in selling the Assets could have a severe detrimental effect on the Debtor's ability to continue operations and preserve value to the fullest extent possible.  Furthermore, notice of the Sale has been reasonable and adequate.  The Debtor is providing direct notice of the sale to all known creditors of the Estate and is also publishing notice of the sale in the national edition of the Los Angeles Times.  Further, the Sale has been proposed in good faith.  Finally, because the Sale is subject to bid procedures and an auction, the price ultimately received as a result of the successful bid should be deemed fair and reasonable.

51.      Here, a strong business justification exists for the Sale.  Should it be determined that a reorganization is undesirable, any extended delay in selling the Assets could have a severe detrimental effect on the Debtor's ability to continue operations and preserve value to the fullest extent possible.  Furthermore, notice of the Sale has been reasonable and adequate.  The Debtor is providing direct notice of the sale to all known creditors of the Estate and is also publishing notice of the sale in the national edition of the Los Angeles Times.  Further, the Sale has been proposed in good faith.  Finally, because the Sale is subject to bid procedures and an auction, the price ultimately received as a result of the successful bid should be deemed fair and reasonable.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1

**C.        The Purchaser is a Good Faith Purchaser**

2        52.        The Debtor anticipates that that any party that is the successful bidder at the

3   Auction will ask the Debtor to request that they receive the protections set forth in section 363(m)

4   of the Bankruptcy Code.  Specifically, section 363(m) of the Bankruptcy Code provides:

5                The reversal or modification on appeal of an authorization under
                subsection (b) or (c) of this section of a sale or lease of property

6                does not affect the validity of a sale or lease under such
                authorization to an entity that purchased or leased such property in

7                good faith, whether or not such entity knew of the pendency of the
                appeal, unless such authorization and such sale or lease were stayed

8                pending appeal.

9   11 U.S.C. § 363(m).

10        53.        Section 363(m) is a codification of some aspects of equitable mootness with respect

11   to sales. Unlike equitable mootness, however, section 363(m) provides for specific procedures and

12   findings in order to provide certainty for sales.  *In re PW, LLC*, 391 B.R. 25, 35 (B.A.P. 9th Cir.

13   2008).

14        54.        Here, the Debtor will provide that any asset purchase agreement or other

15   transaction documents entered into in which  it seeks approval from the Court represents a

16   negotiated, arms-length transaction, in which the purchaser and the Debtor has acted in good faith,

17   without collusion or fraud of any kind.  Any such purchaser should be entitled to the protections of

18   section 363(m).  *See Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 280 (9th Cir. 1992); *Paulman v.*

19   *Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),* 163 F.3d 570 (9th Cir. 1998).  Upon

20   filing an executed asset purchase agreement, the Debtor intends to introduce evidence by way of

21   declaration and at the Sale Hearing to support such a finding.

22   **D.        Approval of the Sale Free and Clear of Liens, Claims and Encumbrances**

23        55.        The Debtor requests approval to sell the Assets free and clear of any and all liens,

24   claims, interests and encumbrances in accordance with section 363(f) of the Bankruptcy Code.

25   Pursuant to section 363(f), a debtor in possession may sell estate property "free and clear of any

26   interest in such property of an entity other than the estate" if any one of the following conditions is

27   satisfied:

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1          a.        applicable nonbankruptcy law permits sale of such property free and clear

2    of such interest;

3          b.        such entity consents;

4          c.        such interest is a lien and the price at which such property is to be sold is

5    greater than the aggregate value of all liens on such property;

6          d.        such interest is in bona fide dispute; or

7          e.        such entity could be compelled, in a legal or equitable proceeding, to accept

8    a money satisfaction of such interest.

9    11 U.S.C. § 363(f).

10         56.       Section 363(f) is written in the disjunctive; thus, satisfaction of any one of the five

11   conditions is sufficient to sell property free and clear of all liens and the relevant bases for the sale

12   being "free and clear" will be set forth in the applicable notice.  *In re PW, LLC*, 391 B.R at 41.

13   Furthermore, it is well established that a bankruptcy court has the power, pursuant to section

14   363(f) of the Bankruptcy Code, to approve the sale of a debtor's assets free and clear of any claims

15   against the debtor.  *In re TWA Airlines, Inc.,* 322 F.3d 283, 288-90 (3d Cir. 2003) (holding that

16   successor liability claims are "interests in property" within the meaning of §363(f)); *United Mine*

17   *Workers of Am. Benefit Plan v. Leckie Smokeless Coal Co. (In re  Leckie Smokeless Coal Co.),* 99

18   F.3d 573 (4th Cir. 1996) (same).

19         57.       The Debtor submits that the sale of the Assets free and clear of liens, claims and

20   encumbrances will satisfy the requirements of section 363(f) of the Bankruptcy Code.  First, the

21   sale may proceed free and clear of any liens to the extent the secured parties consent to the sale.

22   Second, the senior debt held by State Bank And Trust Company has already been paid with a

23   recently-approved replacement postpetition loan, and the Debtor intends to pay any further valid

24   postpetition liens outstanding at the time of any sale with the proceeds of the sale.  Third, with

25   respect to the asserted junior lien of Comvest Capital II, L.P. (agent for itself and lender), the

26   Debtor disputes this claim and related liens (for all the reasons set forth in the First Day

27   Declaration, incorporated herein by reference).

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

58.     Finally, the Debtor also believes that the service of the Auction and Hearing Notice in accordance with the terms set forth in this motion will afford creditors sufficient notice of the Sale and therefore provides additional justification for approval of the sale free and clear of all liens, claims and encumbrances.

**E.**     **Approval of the Assumption and Assignment of Executory Contracts and Unexpired Leases**

59.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a).  The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection. *See, e.g., In re HQ Global Holdings, Inc.,* 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that debtor's decision to assume or reject executory contract is governed by business judgment standard and can only be overturned if decision was product of bad faith, whim or caprice); *see also In re Market Square Inn, Inc.,* 978 F.2d 116, 121 (3d Cir. 1992) (finding that assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court").

60.     The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption] or rejection of the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel  Corp.),* 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987).  Any more exacting scrutiny would slow the administration of a debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten a court's ability to control a case impartially. *See Richmond Leasing Co. v. Capital Bank,* 762 F.2d 1303, 1311 (5th Cir. 1985).  Moreover, pursuant to section 365(b)(1) of the Bankruptcy Code, for a debtor to assume an executory contract, it must "cure, or provide adequate assurance that the debtor will promptly cure," any default, including compensation for "actual pecuniary loss" relating to such default. 11 U.S.C. 365(b)(1).

61.    Under section 365(f) of the Bankruptcy Code, a debtor, after assuming a contract, may assign its rights under the contract to a third party.  11 U.S.C. § 365(f); *see also In re Rickel Home Center, Inc.,* 209 F.3d 291, 299 (3d Cir. 2000) ("The Code generally favors free assignability as a means to maximize the value of the debtor's estate."); *see also In re Headquarters Dodge, Inc.,* 13 F.3d 674, 682 (3d Cir. 1994) (noting that the purpose of section 365(f) is to assist the trustee in realizing the full value of the debtor's assets).  Section 365(f)(2)(B) requires, however, that adequate assurance of future performance by an assignee exists. 11 U.S.C. § 365(f)(2)(B).  The purpose of the adequate assurance requirement is to protect the interests of the non-debtor party to an assigned contract, as section 365(k) of the Bankruptcy Code relieves a debtor from liability for any breach of a contract that may occur after an assignment. *Cinicola v. Scharffeberger,* 248 F.3d 110, 120 (3d Cir. 2001).  Adequate assurance of future performance is not required for every term of an executory contract or unexpired lease, but only such terms that are "material and economically" significant. *In re Fleming Cos., Inc.,* 499 F.3d 300, 305 (3d Cir. 2007). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given a "practical, pragmatic construction." *In re DBSI, Inc.,* 405 B.R. 698, 708 (Bankr. D. Del. 2009); *see also In re Decora Indus.,* 2002 U.S. Dist. LEXIS 27031, at *23 (D. Del. 2002) ("[A]dequate assurance falls short of an absolute guarantee of payment.").  Adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986)* (finding that adequate assurance is present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business to give it strong likelihood of success).

62.    The assumption and assignment of certain executory contracts and unexpired leases is an integral part of any Sale Transaction.  It is thus an appropriate exercise of business judgment for the Debtor to agree to assume and assign the contracts and leases as would be required by the Sale Transaction.  Additionally, the Debtor submits that the notice provisions, and the objection deadline for counterparties to raise objections to the assumption and assignment of contracts and

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    leases, as proposed in this Motion, are adequate to protect the rights of counterparties to the

2    Debtor's contracts and leases.  Furthermore, the Debtor will demonstrate adequate assurance of

3    future performance at the Sale Hearing.

4    **F.    Basis for Relief For Liquidation Transaction**

5        63.    The proposed Bidding Procedures permit going concern and liquidation bids for the

6    Assets.  In the event that the winning bid contemplates a liquidation transaction, the legal basis for

7    relief in connection with a liquidation of the Debtor's Assets is discussed below.

8                    **a.    Waiver of Compliance With Laws Regarding Liquidation Sales**

9        64.    Many state and local laws, statutes, rules and ordinances require special and

10   cumbersome licenses, waiting periods, time limits and other procedures for store closing,

11   liquidation or similar sales.  By virtue of section 1334 of title 28 of the United States Code,

12   however, this Court has exclusive jurisdiction over the Debtor's property wherever located.  28

13   U.S.C. § 1334 (2008).  As such, in the context of a bankruptcy case, when creditors receive notice

14   of a proposed sale, as well as the opportunity to be heard in court, enforcement of such statutes

15   and regulations is redundant and unnecessary.  As a result, the Debtor requests that, in the event

16   that the Successful Bid is a liquidation transaction, any order approving a liquidation transaction

17   include a provision that specifically waives the Debtor's or its future agent's obligation to comply

18   with any state or local laws restricting store closing, going out of business, or similar sales.

19       65.    In general, debtors must comply with 28 U.S.C. § 959(b), which provides that a

20   debtor in possession must "manage and operate the property . . . according to the requirements of

21   the valid laws of the state in which such property is situated . . . ."  Courts, however, have held that

22   a debtor in possession that is liquidating estate assets does not "manage and operate" the property

23   for the purposes of 28 U.S.C. § 959(b). *Alabama Surface Mining  Comm'n v. N.P. Mining Co.,*

24   *Inc. (In re N.P. Mining Co., Inc.),* 963 F.2d 1449, 1460-61 (11th Cir. 1992) (holding that 28

25   U.S.C. § 959(b) does not apply when debtor in possession is liquidating property and no longer

26   operating its business).  In addition, the Bankruptcy Code preempts state and local laws that

27   conflict with its underlying policies. *Belculfine v. Aloe (In re  Shenango Group, Inc.),* 186 B.R.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

623, 628 (Bankr. W.D. Pa. 1995) ("Trustees and debtors-in-possession have unique fiduciary and legal obligations pursuant to the bankruptcy code. . . . [A] state statute [] cannot place burdens on [a debtor] where the result would contradict the priorities established by the federal bankruptcy code."), *aff'd, 112 F.3d 633 (3d Cir. 1997).*

### b.    Unenforceability of Any Restriction in the Leases

66.    Certain of the Debtor's leases governing the premises of the stores subject to any Liquidation Transaction may contain provisions purporting to restrict or prohibit the Debtor from conducting store closing, liquidation, or similar sales.  Such provisions have been held to be unenforceable in chapter 11 cases as they constitute an impermissible restraint on a debtor's ability to properly administer its reorganization case and maximize the value of its assets under section 363 of the Bankruptcy Code.  *Ames Dep't Stores,* 136 B.R. at 359 (deciding that enforcement of such lease restrictions would "contravene overriding federal policy requiring debtor to maximize estate assets. . . ."); *In re R. H. Macy and Co., Inc.,* 170 B.R. 69, 73-74 (Bankr. S.D.N.Y. 1994) (holding that the lessor could not recover damages for breach of a covenant to remain open throughout the lease term, because the debtor had a duty to maximize the value to the estate and the debtor fulfilled this obligation by holding a store closing sale and closing the store.).[5]

67.    Thus, to the extent that such provisions or restrictions exist in any of the leases of the stores subject to any Liquidation Transaction, the Debtor requests that the Court authorize the Debtor and/or the Successful Bidder to conduct any liquidation sales without interference by any landlords or other persons affected, directly or indirectly, by the liquidation sales.

### c.    Any Liquidation Sales Should Be Exempt From Any "Fast Pay" Laws

68.    Certain states in which the Debtor operates also have laws and regulations that require the Debtor to pay an employee substantially contemporaneously with his or her termination (the "Fast Pay Laws").  In many cases, these laws require the payment to occur either immediately or within a period of only a few days from the date such employee is terminated.  To the extent that a Liquidation Transaction results in a significant number of employees being

---

[5] This Court has already approved similar action be taken with respect to the Debtor's first store closing motion.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

terminated, the Debtor respectfully submits that the Debtor should be granted relief from the Fast
Pay Laws.  As set forth above, the Bankruptcy Code preempts state and local laws that conflict
with its underlying policies.  *See, e.g., Coldwater Creek Inc.,* Case No. 14-10867 (BLS) (waiving
"fast pay" laws and regulations in connection with approval of store closing sales); *Filene's
Basement, LLC,* Case No. 11-13511(KJC) (Bankr. D. Del. Nov. 2, 2011) (same); *In re Linens
Holding Co.,* Case No. 08-10832 (Bankr. D. Del. Oct. 28, 2008) (same).

**G.**     **Waiver of Rules 6004(h) and 6006(d)**

69.     The Debtor requests that, upon entry of the Sale Order, the Court waive the 14 day
stay requirements of Bankruptcy Rules 6004(h) and 6006(d).  It is likely that any Successful
Bidder would seek to close on any Sale Transaction as quickly as possible.  The artificial 14-day
delay imposed by the Bankruptcy Rules could hinder the ability to close any sale transaction
efficiently and without need for further due diligence.  The Debtor therefore respectfully requests
that the Court waive the 14-day stay requirements contained in Bankruptcy Rules 6004(h) and
6006(d).

**V.**

**CONCLUSION**

Based on the foregoing, the Motion should be granted.

DATED:  January 18, 2018                    **Sulmeyer**Kupetz
                                             A Professional Corporation


By:   */s/ Asa S. Hami*
      Asa S. Hami
      Attorneys for Debtor and Debtor in Possession
      Shiekh Shoes, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# <u>EXHIBIT A</u>

**Bidding Procedures Order**

David S. Kupetz (CA Bar No. 125062)
  *dkupetz@sulmeyerlaw.com*
Asa S. Hami (CA Bar No. 210728)
  *ahami@sulmeyerlaw.com*
Claire K. Wu (CA Bar No. 295966)
  *ckwu@sulmeyerlaw.com*
SulmeyerKupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California  90071-1406
Telephone: 213.626.2311

Attorneys for Debtor and Debtor in Possession
Shiekh Shoes, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:17-bk-24626-VZ |
| SHIEKH SHOES, LLC<br>a California limited liability company,<br><br>        Debtor. | Chapter 11<br><br>**ORDER ON DEBTOR'S MOTION (I) ESTABLISHING BIDDING AND SALE PROCEDURES; (II) SCHEDULING AUCTION AND SALE HEARING; AND (III) GRANTING RELATED RELIEF** |

Date:     January 25, 2018
Time:    11:00 a.m.
Place:    Courtroom 1368
              255 East Temple Street
              Los Angeles, CA 90012

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

0029

1    This matter coming before the Court on the motion (the "Motion")[1] of the above-captioned

2    debtor and debtor in possession (the "Debtor") for the entry of an order pursuant to sections 105,

3    362, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004,

4    and 6006 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the

5    "Bankruptcy Rules"), and Rules 6004-1 and 9013-1 of the Local Bankruptcy Rules of the United

6    States Bankruptcy Court for the Central District of California (the "Local Rules"): (i) approving

7    procedures in connection with the marketing of potential investments in the Debtor and the auction

8    and sale of the Debtor's Assets; (ii) scheduling the related auction and hearing to consider approval

9    of sale; and (iii) granting related relief; the Court having found that (a) the Court has jurisdiction to

10   consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (b)

11   venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (c) this is a core proceeding

12   pursuant to 28 U.S.C. § 157(b); and (d) notice of the Motion was sufficient under the circumstances;

13   and after due deliberation the Court having determined that the relief requested in the Motion is in

14   the best interests of the Debtor, its Estate and its creditors; and good and sufficient cause having

15   been shown;

16                  **IT IS FURTHER FOUND AND DETERMINED THAT:**

17          A.      The Court has jurisdiction over this matter and over the property of the Debtor

18   and its bankruptcy estate pursuant to 28 U.S.C. §§ 157(a) and 1334. This matter is a core proceeding

19   pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O). The statutory predicates for the relief

20   sought herein are 11 U.S.C. §§ 105, 363, 364, 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9008,

21   9014 and 9019.  Venue of these Cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and

22   1409.

23          B.      The Debtor has offered good and sufficient reasons for, and the best interests

24   of its Estate will be served by, this Court granting the Motion to the extent provided in this Order,

25   including approval of (i) the Bidding Procedures, attached hereto as Annex 1, (ii) the procedures

26   described below for the determination of the amounts necessary to cure defaults under the Assumed

27

28   ───────────────
[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    and Assigned Agreements so as to permit the assumption and assignment under section 365 of the

2    Bankruptcy Code of the Assumed and Assigned Agreements, and (iii) the form and manner of notice

3    of the Auction and Sale Hearing described in the Motion and this Order.

4              C.      Good and sufficient notice of the relief sought in the Motion has been given

5    under the circumstances, and no further notice is required except as set forth herein with respect to

6    the Auction and the Sale Hearing.  Subject to the immediately preceding sentence, a reasonable

7    opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all

8    interested persons and entities.

9              D.      In accordance with Local Rules 6004-1(b), the Debtor has properly filed and

10   noticed the Motion.  The issuance and immediate effectiveness of this Order as of the date hereof,

11   including approval of the Bidding Procedures, is supported by evidence of compelling business

12   justifications and other circumstances demonstrating that the relief granted by this Order is

13   necessary to avoid immediate and irreparable harm to the Debtor and the Estate.

14             E.      The proposed notice of the Auction, the Sale Hearing and the Bidding

15   Procedures, as set forth in the Motion and this Order, is appropriate and sufficient, and is reasonably

16   calculated to provide all interested parties with timely and proper notice of the Auction, the Sale

17   Hearing and the Bidding Procedures, and no other or further notice shall be required for a Sale

18   Transaction or the assumption and assignment of executory contracts and unexpired leases.

19             F.      The Marketing Process is reasonable and sufficient under the circumstances

20   of this chapter 11 case.

21             G.      The Bidding Procedures were negotiated in good faith and at arms' length.

22             H.      The Bidding Procedures are reasonably designed to maximize value for the

23   Estate.

24   / / /

25   / / /

26   / / /

27   / / /

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED to the extent provided herein.

2.      All objections to the entry of this Order or to the relief provided herein that have not been withdrawn with prejudice, waived, resolved or settled are hereby denied and overruled on the merits with prejudice.

3.      The Bidding Procedures, as attached as <u>Annex 1</u>, are hereby approved, are incorporated herein by reference, and shall govern all bids and bid proceedings in connection with potential Transactions.  The Sale Parties are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

4.      The deadline for submitting a Qualified Bid shall be February 20, 2018 at 4:00 p.m. prevailing Pacific Time (the "<u>Bid Deadline</u>"), subject to extension in accordance with the Bidding Procedures.

5.      All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction, the terms and conditions of any Transaction, and the transfer of any Assets.

6.      The Auction will take place at the offices of Debtor's counsel on February 23, 2018, or such other time and place as the Sale Parties may notify Qualified Bidders and the Debtor's secured lenders.  Only Qualified Bidders will be permitted to participate in the Auction.   In the event the Sale Parties adjourn the Auction, the Debtor shall file a notice setting forth the adjournment.

7.      Each Qualified Bidder participating at the Auction will be required to confirm in writing that (a) it has not engaged in any collusion with respect to the bidding process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

8.      The Auction will be conducted openly and will be transcribed or videotaped.

9.      The Court shall convene the Sale Hearing on March  1,  2018  at  _____ a.m./p.m. (prevailing Pacific Time) or as soon thereafter as counsel and interested parties may be

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   heard, at which time the Court will consider approval of a Sale Transaction(s) to the Successful

2   Bidder(s) and the entry of the Sale Order.  At the Sale Hearing, the Debtor will seek the entry of

3   the Sale Order approving and authorizing the Sale to the Successful Bidder(s).  The Debtor may

4   adjourn the Sale Hearing by filing a notice of the adjournment or by announcement at the Sale

5   Hearing.

6            10.    Objections to approval of a Sale Transaction, including the sale of the

7   Debtor's assets free and clear of liens, claims, encumbrances and interests pursuant to section 363(f)

8   of the Bankruptcy Code, must be in writing, state the basis of such objection with specificity and be

9   filed with this Court and served so as to be received on or before 4:00 p.m. (prevailing Pacific Time)

10  on February 18, 2018 (the "Objection Deadline") by: (a) Debtor's counsel; (b) the U.S. Trustee; (c)

11  the Debtor's secured lenders; and (d) counsel to the Committee (collectively, the "Notice Parties").

12  Failure to timely file an objection in accordance with this Order shall forever bar the assertion of

13  any objection to the entry of the Sale Order(s), or consummation of a Sale Transaction(s), and shall

14  be deemed to constitute consent to entry of the Sale Order(s) and consummation of the Sale

15  Transaction(s) and all transactions related thereto including, without limitation, for purposes of

16  section 363(f) of the Bankruptcy Code.

17           11.    By no later than February 8, 2018, the Debtor will file the Cure Schedule.

18  The Cure Schedule will include a description of each executory contract and unexpired lease

19  potentially to be assumed and assigned by a potential buyer and the amount, if any, the Debtor

20  believes is necessary to cure such agreements pursuant to section 365 of the Bankruptcy Code (the

21  "Cure Costs").  A copy of the Cure Schedule, together with an assumption and assignment notice

22  (the "Assumption and Assignment Notice") will be served on each of the nondebtor parties listed

23  on the Cure Schedule by first class mail on the date that the Cure Schedule is filed with the Court.

24           12.    Objections to (a) the Cure Costs set forth in the Cure Schedule, and (b) the

25  assumption and assignment of any executory contract or unexpired lease identified in the Cure

26  Schedule, must be in writing, state the basis of such objection with specificity and be filed with the

27  Court, and be actually received on or before February 18, 2108 by the Notice Parties; *provided*,

28

*however*, that the Debtor shall file a notice identifying the Successful Bidder(s) and Next Best Bidder with the Court and serve such notice upon each party identified in the Cure Schedules that requests such notice in writing (including by email to Debtor's counsel), and the deadline for objecting to the assignment of the Assumed and Assigned Agreements to such Successful Bidder or Next Best Bidder on the basis of adequate assurance of future performance shall be the commencement of the Sale Hearing.

13.    The form of the Auction and Hearing Notice and the Assumption and Assignment Notice are hereby approved and appropriate and sufficient for all purposes and no other or further notice shall be required if the Debtor serve such notices in the manner provided in the Motion and this Order.  No finding or ruling is made in this Order as to the merits of any motion for approval of the Sale.  Within one (1) business day of the entry of this Order or as soon thereafter as practicable, the Debtor shall cause the Auction and Hearing Notice to be served upon, without limitation: (a) the office of the United States Trustee (the "U.S. Trustee"); (b) the Committee; (c) all parties who have asserted a lien or security interest against any of the Assets; (d) all parties to the Debtor's executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale; (e) the Internal Revenue Service; and (f) all parties requesting notice in these chapter 11 cases.

14.    Within 48 hours of the Auction, the Debtor shall provide financial information to demonstrate that any Successful Bidder or Next-Highest Bidder, as applicable, can provide adequate assurance of future performance under section 365 of the Bankruptcy Code to those counterparties who have (i) submitted a written request (which may be by e-mail to Debtor's counsel) for such information, and (ii) confirmed in writing (by e-mail is acceptable) their agreement to keep such information strictly confidential and use  it solely for the purpose of evaluating whether the bidder has provided adequate assurance of future performance under the counterparty's contract or lease; provided, however, that the Successful Bidder or Next-Highest Bidder, as applicable, may require the counterparties to execute confidentiality agreements prior to the remittance of any confidential, non-public information.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

15.    All Interested Parties (whether or not Qualified Bidders) that participate in the Bidding Process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the Bidding Process, the Auction, and/or the Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution, and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

16.    The Committee's professionals shall have the ability to disseminate, provide, and otherwise discuss confidential information of the Debtor with any Potential Bidder in accordance with the Marketing Process in consultation with the Debtor and its representatives.

17.    The requirements set forth in Local Rules 6004-1 and 9013-1 are hereby satisfied or waived.

18.    Notwithstanding any applicability of Bankruptcy Rule 6004(h), 6006(d), 7062 or 9014, this Order shall be immediately effective and enforceable upon entry of this Order. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

19.    The Debtor may discontinue the marketing and sale process at any time.  If the Debtor elects to discontinue the marketing and sale process prior to the Sale Hearing, the Debtor shall file a notice of termination with the Court.

20.    The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# **ANNEX 1**

**Bidding Procedures**

# BIDDING PROCEDURES

Set forth below are the bidding procedures (the "<u>Bidding Procedures</u>") to be used with respect to potential investments in, and/or the sale or disposition (the "<u>Sale</u>") of the Assets (as defined below) of, Shiekh Shoes, LLC (the "<u>Debtor</u>").

**Additional information regarding the Debtor and Assets can be obtained by contacting Edward Kim at Province.**

## I.    Description of the Assets to be Sold

The Debtor, in concert with the Official Committee of Unsecured Creditors appointed in the Debtor's chapter 11 bankruptcy case (the "<u>Committee</u>", and together with the Debtor, the "<u>Sale Parties</u>") is evaluating the sale of all or substantially all of its assets, including but not limited to the inventory, receivables, equipment, intellectual property, unexpired leases, contract rights and other assets related to or necessary to operate its business, but excluding cash and causes of action arising under chapter 5 of the Bankruptcy Code (as defined below) (the "<u>Assets</u>"), in each case free and clear of all liens, claims and encumbrances thereon.  The Sale Parties may consider proposals for joint ventures, licensing agreements, or other proposals or investments involving the Debtor, as well as bids for the Assets (or any portion thereof) in a single bid from a single bidder, or in multiple bids from multiple bidders.

## II.    Confidentiality Agreement

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process (as defined below), each person or entity must enter into (unless previously entered into) with the Debtor, on or before the Bid Deadline (as defined below), an executed confidentiality agreement in form and substance reasonably satisfactory to the Sale Parties (the "<u>Confidentiality Agreement</u>").  Each person or entity that enters into the Confidentiality Agreement with the Debtor on or before the Bid Deadline is hereinafter referred to as a "<u>Potential Bidder</u>."

After a Potential Bidder enters into the Confidentiality Agreement with the Debtor, the Sale Parties shall deliver or make available (unless previously delivered or made available) to each Potential Bidder certain designated information (including, if applicable, financial data) with respect to the Debtor and its Assets.

## III.    Determinations by the Sale Parties

The Sale Parties will consult with the Debtor's pre- and postpetition secured lenders (the "<u>Consultation Parties</u>") on the process set forth herein, and shall (a) coordinate the efforts of Potential Bidders in conducting their respective due diligence, (b) evaluate proposals from Potential Bidders, (c) negotiate revisions to bids received, and (d) following consultation with the Consultation Parties, make such other determinations as are provided in these Bidding Procedures (collectively, the "<u>Bidding Process</u>").

## IV.    Due Diligence

Up to and including the Bid Deadline (as defined below) (such period, the "<u>Diligence Period</u>"), the Sale Parties shall afford any Potential Bidder, and any Consultation Party, such available due diligence access or additional information as may be reasonably requested by the Potential Bidder or Consultation Party, as applicable, that the Sale Parties determine to be reasonable and appropriate under the circumstances.  The Sale Parties have designated Province, Inc. to coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

The Debtor shall not be required to provide information they deem overly burdensome or sensitive, including identifiable store level financial information.[1]

Each Potential Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Debtor and its Assets in conjunction with submitting its Bid (as defined below).

## V.      Bid Deadline

A Potential Bidder that desires to make a Bid shall deliver copies of its Bid to the Sale Parties by no later than February 20, 2018 at 4:00 p.m. (prevailing Pacific Time) (the "Bid Deadline").  The Debtor or the Committee may extend the Bid Deadline for any and all Potential Bidders up to the beginning of the Auction.

## VI.      Bid Requirements

All bids (each hereinafter, a "Bid", and collectively, the "Bid Requirements"),  must:

(i)      set forth the proposed transaction with specificity, and, if the proposal contemplates a sale (a "Sale Transaction"), it must set forth with specificity the Assets (including the specific executory contracts and unexpired leases) such Potential Bidder wishes to bid on and the liabilities and obligations (including applicable cure costs) to be assumed by the Potential Bidder in the Sale Transaction;

(ii)      for a Sale Transaction, include the following:

(A)      a duly executed purchase agreement (the "APA") and the applicable schedules and exhibits;

(B)      a redline of the APA marked to reflect any proposed amendments and modifications to the form asset purchase agreement appended to these Bidding Procedures; and

(C)      with respect to bids for a liquidation transaction, be consistent with the terms of the proposed agency agreement provided by the Sale Parties to prospective liquidation transaction bidders (and any such bid shall include such an agency agreement (the "Agency Agreement");

(iii)      acknowledge that the bid is binding and irrevocable until the earlier of (i) March 14, 2018, or (ii) ten (10) days after the Sale Hearing (unless selected as the Next-Highest Bidder (as defined below) in which case such offer will remain open until the March 15, 2018);

(iv)      provide that such Bid is not subject to any due diligence or financing contingency; and

---

[1]  For the avoidance of doubt, the Debtor contemplates providing prospective bidders with financial information concerning the Debtor's operations and performance on a store by store basis, but store addresses and certain other identifying information will not be disclosed unless and until the prospective bidder submits a letter of intent satisfactory to the Debtor, and the Sale Parties unanimously determine that such information should be provided in their reasonable discretion.

(vii)    provide that the Potential Bidder agrees to serve as a backup bidder (the "<u>Next-Highest Bidder</u>") if the Potential Bidder's Qualified Bid (as defined below) is the next highest and best bid after the Successful Bid (as defined below) (the "<u>Next-Highest Bid</u>");

(viii)    be accompanied by adequate assurance of future performance information (the "<u>Adequate Assurance Information</u>"), including, without limitation: (i) the name of the prospective bidder and the relationship of the proposed assignee to the prospective bidder (if not the prospective bidder), and the proposed trade-name under which the assignee intends to operate the leased premises if not a current trade-name of the Debtor; (ii) the proposed assignee's intended use for the space if different from the present operation; (iii) if available, audited financial statements and annual reports of the Potential Bidder and any other assignee for the past two (2) years; (iv) if available, cash flow projections for the proposed assignee, and any financial projections, calculations and/or pro formas prepared in contemplation of purchasing the assets, including the leases; (v) all documents and other evidence of the proposed assignee's retail experience and experience operating in a shopping center; and (vi) a contact person for the proposed assignee whom non-Debtor parties may contact directly in connection with adequate assurance of future performance; and

(ix)    as and to the extent applicable, be accompanied by a proposed Letter of Intent sufficient for purposes of any required filing under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the "<u>HSR Act</u>") and a statement indicating that the Potential Bidder would cover any filing fees under the HSR Act;

(x)    be accompanied by (a) a deposit in the form of a certified check or wire transfer, payable to the order of the Debtor, in the amount of ten percent (10%) of the Bid, which funds will be deposited into a segregated account to be identified and established by the Debtor (a "<u>Good Faith Deposit</u>") and (b) written evidence, documented to the Sale Parties' satisfaction, that demonstrates the Potential Bidder has available cash and/or a commitment for financing if selected as the Successful Bidder (as defined below) and such other evidence of ability to consummate the transaction(s) as the Sale Parties may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals.  The Sale Parties reserve the right to increase the Good Faith Deposit for one or more Qualified Bidders (as defined below) in their reasonable discretion.

The Sale Parties will review each Bid to determine whether it meets the requirements set forth above.  A Bid received from a Potential Bidder that meets the above requirements or is otherwise satisfactory to the Sale Parties, will be considered a "<u>Qualified Bid</u>" and each Potential Bidder that submits a Qualified Bid will be considered a "<u>Qualified Bidder</u>."

A Qualified Bid will be valued by the Sale Parties based upon any and all factors that the Sale Parties reasonably deem pertinent, including, among others, (a) the value of the Qualified Bid, (b) the risks and timing associated with consummating the transaction(s) with the Qualified Bidder, (c) any excluded assets or executory contracts and leases, and (d) any other factors that the Sale Parties may reasonably deem relevant.

The Sale Parties reserve the right to reject any Bid if such Bid, among other things:

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

(a)     requires any indemnification of the Potential Bidder in its APA;

(b)     is not received by the Bid Deadline;

(c)     is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the relevant Assets; or

(d)     does not, in the Debtor's determination (after consultation with the Committee and Consultation Parties), include a fair and adequate price or the acceptance of which would not be in the best interests of the Debtor's Estate.

The Sale Parties may, in consultation with the Consultation Parties, among other things, (i) extend the Bid Deadline, (ii) postpone the Auction, and/or (iii) cancel the Auction and marketing process.

## VII.     **Auction**

Unless otherwise ordered by the Bankruptcy Court for cause shown, only the Qualified Bidders are eligible to participate at the Auction (as defined below). The Consultation Parties shall be permitted to attend the Auction. At least one (1) day prior to the Auction, each Qualified Bidder must inform the Sale Parties in writing whether it intends to participate in the Auction. If the Debtor receives only one Qualified Bid with regard to any particular Assets (or all of the Assets), (a) the Debtor shall not hold an Auction with respect to such Assets; (b) the Qualified Bid, as applicable, will be deemed the Successful Bid with respect to such Assets; and (c) the Qualified Bidder will be named the Successful Bidder with respect to such Assets.

If at least two Qualified Bids are received by the Bid Deadline with regard to any particular Assets, the Sale Parties will conduct an auction (the "Auction") with respect to such Assets and shall determine, after consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best Qualified Bid for the relevant Assets (the "Starting Bid"), which determination will be communicated to Qualified Bidders prior to the commencement of the Auction. The Auction shall take place on February 23, 2018 at 10:00 a.m. (prevailing Pacific Time) at the offices of the Debtor's counsel, SulmeyerKupetz, or such later time or such other place as the Sale Parties shall designate and notify to all Qualified Bidders who have submitted Qualified Bids. Professionals and principals for the Debtor, the Stalking Horse Bidder(s) (if any), each Qualified Bidder and the Consultation Parties shall be able to attend and observe the Auction, along with any other parties the Sale Parties deem appropriate.

Each Qualified Bidder participating in the Auction will be required to confirm, in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

Bidding at the Auction for the Assets (or subset thereof) that are subject to Qualified Bids will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one Subsequent Bid (defined below) is submitted by a Qualified Bidder that (i) improves on such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Sale Parties reasonably determine, in consultation with the Consultation Parties, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each Subsequent Bid at the Auction shall provide net value to the Estate of at least $100,000 ("Incremental Overbid") over the Starting Bid or the Leading Bid (as defined below), provided that

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

the Incremental Overbid may be adjusted by the Sale Parties at any time. After the first round of bidding and between each subsequent round of bidding, the Sale Parties shall announce the bid that they believe to be the highest or otherwise best offer for the subject Assets (the "<u>Leading Bid</u>"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid, subject to the Sale Parties' authority to revise the Auction procedures as set forth below. Qualified Bidders may pass only once with respect to the subsequent rounds of bidding without forfeiting their standing in the Auction.

The Sale Parties may, in consultation with the Consultation Parties, announce at the Auction additional procedural rules (*e.g.*, the amount of time to make Subsequent Bids, the amount of the Incremental Overbid, or the requirement that parties submit "best and final" Bids) for conducting the Auction or otherwise modify these Bid Procedures; provided that such rules (1) are not materially inconsistent with these Bid Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court, and (2) are disclosed to each Qualified Bidder during the Auction. The bidding at the Auction shall be transcribed or videotaped.

Immediately prior to the conclusion of the Auction, the Debtor, in consultation with the Committee and Consultation Parties, will, for the Assets (or subset thereof) that were subject to the Auction: (a) determine, consistent with the Bid Procedures, which bid constitutes the highest or otherwise best bid (the "<u>Successful Bid</u>"); and (b) notify all Qualified Bidders at the Auction for the subject Assets, prior to its conclusion, of the name of the maker of the Successful Bid (the "<u>Successful Bidder</u>") with respect to the subject Assets, and the amount and other material terms of the Successful Bid. The Debtor may designate the Next-Highest Bid (and the corresponding Next-Highest Bidder) to close with respect to the subject Assets in the event that the Successful Bidder does not close the Sale. Unless the Bankruptcy Court orders otherwise upon application by the Debtor, the Debtor shall not consider any Bids or Subsequent Bids for the Assets that were the subject of the Auction submitted after the conclusion of the Auction and any and all such Bids and Subsequent Bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

Following conclusion of the Auction, the Debtor shall file a notice on the Bankruptcy Court's docket identifying (with specificity) the Successful Bidder(s) for the Assets (or subset thereof) and any applicable Next-Highest Bidders.

All bidders at the Auction will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction and all agreements entered into in connection with any proposed Sale Transaction.

## VIII.    <u>Acceptance of Qualified Bids</u>

The Debtor, in consultation with the Committee and Consultation Parties, may reject at any time, before entry of an order of the Bankruptcy Court approving a Sale Transaction, any Bid that, in the Debtor's judgment, upon consultation with the Consultation Parties, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or (iii) contrary to the best interests of the Debtor and its estate.

The Debtor's presentation to the Bankruptcy Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtor's acceptance of such Bid. The Debtor will have accepted a Successful Bid only when such Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing.

## IX.    <u>Sale Hearing</u>

Each Successful Bid and any Next-Highest Bid (or if only one Qualified Bid is received with respect to the Assets (or subset thereof), then the Qualified Bid) will be subject to approval by the Bankruptcy Court. The hearing to approve a Sale Transaction shall take place on

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

March 1, 2018 at _____ (prevailing Pacific Time) (the "<u>Sale Hearing</u>"). The Sale Hearing may be adjourned by the Debtor from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtor's chapter 11 case.

**X.**          **Return of Good Faith Deposit**

   The Good Faith Deposits of all Potential Bidders shall be held in a segregated account and shall not become property of the Debtor's Estate absent further order of the Bankruptcy Court. The Debtor shall retain any Good Faith Deposit submitted by each Successful Bidder. At the closing of a Transaction, the applicable Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided. The Good Faith Deposits of each Next-Highest Bidder shall be retained until three (3) days after the applicable closing date. The Good Faith Deposits of the other Qualified Bidders will be returned as soon as practicable but no later than seven (7) days following the Auction.

   If a Successful Bidder (or, if the Sale is to be closed with a Next-Highest Bidder, then the Next-Highest Bidder) fails to consummate the Sale Transaction because of a breach or failure to perform on the part of such bidder, then the Debtor and its Estate shall be entitled to retain the Good Faith Deposit of such Successful Bidder (or, if the Sale Transaction is to be closed with the Next-Highest Bidder, then such Next-Highest Bidder) as part of the damages resulting to the Debtor and it estates for such breach or failure to perform.

**XI.**          **Reservation of Rights and Modifications**

   Notwithstanding any of the foregoing, the Sale Parties, in consultation with the Consultation Parties, reserve the right to modify these Bid Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all potential bidders, and adjourn or cancel the Auction at or prior to the Auction, and/or adjourn the Sale Hearing.

   The Sale Parties shall consult with the Consultation Parties as explicitly provided for in these Bid Procedures; <u>provided</u>, <u>however,</u> that the Sale Parties shall not be required to consult with any Consultation Party (or its advisors) that submits a Bid or has a Bid submitted on its behalf for so long as such Bid remains open if the Sale Parties determine that consulting with such Consultation Party regarding any issue, selection, or determination is (a) likely to have a chilling effect on the potential bidding, or (b) otherwise contrary to the goal of maximizing value for the Debtor's Estate, its creditors, and all other parties in interest. Should a member of the Committee submit a Bid, the Committee shall sequester that member from any discussion of the marketing process so that the Committee may continue as a Sale Party.

**XII.**          **Next-Highest Bidder**

   Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close a Sale Transaction prior to such date as specified in the applicable Purchase Agreement (or such date as may be extended by the Debtor), the Debtor, upon written notice to the Next-Highest Bidder, may designate the applicable Next-Highest Bid as the Successful Bid for the Assets (or subset thereof), the Next-Highest Bidder will be deemed to be the Successful Bidder for such Assets, and the Debtor will be authorized, but not directed, to close the Sale to the Next-Highest Bidder, subject to the terms of the Next-Highest Bid without the need for further order of the Bankruptcy Court and without the need for further notice to any interested parties.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

0042

1

*[The remainder of this page is intentionally left blank.]*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Form APA**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

*DRAFT*

**ASSET PURCHASE AGREEMENT**

**dated as of**

**[_____], 2018**

**by and between**

**Shiekh Shoes, LLC**

**and**

**[Purchaser]**

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "**Agreement**") is entered into as of [_____], 2018, by and between [_____], a [_____] [_____] (the "**Purchaser**"), and Shiekh Shoes, LLC, a California limited liability company having a principal place of business at [_____] ("**Seller**").

## RECITALS

WHEREAS, Seller owns and operates Shiekh Shoes (the "**Business**");

WHEREAS, on November 29, 2017 (the "**Filing Date**"), Seller filed a voluntary petition under chapter 11 of title 11 of the United States Code, Section 101, et seq. (the "**Bankruptcy Code**"), case number 2:17-24626 (the "**Bankruptcy Case**"), in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "**Bankruptcy Court**");

WHEREAS, the transactions contemplated by this Agreement will be consummated pursuant to a Sale Approval Order (as defined below) to be entered in the Bankruptcy Case under Sections 105, 363, 365 and other applicable provisions of the Bankruptcy Code, and this Agreement and the transactions contemplated herein are subject to the approval of the Bankruptcy Court; and

WHEREAS, Seller wishes to sell to Purchaser and Purchaser wishes to acquire from Seller all of the assets that are owned, leased, or licensed by Seller that are used or useful in the operation of the Business as set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises in this Agreement and for other good and valuable consideration, the parties hereby agree as follows.

## AGREEMENT

1.      Definitions

   **1.1**      "Actions" has the meaning set forth in Section 3.3 hereof.

   **1.2**      "Affiliate" of a Person means any other Person that directly or indirectly through one or more intermediaries controls, is controlled by, or is under common control with such Person.

   **1.3**      "Agreement" means this Asset Purchase Agreement between the parties set forth on the first page hereof, including, without limitation, all Exhibits and Schedules hereto, as the same may be delivered to Purchaser following the date hereof and amended from time to time.

   **1.4**      "Ancillary Agreements" means any agreement, instrument or other document to be executed and delivered in connection with the consummation of the transactions contemplated by this Agreement.

   **1.5**      "Apportioned Obligations" has the meaning set forth in Section 5.5 hereof.

**1.6**    "Assumed Contracts" means the Contracts set forth in Schedule [__] hereto.

**1.7**    "Auction" means the auction of the Purchased Assets.

**1.8**    "Auction Date" means such date as the Bankruptcy Court may order for the Auction.

**1.9**    "Bankruptcy Case" has the meaning given to it in the recitals hereto.

**1.10**    "Bankruptcy Code" has the meaning given to it in the recitals hereto.

**1.11**    "Bankruptcy Court" has the meaning given to it in the recitals hereto.

**1.12**    "Bidding Procedures Order" means the order approving the bidding procedures at the Auction for the Purchased Assets.

**1.13**    "Business" has the meaning given to it in the recitals hereto.

**1.14**    "Business Day" means any day other than a Saturday, Sunday or other day on which the Bankruptcy Court is required or authorized by law to be closed.

**1.15**    "Closing" means the closing of the transactions contemplated by this Agreement.

**1.16**    "Closing Date" means the date on which the conditions set forth in Article 6 are satisfied or waived, or such other date as the parties may mutually agree upon which the Closing takes place.

**1.17**    "Code" means the Internal Revenue Code of 1986, as amended.

**1.18**    "Competing Transaction" means any transaction (or series of related transactions), whether direct or indirect, concerning a sale, financing, recapitalization, liquidation or other disposition of all of the Purchased Assets, the consummation of which would be substantially inconsistent with the transactions contemplated by this Agreement.

**1.19**    "Consent" means any consent, approval, authorization, license or order of, registration, declaration or filing with, or notice to, or waiver from, any federal, state, local, foreign or other Governmental Entity or any Person, including, without limitation, any security holder or creditor which is necessary to be obtained, made or given in connection with the execution and delivery of this Agreement or any Ancillary Agreement, the performance by a Person of its obligations hereunder or thereunder and the consummation of the transactions contemplated hereby or thereby.

**1.20**    "Contract" means any contract, agreement, indenture, note, bond, mortgage, loan, instrument, lease or license (written or oral) to which Seller is a party or by which Seller is bound.

**1.21**    "Cure Costs" mean the amount, if any, necessary to cure any monetary default under any Assumed Contract pursuant to section 365 of the Bankruptcy Code.

**1.22**    "Deposit" has the meaning set forth in Section 2.5 hereof.

**1.23** "Disclosure Schedule" means each, and collectively all, as the context may require, of the disclosure schedules to be prepared by Seller promptly following the date of this Agreement attached to this Agreement as <u>Exhibit A</u>, and shall include but not be limited to each of the disclosure schedules expressly referred to in Article 3 of this Agreement.

**1.24** "Excluded Assets" has the meaning set forth in section 2.2 hereof.

**1.25** "Filing Date" has the meaning given to it in the recitals hereto.

**1.26** "Final Order" means an order, judgment or other decree, the operation or effect of which has not been reversed, stayed, modified or amended as to which no appeals or motions for reconsideration are pending and any and all appeal periods with respect to such order, judgment or other decree have expired.

**1.27** "GAAP" means United States generally accepted accounting principles, applied on a consistent basis.

**1.28** "Governmental Entity" means any federal, state, local or foreign government, political subdivision, legislature, court, agency, department, bureau, commission or other governmental regulatory authority, body or instrumentality, including any industry or other non-governmental self-regulatory organizations.

**1.29** "Intellectual Property" means any and all rights, title and interest in or relating to intellectual property of any type, which may exist or be created under the laws of any jurisdiction throughout the world, including: (a) patents and patent applications, together with all reissues, continuations, continuations-in-part, divisionals, extensions and reexaminations in connection therewith; (b) trademarks, service marks, trade dress, logos, slogans, trade names, service names, brand names, Internet domain names and all other source or business identifiers and general intangibles of a like nature, along with all applications, registrations and renewals in connection therewith, and all goodwill associated with any of the foregoing; (c) rights associated with works of authorship, including exclusive exploitation rights, mask work rights, copyrights, database and design rights, whether or not registered or published, all registrations and recordations thereof and applications in connection therewith, along with all extensions and renewals thereof; (d) trade secrets; and (e) all other intellectual property rights arising from or relating to Technology.

**1.30** "Interests" means (i) mortgages, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, interests and claims (as that term is defined in the Bankruptcy Code), (ii) claims in respect of Taxes, and (iii) easements, restrictions, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, regardless whether such are "claims" as that term is defined in the Bankruptcy Code.

**1.31** "Knowledge of Seller" or any other similar knowledge qualification in this Agreement means all facts actually known by Shiekh Ellahi or any other officer of the Seller; <u>provided</u> that such officer shall be deemed to have actual knowledge of any fact or matter such officer would reasonably be expected to have knowledge of in performing his or her duties and responsibilities, in such capacity, for the Seller.

**1.32**    "Loan Documents" means:

**(a)**    That certain Loan and Security Agreement, dated as of March 17, 2017 (as amended, restated, supplemented or otherwise modified from time to time), among the Seller and State Bank and Trust Company (as successor by merger to AloStar Bank of Commerce);

**(b)**    That certain Credit Agreement dated March 17, 2017 among the Seller and Comvest Capital II, L.P; and

**(c)**    That certain Senior Secured Debtor in Possession Term Loan and Security Agreement dated January [__], 2018 among Seller and Anjum Shiekh .

**1.33**    "Permits" means all licenses, certificates of authority, permits, orders, consents, franchises, approvals, registrations, clearances, variances, exemptions, authorizations, qualifications and filings required to be obtained under applicable law or to be filed with any Governmental Entities.

**1.34**    "Person" means an individual, corporation, partnership, limited liability company, firm, joint venture, association, joint stock company, trust, unincorporated organization or other entity, or any Governmental Entity or quasi-governmental body or regulatory authority.

**1.35**    "Post-Closing Tax Period" shall mean (i) any Tax period beginning any time after the Closing Date and (ii) with respect to a Tax period that commences before but ends after the Closing Date, the portion of such period beginning the day after the Closing Date.

**1.36**    "Pre-Closing Tax Period" shall mean (i) any Tax period ending on or before the Closing Date and (ii) with respect to a Tax period that commences before but ends after the Closing Date, the portion of such period up to and including the Closing Date.

**1.37**    "Purchased Assets" has the meaning set forth in Section 2.1 hereof.

**1.38**    "Purchase Price" has the meaning set forth in Section 2.5 hereof.

**1.39**    "Purchaser" has the meaning given to it in the recitals hereto.

**1.40**    "Registered" means issued by, registered with, renewed by or the subject of a pending application before any Governmental Entity or domain name registrar.

**1.41**    "Sale Approval Order" has the meaning set forth in Section 5.4(a) hereof.

**1.42**    "Sale Hearing" means the hearing to approve the sale of the Purchased Assets.

**1.43**    "Seller" has the meaning given to it in the recitals hereto.

**1.44**    "Subsidiary" means, with respect to any Person, any other Person (i) of which the first Person owns directly or indirectly fifty percent (50%) or more of the equity interest in the other Person; (ii) of which the first Person or any other Subsidiary of the first Person is a general partner or (iii) of which securities or other ownership interests having ordinary voting power to

0049

elect a majority of the board of directors or other persons performing similar functions with respect to the other Person are at the time owned by the first Person and/or one or more of the first Person's Subsidiaries.

**1.45** "Tangible Personal Property" has the meaning set forth in Section 2.1(c) hereof.

**1.46** "Taxes" (or "Tax" where the context requires) shall mean all federal, state, county, provincial, local, foreign and other taxes (including, without limitation, income, profits, premium, estimated, excise, sales, use, occupancy, gross receipts, franchise, severance, capital levy, production, transfer, withholding, employment and payroll related and property taxes and other governmental charges and assessments), whether attributable to statutory or nonstatutory rules and whether or not measured in whole or in part by net income, and including, without limitation, interest, additions to tax or interest, charges and penalties with respect thereto.

**1.47** "Technology" means, collectively, all algorithms, data, databases, diagrams, inventions (whether or not patentable), know-how, methods, processes, proprietary information, tools, systems, servers, hardware, computers, point of sale equipment, inventory management equipment, software, software code (in any form, including source code and executable or object code), any other information technology equipment, techniques, web sites, works of authorship and other similar materials, including all documentation related to any of the foregoing, whether or not embodied in any tangible form and whether or not specifically listed herein, and all related technology, that are used in, incorporated in, embodied in, displayed by or relate to, or are used in connection with the foregoing.

2. <u>Purchase and Sale of Assets</u>

**2.1** <u>Purchase and Sale of Assets</u>. Subject to the terms and conditions of this Agreement together with any Bankruptcy Court approval that may be required, including the payment by Purchaser of the Purchase Price, at the Closing, (x) Seller shall sell, assign, transfer, convey and deliver to Purchaser, free and clear of any and all Interests, goods, valid and marketable title and interest in and to all of the assets, properties and rights of Seller, other than the Excluded Assets, that are owned, leased, or licensed by Seller and used or useful in the operation of the Business (such assets, properties and rights are hereinafter collectively referred to as the "Purchased Assets"), including, but not limited to, the following assets, properties and rights:

> **(a)** all Intellectual Property owned by Seller, including the name "Shiekh Shoes";

> **(b)** all Assumed Contracts;

> **(c)** all inventory of Seller used in connection with the Business;

> **(d)** all rights of Seller under Contracts for the lease of real property, together with all improvements, fixtures and other appurtenances thereto and rights in respect thereof;

> **(e)** all Permits used by the Seller that may be transferred to Purchaser;

> **(f)** all supplies owned by Seller and used in the Business; and

-5-

**(g)**    all tangible personal property of Seller (collectively, "Tangible Personal Property").

Except as expressly set forth herein, the assets, properties and rights to be conveyed, sold, transferred, assigned and delivered to Purchaser pursuant to this Section 2.1 shall be transferred "as is, where is."

**2.2**    Excluded Assets.  Notwithstanding anything to the contrary herein, Seller shall not cause to be sold, assigned, transferred, conveyed or delivered to Purchaser, and Purchaser shall not purchase, and the Purchased Assets shall not include, any right, title or interest of Seller in, any of the following assets (the "Excluded Assets"):

**(a)**    all rights of Seller under this Agreement and the Ancillary Agreements;

**(b)**    the Loan Documents;

**(c)**    all cash on hand or in banks and cash equivalents of Seller;

**(d)**    all interests in and to the capital stock or membership interest of Seller and all corporate records, including without limitation, the organizational documents of Seller and any of its Subsidiaries, accounting documents, tax returns, audit materials, legal records, board and member minutes and related correspondence, stock transfer books, blank stock certificates and other documents, qualification to conduct business as a foreign corporation and any Permits held by Seller that are not transferrable as a matter of law;

**(e)**    all human resources material, including, without limitation, employment and compensation records and benefits information, provided that Purchaser shall be granted reasonable access to, and the right to make copies of, any such materials of Seller, for a period of twelve (12) months after the Closing Date;

**(f)**    all bankruptcy avoidance claims of Seller, including without limitation, any claims arising under Sections 544, 545, 547, 548 549, 550 and 551 of the Bankruptcy Code;

**(g)**    all claims, causes of action, rights of recovery and rights of set-off that the Seller may hold against any current or former director, officer or employee of Seller for breach of fiduciary duty or claims of a similar nature, in each case, arising out of events occurring on or prior to the Closing Date;

**(h)**    all other claims, causes of action, rights of recovery and rights of set-off that Seller may hold, including any and all enforcement rights to pursue damages, whether currently pending, filed, or otherwise, in each case, arising out of events occurring on or prior to the Closing Date;

**(i)**    any claim, right or interest of Seller in or to any refund, rebate, abatement or other recovery of Taxes, together with any interest due thereon or penalty rebate arising therefrom;

0051

**(j)**    all Tax returns and financial statements of Seller and the Business and all records (including working papers) related thereto;

**(k)**    all employee benefit plans of Seller;

**(l)**    all insurance policies or rights to proceeds thereof;

**(m)**    All Contracts that are not Assumed Contracts

**(n)**    the assets set forth on Schedule 2.2 hereto**;** and

**(o)**    all intellectual property of the Company not otherwise specifically identified as Purchased Assets herein.

**2.3**    No Liabilities. Except with respect to future obligations with respect to Contracts or other assets included in the Purchased Assets, Seller and Purchaser hereby expressly acknowledge and agree that Purchaser is not assuming any liabilities or obligations of Seller (i) in connection with this Agreement and the transactions contemplated hereby or (ii) in connection with Seller's current or past employees, agents, consultants, service providers or advisors.

**2.4**    Closing. Subject to the terms and conditions of this Agreement, the Closing shall take place at the offices of [SULMEYER] at [TIME] on [DATE], 2018, or at such other place and time as the parties agree in writing, unless this Agreement is before such other time terminated in accordance with the terms hereof.

**2.5**    Consideration. The aggregate consideration to be paid and delivered by Purchaser and accepted by Seller for the Purchased Assets (the "Purchase Price") shall be a cash amount equal to [$_____] and Cure Costs, payable by Purchaser at Closing by (i) release to Seller of the Deposit and (ii) wire transfer of immediately available funds to such accounts as Seller shall designate in writing in the amount of the Purchase Price less the Deposit.

As of the date hereof, SulmeyerKupetz shall have received a deposit from or on behalf of Purchaser in the amount of [$_____] (the "Deposit"), which shall be held by SulmeyerKupetz separate from its other funds until released to Seller at the Closing or otherwise disposed of as provided hereunder.

**2.6**    Delivery. Subject to entry of the Sale Approval Order and such Sale Approval Order becoming a Final Order, at the Closing:

**(a)**    Purchaser shall release to Seller the Deposit and deliver to Seller the Purchase Price less the Deposit;

**(b)**    Seller shall deliver to Purchaser the Purchased Assets;

**(c)**    Seller shall execute and deliver to Purchaser a Bill of Sale, Assignment and Assumption Agreement in substantially the form attached as Exhibit B hereto;

-7-

0052

     **(d)**      Seller and Purchaser shall execute and deliver an Intellectual Property Assignment in substantially the form attached as <u>Exhibit C</u> hereto;

     **(e)**      Seller shall deliver to Purchaser such other and further documents as Purchaser shall reasonably request to demonstrate the purchase and sale of the Purchased Assets by the Purchaser as contemplated herein and to vest in Purchaser all right, title and interest in, to and under the Purchased Assets;

     **(f)**      Seller shall deliver to Purchaser any and all trademark, patent and copyright prosecution files included in the Purchased Assets;

     **(g)**      Seller shall deliver a copy of the Sale Approval Order; and

     **(h)**      Seller shall deliver a copy of the Bankruptcy Court's docket sheet for the Bankruptcy Case evidencing that the Sale Approval Order is a Final Order unless the requirement that the Sale Approval Order has become a Final Order has been waived by the Purchaser.

     **2.7**    <u>Possession</u>.  Subject to entry of the Sale Approval Order, the right to possession of the Purchased Assets shall transfer to Purchaser on the Closing Date.  Seller shall transfer and deliver to Purchaser on the Closing Date such usernames, passwords, account numbers, authorization codes, encryption keys, and other similar items with respect to the Purchased Assets as Purchaser shall require to obtain control of the Purchased Assets, and shall also make available to Purchaser at Seller's then existing locations all documents, documentation, software and hardware that are required to be transferred to Purchaser by this Agreement.

     **2.8**    <u>Transfer Taxes</u>.  Provided that the Sale Approval Order includes a finding that the sale of the Purchased Assets is in contemplation of a plan to be confirmed under Section 1129 of the Bankruptcy Code, in accordance with section 1146(a) of the Bankruptcy Code, the making or delivery of any instrument of transfer, including the filing of any deed or other document of transfer to evidence, effectuate or perfect the rights, transfers and interest contemplated by this Agreement, shall be free and clear of any and all transfer tax, stamp tax or similar taxes.  Such instruments, orders and agreements transferring the Purchased Assets to Purchaser shall contain the following endorsement:

> "Because this [instrument] has been authorized pursuant to an order of the United States Bankruptcy Court for the Central District of California in contemplation of a chapter 11 plan of the Grantor, it is exempt from transfer taxes, stamp taxes or similar taxes pursuant to 11 U.S.C. § 1146(a)."

If such transfer, stamp or similar taxes are ultimately payable, notwithstanding section 1146(a) of the Bankruptcy Code or for any other reason, Purchaser shall pay any and all such transfer, stamp or similar taxes, which may be payable by reason of the transaction contemplated in this Agreement and any and all claims, charges, interest or penalties assessed, imposed or asserted in relation to any such taxes.

3.      Representations and Warranties of Seller

Subject to entry of the Sale Approval Order and except as to be set forth in the Disclosure Schedule (it being understood and hereby agreed that (i) the disclosures to be set forth in the Disclosure Schedule shall be organized under separate section and subsection references that correspond to the sections and subsections of this Article 3 to which such disclosure relates and (ii) the disclosure to be set forth in a particular section or subsection of the Disclosure Schedule shall qualify (A) the representations and warranties set forth in the corresponding section or subsections of this Article 3 and (B) such other representations and warranties set forth in this Article 3 if, and to the extent that, upon a reading of the disclosure, it is reasonably apparent that such disclosure is applicable to such other representations and warranties), Seller hereby represents and warrants to Purchaser as follows:

**3.1**      Authority, Etc.  Seller is a limited liability company duly organized and in good standing under the laws of the State of California.  Seller has all requisite power and authority to execute and deliver this Agreement and the Ancillary Agreements to which it is or shall, pursuant to this Agreement, be a party, and to perform, carry out and consummate the transactions contemplated hereby and thereby.  The execution, delivery and performance of this Agreement and the Ancillary Agreements to which it is or shall, pursuant to this Agreement, be a party have been duly authorized by all necessary action on the part of Seller.  This Agreement has been, and upon execution and delivery thereof each of the Ancillary Agreements will be, duly executed and delivered by Seller and constitutes, and such Ancillary Agreements will constitute, the valid and legally binding obligations of Seller enforceable against Seller in accordance with their respective terms and conditions.

**3.2**      Title.  Seller has good and marketable title to all of the Purchased Assets to be sold by Seller.  Upon the Closing, Seller will convey and transfer to Purchaser all of the Purchased Assets, and Purchaser shall receive good and marketable title to all of the Purchased Assets free and clear of any Interests, pursuant to sections 105 and 363 of the Bankruptcy Code and any other applicable sections of the Bankruptcy Code and as set forth in the Sale Approval Order.

**3.3**      Brokers.  Seller has no liability or obligation to pay any broker, finder or investment banker, any brokerage, finder's or other fee or commission in connection with the origination, negotiation or execution of this Agreement or the transactions contemplated by this Agreement.

**3.4**      Litigation.  Other than the Bankruptcy Case, there are no outstanding orders, writs, judgments, decrees, injunctions or settlements that restrict the Purchased Assets or the practice of the Intellectual Property owned by Seller.  Section 3.4 of the Disclosure Schedule sets forth a description of all Actions to which Seller is a party or to which any of the Purchased Assets or the practice of the Intellectual Property owned by Seller is subject.

**3.5**      Intellectual Property.

**(a)**      Section 3.5 of the Disclosure Schedule sets forth a true and complete list of (i) all Registered Intellectual Property that is owned by Seller and used in or related to the Business. All such Registered Intellectual Property is subsisting and, to Seller's Knowledge, valid and

enforceable, and is not subject to any outstanding Final Order adversely affecting Seller's use thereof or rights thereto.

      **(b)**     To Seller's Knowledge, the operation of the Business as currently conducted does not infringe, constitute the misappropriation of or otherwise violate the Intellectual Property of any other Person.

      **(c)**     As of the date hereof, no Action is currently pending or, to Seller's Knowledge, threatened against any Seller, and Seller has not received any notice in the past twelve (12) months (including cease and desist letters and written invitations to take a license) that (i) challenges the validity, ownership, registerability, enforceability or use of any material Intellectual Property owned by Seller or (ii) alleges that the operation of the Business infringes, constitutes the misappropriation of or otherwise violates the Intellectual Property of any other Person.

      **(d)**     To Seller's Knowledge, in the past twelve (12) months, no Person has gained unauthorized access to the Technology that is material to the Business.

    **3.6**    <u>Tangible Personal Property</u>. The Tangible Personal Property of Seller included in the Purchased Assets is free from material defects, subject to normal wear and tear and continued repair and replacement in accordance with past practice.

    **3.7**    <u>Good Faith</u>. This Agreement and all Ancillary Agreements were negotiated and entered into at arm's length and, to the Seller's Knowledge, in good faith, and neither Seller nor Purchaser engaged in any collusion with respect to setting or fixing the Purchase Price, and to the Knowledge of Seller, there are no facts to support a finding that Purchaser negotiated and entered into this Agreement and all Ancillary Agreements other than in good faith as described in Section 363(m) of the Bankruptcy Code.

4.     <u>Representations and Warranties of Purchaser</u>

    Purchaser hereby represents and warrants to Seller as follows:

    **4.1**    <u>Authority</u>. Purchaser is a [_____] organized and in good standing under the laws of the State of [_____]. Purchaser has the right and authority to enter into, execute, deliver and perform this Agreement and the Ancillary Agreements to which it is to be a party and to carry out the obligations hereunder and thereunder, without the need for any further approval of its officers and or governing body. All action on Purchaser's part required for the lawful execution and delivery of this Agreement and the Ancillary Agreements to which it is to be a party has been taken. Upon its execution and delivery by Purchaser, this Agreement and each Ancillary Agreement to which it is to be a party will be the valid and legally binding obligations of the Purchaser in accordance with their respective terms.

    **4.2**    <u>Compliance with Other Instruments</u>. The execution, delivery and performance of this Agreement and the Ancillary Agreements to which it is to be a party, and the consummation of the transactions contemplated hereby and thereby will not result in any violation or default or be in conflict with or constitute, with or without the passage of time and giving of notice, a default under any provision of any instrument, judgment, order, writ, decree or contract to which it is a party.

**4.3**    <u>Brokers</u>.  No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the origination, negotiation or execution of this Agreement and the Ancillary Agreements to which it is to be a party or the transactions contemplated by this Agreement and such Ancillary Agreements based upon arrangements made by or on behalf of Purchaser.

**4.4**    <u>Litigation</u>.  There is no action, suit, proceeding or investigation pending or, to Purchaser's knowledge, currently threatened in writing against Purchaser that questions the validity of this Agreement or any Ancillary Agreement to which it is to be a party, or the right of Purchaser to enter into such agreements, or to consummate the transactions contemplated hereby or thereby.

**4.5**    <u>Financial Assurance</u>.  The Purchaser has sufficient cash, available lines of credit or other sources of immediately available funds to enable payment of the Purchase Price and any other amounts to be paid by it hereunder.

**4.6**    <u>Good Faith</u>.  This Agreement and all Ancillary Agreements were negotiated and entered into at arm's length and, to the Purchaser's knowledge, in good faith, and neither Seller nor Purchaser engaged in any collusion with respect to setting or fixing the Purchase Price, and to the knowledge of Purchaser, there are no facts to support a finding that Seller negotiated and entered into this Agreement and all Ancillary Agreements other than in good faith as described in Section 363(m) of the Bankruptcy Code.

5.    <u>Covenants</u>

**5.1**    <u>Seller Records</u>.  Prior to the Closing Date, and without limiting the other provisions of this Agreement, Seller shall afford Purchaser, its attorneys, accountants and representatives, free and full access to the Purchased Assets and any assets, contracts, facilities, books, records and employees related thereto, at any time and from time to time upon reasonable notice and request, and shall provide to Purchaser and its representatives such additional financial and operating data as Purchaser shall from time to time reasonably request.

**5.2**    <u>Filings and Authorizations</u>.  Each of Seller and Purchaser, as promptly as practicable, (i) shall make, or cause to be made, all such filings and submissions under laws, rules and regulations applicable to it, as may be required to consummate the transactions contemplated herein, in accordance with the terms of this Agreement, (ii) shall use all commercially reasonable efforts to obtain, or cause to be obtained, all authorizations, approvals, consents and waivers from all Governmental Entities and non-governmental Persons necessary to be obtained by it, in order to consummate the transactions contemplated herein; <u>provided</u> that any provision hereof to the contrary notwithstanding, Seller shall not have any obligation to pay any fee to any third party (other than any lawful fees assessed by a Governmental Entity) for the purpose of obtaining any Consent or any costs and expenses of any third party resulting from the process of obtaining such Consent, and (iii) shall use commercially reasonable efforts to take, or cause to be taken, all other actions necessary, proper or advisable in order for it to fulfill its obligations hereunder.  Seller and Purchaser shall coordinate and cooperate with one another in exchanging such information and supplying such reasonable assistance as may be reasonably requested by each in connection with the foregoing.

-11-

0056

**5.3**  **Further Assurances; Accounts**.

**(a)**  At and after the Closing, Seller shall take such reasonable steps as may be necessary to put Purchaser in possession and operating control of the Purchased Assets.  At or after the Closing, Seller shall, to the extent feasible, at the reasonable request of Purchaser, without further consideration, promptly execute and deliver, or cause to be executed and delivered, to Purchaser such assignments, bills of sale, consents and other instruments in addition to those required by this Agreement, in form and substance reasonably satisfactory to Purchaser.

**(b)**  From and after the date of execution of this Agreement, neither Seller nor any Person acting on behalf and within the control of Seller will operate any of the Purchased Assets in any manner that would adversely affect the value, utility or useful life of such asset.

**5.4**  **Bankruptcy Covenants**.

**(a)**  Sale Approval Order.  The sale approval order shall be substantially in the form annexed hereto as Exhibit D (the "Sale Approval Order"), and only such other and further changes as shall be reasonably acceptable in form and substance to Purchaser and the Bankruptcy Court.

**(b)**  Other Bankruptcy Covenants.  Seller shall promptly make any filings, take all actions, and use commercially reasonable efforts to obtain any and all approvals and orders necessary or appropriate for consummation of the sale of the Purchased Assets, subject to its obligations to comply with any order of the Bankruptcy Court.  In the event an appeal is taken, or a stay pending appeal is requested, from any of the foregoing orders of the Bankruptcy Court, Seller shall immediately notify Purchaser of such appeal or stay request and, upon Purchaser's request, shall provide to Purchaser within one (1) business day after Seller's receipt thereof a copy of the related notice of appeal or order of stay.  Seller shall also provide Purchaser with written notice of any motion, application, brief or other pleading filed in connection with any appeal from any of such orders.

**5.5**  **Apportioned Obligations**.  All personal property Taxes and similar ad valorem obligations levied with respect to the Purchased Assets for a taxable period which includes (but does not end on) the Closing Date (collectively, the "Apportioned Obligations") shall be apportioned between Seller and Purchaser based on the number of days of such taxable period included in the Pre-Closing Tax Period and the number of days of such taxable period included in the Post-Closing Tax Period. Seller shall be liable for the proportionate amount of such Taxes that is attributable to the Pre-Closing Tax Period, and Purchaser shall be liable for the proportionate amount of such Taxes that is attributable to the Post-Closing Tax Period.  Upon receipt of any bill for personal property taxes relating to the Purchased Assets, each of Seller and Purchaser shall present a statement to the other setting forth the amount of reimbursement to which each is entitled under this Section 5.5 together with such supporting evidence as is reasonably necessary to calculate the proration amount.  The proration amount shall be paid by the party owing it to the other within fifteen (15) Business Days after delivery of such statement.  In the event that any of Seller or Purchaser shall make any payment for which it is entitled to reimbursement under this Section 5.5, the applicable other party shall make such reimbursement promptly but in no event later than fifteen (15) Business Days after the presentation of a statement setting forth the amount

0057

of reimbursement to which presenting party is entitled along with such supporting evidence as is reasonably necessary to calculate the amount of reimbursement. Purchaser shall notify Seller of any audit or examination of the Apportioned Obligations. The Seller shall have the right to participate in any such audit or examination and Purchaser shall not settle any such audit or examination without the consent of Seller, which consent shall not be unreasonably withheld.

**5.6** Notification. From time to time prior to the Closing, Seller shall notify Purchaser in writing with respect to any matter hereafter arising or any information obtained after the date hereof that, if existing, occurring or known at or prior to the date of this Agreement, would have been required to be set forth or described in the Disclosure Schedule or that is necessary to complete or correct any information in such schedule or in any representation and warranty of Seller that has been rendered inaccurate thereby.

6. Conditions Precedent to Closing.

**6.1** Conditions Precedent to Obligations of Purchaser. The obligation of Purchaser under this Agreement to consummate the transactions contemplated by this Agreement on the Closing Date shall be subject to the satisfaction, at or prior to the Closing Date, of all of the following conditions, any one or more of which may be waived by Purchaser:

**(a)** Representations and Warranties Accurate. The representations and warranties of Seller contained in this Agreement shall be correct and complete in all material respects as of the Closing Date with the same force and effect as though made on and as of the Closing Date (except in any case that representations and warranties that expressly speak as of a specified date or time need only be correct and complete as of such specified date or time). Notwithstanding anything to the contrary herein, in the event that Purchaser has actual knowledge that any of such representations and warranties of Seller contained in this Agreement are not true and correct and complete in all material respects as of the Closing Date, Purchaser's sole remedy shall be to terminate this Agreement in accordance with Section 7.1(b) hereof.

**(b)** Performance. Seller shall have performed and complied in all material respects with all covenants and agreements required to be performed or complied with by Seller hereunder on or prior to the Closing Date.

**(c)** Consents. All Consents set forth on Schedule 6.1(c) required in connection with the consummation of the transactions contemplated by this Agreement and the Closing shall have been duly obtained, made or given and shall be in full force and effect, without the imposition upon Purchaser of any material condition, restriction or required undertaking.

**(d)** No Legal Prohibition. No suit, action, investigation, inquiry or other proceeding by any Governmental Entity or other Person shall have been instituted and remain in effect or threatened by any Governmental Entity which arises out of or relates to this Agreement, or the transactions contemplated hereby and no injunction, order, decree or judgment shall have been issued and be in effect or threatened to be issued by any Governmental Entity of competent jurisdiction, and no statute, rule or regulation shall have been enacted or promulgated by any Governmental Entity and be in effect, which in each case restrains or prohibits the consummation of the transactions contemplated hereby.

0058

     **(e)**    <u>Additional Documents, etc.</u>  There shall have been delivered to Purchaser each of the agreements, documents, certificates and other items set forth in Section 2.6 of this Agreement to be delivered to Purchaser.

     **(f)**    <u>Entry of Order</u>.  On or before [_____], 2018, the Bankruptcy Court shall have entered the Sale Approval Order in accordance with Section 5.4(a).

     **6.2**    <u>Conditions Precedent to Obligations of Seller</u>.  The obligations of Seller under this Agreement to consummate the transactions contemplated by this Agreement on the Closing Date shall be subject to the satisfaction, at or prior to the Closing Date, of all of the following conditions, any one or more of which may be waived by Seller:

     **(a)**    <u>Representations and Warranties Accurate</u>.  The representations and warranties of Purchaser contained in this Agreement shall be correct and complete in all material respects as of the Closing Date with the same force and effect as though made on and as of the Closing Date (except in any case that representations and warranties that expressly speak as of a specified date or time need only be correct and complete as of such specified date or time).

     **(b)**    <u>Performance by Purchaser</u>.  Purchaser shall have performed and complied in all material respects with all covenants and agreements required to be performed or complied with by such Person hereunder on or prior to the Closing Date.

     **(c)**    <u>Consents</u>.  All Consents required to be obtained by Purchaser in connection with the purchase and sale of the Purchased Assets and the Closing shall have been duly obtained, made or given and shall be in full force and effect.

     **(d)**    <u>No Legal Prohibition</u>.  No injunction, order, decree or judgment shall have been issued and be in effect or threatened to be issued by any Governmental Entity of competent jurisdiction, and no statute, rule or regulation shall have been enacted or promulgated by any Governmental Entity and be in effect, which in each case restrains or prohibits the consummation of the transactions contemplated hereby.

     **(e)**    <u>Additional Documents, etc.</u>  There shall have been delivered to Seller each of the agreements, documents and other items set forth in Section 2.6 of this Agreement to be delivered to Seller.

7.    <u>Miscellaneous</u>

     **7.1**    <u>Termination</u>.  This Agreement may be terminated, and the transactions contemplated herein may be abandoned:

     **(a)**    any time before the Closing, by mutual written agreement of Seller and Purchaser;

     **(b)**    any time before the Closing, by Seller, on the one hand, or Purchaser, on the other hand, (i) in the event of a material breach hereof by Seller, on the one hand, or Purchaser, on the other hand, if such non-terminating party fails to cure such breach within five (5) Business Days following notification thereof by the terminating party, or (ii) upon written notification to

-14-

the non-terminating party by the terminating party that the satisfaction of any condition to the terminating party's obligations under this Agreement becomes impossible or impracticable with the use of commercially reasonable efforts if the failure of such condition to be satisfied is not caused by a breach hereof by the terminating party; or

(c)    at the election of the Purchaser as notified in writing to the Seller, if the Auction occurs and Purchaser is not the successful bidder at the Auction or the Back-Up Bidder (as defined in the Bidding Procedures Order) or if the Seller enters into an agreement or transaction, including any Competing Transaction with a third party, that is materially inconsistent with this Agreement and the transactions contemplated hereby in a material respect.

7.2    Effect of Termination.

(a)    If Purchaser and Seller terminate this Agreement pursuant to Section 7.1(a), Purchaser shall receive the prompt return of the Deposit, which shall constitute Purchaser's sole and exclusive remedy available under any law, including the Bankruptcy Code.

(b)    If Purchaser terminates this Agreement pursuant to Section 7.1(b)(i) or 7.1(c), or Seller or Purchaser terminates this Agreement pursuant to Section 7.1(b)(ii), Purchaser shall receive the prompt return of the Deposit, which shall constitute Purchaser's sole and exclusive remedy available under any law, including the Bankruptcy Code.

(c)    If Seller terminates this Agreement pursuant to Section 7.1(b)(i), Seller shall be entitled to receive and have any other remedies available at law with respect to the Deposit.

7.3    Expenses.  Except as otherwise set forth in Section 7.2, each party hereto shall pay its own expenses incurred in connection with this Agreement and the transactions contemplated hereby.

7.4    Compliance with Laws.  Notwithstanding anything contained in this Agreement to the contrary, the obligations of the parties shall be subject to all laws, present and future, of any government having jurisdiction over the parties and this transaction, and to orders, regulations, directions or requests of any such government.

7.5    Further Cooperation.  Without limiting Seller's obligations under Section 5.3, at the request of Purchaser, at any time following the Closing Date, Seller shall execute and deliver such other instruments and documents and do and perform such other acts as may be reasonably necessary for the operation of the Purchased Assets by Purchaser and effecting completely the consummation of the transactions contemplated hereby, including execution, acknowledgment and recordation of other such papers, using reasonable efforts to obtain the same from the respective inventors or authors as necessary for perfecting and conveying unto Purchaser the benefit of the transactions contemplated hereby; provided that Seller shall not be obligated to pay any material consideration or incur any material costs to provide such cooperation, nor shall Seller be required to maintain its existence or any personnel.

7.6    Governing Law; Jurisdiction.   All disputes arising out of or related to this Agreement, including, without limitation, any dispute relating to the interpretation, meaning or effect of any provision hereof, will be resolved in the Bankruptcy Court and the parties hereto will

-15-

each submit to the exclusive jurisdiction of the Bankruptcy Court for the purposes of adjudicating any such dispute, to the extent the jurisdiction of the Bankruptcy Court is applicable.  If the jurisdiction of the Bankruptcy Court is not applicable, any legal action, suit or proceeding arising out of or relating to this Agreement, each and every agreement and instrument contemplated hereby or the transactions contemplated hereby and thereby shall be instituted in any Federal court of the Central District of California.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of California (i.e., without regard to its conflicts of law rules).

7.7     Entire Agreement; Interpretation.  The terms and conditions of this Agreement, including its exhibits and the Ancillary Agreements, constitute the entire agreement between the parties with respect to the subject matter hereof, and supersede all prior and contemporaneous agreements, understandings, negotiations and discussions.  None of the parties shall be bound by any conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof other than as expressly provided herein.  The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.  No oral explanation or oral information by either party hereto shall alter the meaning or interpretation of this Agreement.  The terms "includes" and "including" are not limiting.  These terms and conditions will prevail notwithstanding any different, conflicting or additional terms and conditions which may appear on any purchase order, acknowledgment or other writing not expressly incorporated into this Agreement.  Unless a contrary intention appears, (i) the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Article, Section or other subdivision, and (ii) reference to any Article or Section means such Article or Section hereof.  Any accounting terms used in this Agreement shall, unless otherwise defined in this Agreement, have the meaning ascribed thereto by GAAP.

7.8     Notices:  All notices required or permitted to be given hereunder shall be in writing, shall make reference to this Agreement, and shall be delivered (i) by hand, (ii) dispatched by prepaid air courier or by registered or certified airmail, postage prepaid, or (iii) sent via electronic mail (with a copy dispatched by prepaid air courier for delivery on the next business day), in each case, addressed as follows:

0061

If to Purchaser

[_____]
[_____]
[_____]
Attn: [_____]
Phone: [_____]
Email: [_____]

with a copy (which shall not
constitute notice) to:

[_____]
[_____]
[_____]
Attn: [_____]
Phone: [_____]
Email: [_____]

If to Seller

[_____]
[_____]
[_____]
Attn: [_____]
Phone: [_____]
Email: [_____]

with a copy (which shall not
constitute notice) to:

[_____]
[_____]
[_____]
Attn: [_____]
Phone: [_____]
Email: [_____]

Such notices shall be deemed served when received by addressee or, if delivery is not accomplished by reason of some fault of the addressee, when tendered for delivery. Either party may give written notice of a change of address and, after notice of such change has been received, any notice or request shall thereafter be given to such party at such changed address.

**7.9** <u>Counterparts; Facsimile and Email Transmission</u>. This Agreement may be executed in one or more counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement, and any such executed counterpart may be delivered by transmission of the manually signed document by facsimile transmission or in "pdf" form delivered by electronic mail, and such facsimile or "pdf" representation of such manual signature shall constitute execution thereof.

**7.10** <u>No Ongoing Obligations</u>. Purchaser shall not have any obligations solely by virtue of the provisions of this Agreement to support, maintain or otherwise continue the business operations of Seller or to otherwise market, promote or develop the Purchased Assets after the Closing Date.

**7.11** <u>Survival of Representations and Warranties</u>. All of the representations and warranties of Purchaser contained in this Agreement shall survive the Closing Date and the consummation of the transactions contemplated hereby. All of the representations and warranties of Seller contained in this Agreement shall survive until the Closing Date and terminate upon the closing of the transactions contemplated hereby.

**7.12** <u>Amendment</u>. This Agreement may not be amended or modified except by an instrument in writing signed by, or on behalf of, Seller and Purchaser.

**7.13** <u>Indemnification Obligations</u>. After the Closing, Purchaser shall indemnify Seller against and shall hold it harmless from any and all liabilities, losses, damages, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) that Seller may suffer or

-17-

0062

incur by reason of Seller's defense of any claim, suit or proceeding made or commenced against it arising out of obligations that were expressly assumed by Purchaser hereunder and only expressly for liabilities, claims or amounts arising or accruing after the Closing Date. Seller shall provide written notice to Purchaser of any claim or dispute as to which indemnification is requested under this Section promptly following receipt of written notice by Seller of the commencement, or threatened commencement, of any such action; provided that the failure to provide such notice will not affect any rights hereunder except to the extent Purchaser is materially prejudiced thereby. Seller, on not less than thirty (30) days' notice to Purchaser, may make settlement of such claim, litigation or other proceeding with Purchaser's consent, such consent not to be unreasonably withheld, and such settlement shall be binding on Seller and Purchaser for the purposes of this Section; provided that, if within said thirty-day period Purchaser shall, in writing, have requested Seller to contest such claim, or to defend against such litigation or other proceeding, then Purchaser shall have the right and obligation to contest such claim or to defend against such litigation or other proceeding on its own behalf and on behalf of Seller, with counsel of its own choosing, but Seller may also, in its discretion, participate in such contest or defense on its own behalf and with counsel of its own choosing.  If Purchaser shall have failed, neglected or refused to contest such claim or to defend against such litigation or other proceeding, Purchaser shall reimburse Seller for the expenses incurred by Seller in such contest or defense.  Any payment or settlement resulting from such contest or defense, together with Seller's costs thereof, shall be binding on Seller and on Purchaser for the purposes of this Section.

**7.14**   <u>No Agency</u>.  The parties hereto are independent contractors.  Except as may be provided in this Agreement, no party has any express or implied right or authority to assume or create any obligations on behalf of any other party or to bind any other party to any contract, agreement or undertaking with any third party.  Nothing in this Agreement shall be construed to create a partnership, joint venture, employment or agency relationship between Seller and Purchaser.

**7.15**   <u>Severability</u>.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, and any such provision, to the extent invalid or unenforceable, shall be replaced by a valid and enforceable provision which comes closest to the intention of the parties underlying such invalid or unenforceable provision.

**7.16**   <u>Waivers</u>.  Waiver by any party of any breach of or failure to comply with any provision of this Agreement by the other party shall not be construed as, or constitute, a continuing waiver of such provision, or a waiver of any other breach of, or failure to comply with, any other provision of this Agreement.  No waiver of any such breach or failure or of any term or condition of this Agreement shall be effective unless in a written notice signed by the waiving party and delivered, in the manner required for notices generally, to each affected party.

**7.17**   <u>Binding Effect; Third Party Beneficiaries; Assignment</u>.  This Agreement shall be binding upon, inure to the benefit of, and be enforceable by, the parties hereto and their respective successors and permitted assigns.  Except as expressly set forth herein, nothing expressed or referred to in this Agreement is intended or shall be construed to give any Person other than the parties to this Agreement, or their respective legal representatives, successors and permitted

-18-

0063

assigns, any legal or equitable right, remedy or claim under or in respect of this Agreement or any provision contained herein.  No party may assign this Agreement nor any of its rights hereunder, other than any right to payment of a liquidated sum, nor delegate any of its obligations hereunder, without the prior written consent of the other parties, except that Purchaser may assign its rights under this Agreement in whole or in part to any Affiliate or to any Person providing financing for the transaction, and to any purchaser of all or substantially all of the Purchased Assets from Purchaser.

[Remainder of Page Intentionally Left Blank]

0064

IN WITNESS WHEREOF, the parties have executed this Asset Purchase Agreement as of the date first written above:

SELLER:                                          PURCHASER:

[_____]                               [_____]

By: _____    By: _____
    Name:                                            Name:
    Title:                                           Title:

*[Signature Page to Asset Purchase Agreement]*

## EXHIBIT A

Disclosure Schedule

[To be delivered to Purchaser promptly following execution of the Agreement.]

Section 3.4 of the Disclosure Schedule

Actions

Section 3.5 of the Disclosure Schedule

Registered Intellectual Property

## EXHIBIT B

Form of Bill of Sale, Assignment and Assumption

# BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT

This **BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT** (this "*Agreement*") is entered into as of [_____], 2018, by and between [_____], a [_____] [_____] ("*Purchaser*") and **SHIEKH SHOES, LLC**, a California limited liability company ("*Seller*"). Purchaser and Seller are sometimes individually referred to in this Agreement as a "*Party*" and collectively as the "*Parties*." All capitalized terms used but not defined herein have the meanings assigned to them in the Purchase Agreement as defined below.

## W I T N E S S E T H:

**WHEREAS**, pursuant to the terms of the Asset Purchase Agreement, dated as of [_____], 2018 agreed to sell to Purchaser, and Purchaser has agreed to purchase from Seller, the Purchased Assets; and

**WHEREAS**, the Parties wish formally to acknowledge such sale, assignment and assumption.

**NOW, THEREFORE**, for good and valuable consideration paid by Purchaser to Seller, the receipt and sufficiency of which are hereby acknowledged, pursuant to the terms of the Purchase Agreement, Seller and Purchaser hereby agree as follows:

1.    Purchase and Sale of Assets.  Subject to the terms and conditions set forth in the Purchase Agreement, Seller does hereby sell, convey, assign, transfer and deliver to Purchaser all right, title and interest of Seller in and to all of the Purchased Assets, free and clear of all Interests thereon.  Notwithstanding anything to the contrary contained herein, the Excluded Assets are specifically excluded from the Purchased Assets sold, conveyed, assigned, transferred or delivered to Purchaser hereby and are retained by Seller.

2.    Conflicts with Purchase Agreement.  Each party acknowledges and agrees that neither the representations and warranties nor the rights, remedies or obligations of any party under the Purchase Agreement shall be deemed to be enlarged, modified or altered in any way by this Agreement.  In the event of any conflict or inconsistency between the terms of this Agreement and the Purchase Agreement, the terms of the Purchase Agreement shall govern and control.

3.    Entire Agreement. This Agreement and the Purchase Agreement contain the entire agreement and understanding between the Parties hereto with respect to the subject matter hereof and supersede all prior agreements and understandings, whether written or oral, relating to such subject matter in any way.

4.    Counterparts.  This Agreement may be executed in one or more counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement, and any such executed counterpart may be delivered by transmission of the manually signed document by facsimile transmission or in "pdf" form delivered by electronic mail, and such facsimile or "pdf" representation of such manual signature shall constitute execution thereof.

5.    Governing Law; Jurisdiction.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of California (i.e., without regard to its conflicts of law rules). All disputes arising out of or related to this Agreement, including, without limitation, any dispute relating to the interpretation, meaning or effect of any provision hereof, will be resolved in the Bankruptcy Court and the parties hereto will each submit to the exclusive

jurisdiction of the Bankruptcy Court for the purposes of adjudicating any such dispute, to the extent the jurisdiction of the Bankruptcy Court is applicable.  If the jurisdiction of the Bankruptcy Court is not applicable, any legal action, suit or proceeding arising out of or relating to this Agreement, each and every agreement and instrument contemplated hereby or the transactions contemplated hereby and thereby shall be instituted in any Federal court of the Southern District of New York.

6.      <u>No Modifications</u>.  No modification of this Agreement shall be binding unless in writing and signed by the Party or Parties against which it is sought to be enforced.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**[SELLER]**

By: _____
Name:
Title:

**[PURCHASER]**

By: _____
Name:
Title:

<u>EXHIBIT C</u>

Intellectual Property Assignment

# INTELLECTUAL PROPERTY ASSIGNMENT

This **INTELLECTUAL PROPERTY ASSIGNMENT** (the "*IP Assignment*"), dated as of [_____], 2018, is entered into by and among **SHIEKH SHOES, LLC**, a California limited liability company (the "*Assignor*") and [_____], a [_____] [_____] (the "*Assignee*").

## RECITALS:

**WHEREAS**, pursuant to the terms and conditions of an Asset Purchase Agreement, dated as of [_____], 2018 (the "*Asset Purchase Agreement*"), by and between the Assignor, Assignee and the other parties thereto, the Assignor wishes to sell, transfer, convey, assign and deliver to the Assignee, and the Assignee has agreed to acquire and accept, all of the Assignor's right, title and interest in and to the Intellectual Property owned by Assignor (the "*IP Assets*"), all on the terms and subject to the conditions set forth in the Asset Purchase Agreement (capitalized terms used herein but not otherwise defined herein shall have the meanings set forth in the Asset Purchase Agreement);

**WHEREAS**, the Assignee wishes to acquire, and the Assignor wishes to transfer all right, title and interest in and to the IP Assets of the Assignor;

**WHEREAS,** in connection with the Closing, Assignee and Assignor have entered into that certain Bill of Sale, Assignment and Assumption Agreement, dated as of even date herewith, (the "*Bill of Sale*") pursuant to which, among other things, the parties consummated the sale, conveyance, assignment, transfer and delivery to Assignee of the Purchased Assets including the IP Assets of the Assignor; and

**WHEREAS,** Assignor and Assignee now desire to enter into this IP Assignment for the purpose of recording the sale, conveyance, assignment, transfer and delivery to Assignee of the IP Assets of the Assignor with any applicable Governmental Entity worldwide.

**NOW, THEREFORE**, for good and valuable consideration, including the consideration set forth in the Asset Purchase Agreement and the Bill of Sale, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee hereby agree as follows:

1.    <u>Assignment</u>. Assignor hereby irrevocably sells, assigns, transfers, conveys and delivers to Assignee without any restrictions, limitations or reservations, and Assignee hereby accepts the sale, assignment, transfer, conveyance and delivery of, all of Assignor's right, title and interest in and to the IP Assets, including, without limitation:

(a)    the Trademarks listed on **Exhibit A** and all Trademark Rights associated therewith; and

(b)     the domain names and web sites (including all sub-domains and related URLs) listed on **Exhibit B**;

(c)     all rights of any kind whatsoever of Assignor accruing under any of the foregoing provided by applicable law of any jurisdiction, by international treaties and conventions and otherwise throughout the world; and

(d)     any and all rights to the IP Assets included in the Purchased Assets.

2.      Authorization. Assignor hereby authorizes and requests the Commissioner of Patents of the United States, the Commissioner of Trademarks of the United States, the Librarian of Congress of the United States and any other official of any applicable Governmental Entity worldwide and each registrar of a domain name or web site set forth in **Exhibit B**, to record all registrations and applications for registration included in such IP Assets in the name of Assignee and issue any and all registrations from any and all applications for registration included in such IP Assets to and in the name of Assignee.

3.      Further Assurances. The Assignor agrees to execute all documents necessary to perfect, register, and/or record this IP Assignment and the rights of the Assignee to the IP Assets as the Assignee reasonably deem appropriate provided, however, that the Assignee shall not be obligated to pay any material consideration or incur any material costs in connection therewith.  If the Assignor does not, within five (5) business days of presentment by the Assignee of documents necessary to register the transfer to the Assignee of the rights of the Assignor in and to the IP Assets, execute and return such documents to the Assignee, then the Assignee is hereby granted a limited power of attorney to execute such documents on behalf of the Assignor.  This power of attorney is coupled with an interest and is irrevocable.

4.      Interpretation.  This IP Assignment has been executed and delivered by the Assignor for the purpose of recording the sale, conveyance, assignment, transfer and delivery to Assignee of the IP Assets with any applicable Governmental Entity worldwide. This IP Assignment is intended to implement the provisions of the Asset Purchase Agreement and the Bill of Sale, is expressly subject to the terms and conditions thereof, and shall not be construed to enhance, extend or limit the representations and warranties, rights, obligations or remedies of any party thereunder. In the event of any conflict or inconsistency between the terms of this IP Assignment and the terms and conditions of the Asset Purchase Agreement or the Bill of Sale, the terms and conditions of the Asset Purchase Agreement or the Bill of Sale, as the case may be, shall govern.

5.      Successors and Assigns. This IP Assignment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

6.      Counterparts.  This IP Assignment may be executed in one or more counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement, and any such executed counterpart may be delivered by transmission of the manually signed document by facsimile transmission or in "pdf" form delivered by electronic mail, and such facsimile or "pdf" representation of such manual signature shall constitute execution thereof.

7.      <u>Governing Law; Jurisdiction</u>. This IP Assignment shall be governed by and construed in accordance with the internal laws of the State of New York (i.e., without regard to its conflicts of law rules).  All disputes arising out of or related to this IP Assignment, including, without limitation, any dispute relating to the interpretation, meaning or effect of any provision hereof, will be resolved in the Bankruptcy Court and the parties hereto will each submit to the exclusive jurisdiction of the Bankruptcy Court for the purposes of adjudicating any such dispute, to the extent the jurisdiction of the Bankruptcy Court is applicable.  If the jurisdiction of the Bankruptcy Court is not applicable, any legal action, suit or proceeding arising out of or relating to this IP Assignment, each and every agreement and instrument contemplated hereby or the transactions contemplated hereby and thereby shall be instituted in any Federal court of the Southern District of New York.

*[Remainder of Page Intentionally Left Blank]*

**IN WITNESS WHEREOF**, the parties hereto have caused this IP Assignment to be duly executed as of the day and year first above written.

**[SELLER]**

By: _____

Name:

Title:

STATE OF _____

COUNTY OF _____

On this __ day of _____ 2018, before me, a Notary Public in and for the State and County foresaid, personally appeared _____, known by me to be the person above named and an officer of [_____], who is duly authorized to execute this IP Assignment on behalf of [_____] and who signed and executed the foregoing instrument on behalf of [_____]

Notary Public: _____

My Commission Expires: _____

**[PURCHASER]**

By: _____

Name:

Title:

STATE OF _____

COUNTY OF _____

On this __ day of _____ 2016, before me, a Notary Public in and for the State and County foresaid, personally appeared _____, known by me to be the person above named and an officer of [_____], who is duly authorized to execute this IP Assignment on behalf of [_____] and who signed and executed the foregoing instrument on behalf of [_____].

Notary Public: _____

My Commission Expires: _____

## Exhibit A to IP Assignment

Trademarks

| Mark | Territory | Application Serial No. or Registration No. | International Classes | Date Filed | Status |
|------|-----------|---------------------------------------------|------------------------|------------|--------|
|      |           |                                             |                        |            |        |
|      |           |                                             |                        |            |        |
|      |           |                                             |                        |            |        |
|      |           |                                             |                        |            |        |
|      |           |                                             |                        |            |        |
|      |           |                                             |                        |            |        |
|      |           |                                             |                        |            |        |
|      |           |                                             |                        |            |        |
|      |           |                                             |                        |            |        |
|      |           |                                             |                        |            |        |
|      |           |                                             |                        |            |        |

**<u>Exhibit B to IP Assignment</u>**

Domain Names and Web Sites
(including all sub-domains and related URLs)

## EXHIBIT D

Sale Approval Order

**EXHIBIT B**

**Assumption and Assignment Notice**

David S. Kupetz (CA Bar No. 125062)
  *dkupetz@sulmeyerlaw.com*
Asa S. Hami (CA Bar No. 210728)
  *ahami@sulmeyerlaw.com*
Claire K. Wu (CA Bar No. 295966)
  *ckwu@sulmeyerlaw.com*
SulmeyerKupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California  90071-1406
Telephone: 213.626.2311

Attorneys for Debtor and Debtor in Possession
Shiekh Shoes, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

In re

SHIEKH SHOES, LLC
a California limited liability company,

　　　　Debtor.

Case No. 2:17-bk-24626-VZ

Chapter 11

**NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (II) CURE AMOUNTS**

**You are receiving this notice because you may be a counterparty to a contract or lease with Shiekh Shoes, LLC.  Please read this notice carefully as your rights may be affected by the transactions described herein.**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

　　　　1.　　On January 18, 2018, Shiekh Shoes, LLC, (the "Debtor") filed a motion seeking approval of bidding procedures for the sale of certain of the Debtor's assets (the "Assets") and approval of the sale of the Debtor's Assets (the "Bidding and Sale Motion") to the highest or best qualified bidder (the "Successful Bidder").  The Debtor has requested that the Court schedule the hearing to approve the sale of the Assets (the "Sale Hearing") for March 1, 2018 in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court").  The Bankruptcy Court will consider the sale of the Assets to the Successful Bidder or Next

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    Best Bidder and the assumption and assignment of executory contracts and unexpired leases at the
2    Sale Hearing.

3           2.       Pursuant to the Bidding and Sale Motion, the Debtor may potentially assume
and assign to the Successful Bidder or Next Best Bidder one or more of those executory contracts
4    and unexpired leases listed on **Exhibit A** annexed hereto (collectively, the "Potentially Assigned
5    Agreements" and each, a "Potentially Assigned Agreement"), pursuant to section 365 of the
Bankruptcy Code.

6           3.       The Debtor has indicated on **Exhibit A** annexed hereto the cure amounts that
7    the Debtor believes must be paid to cure all pre-petition defaults and pay all amounts accrued, under
the Potentially Assigned Agreements (in each instance, the "Cure Amount").

8           4.       Any party seeking to (i) object to the validity of the Cure Amount as
9    determined by the Debtor or otherwise assert that any other amounts, defaults, conditions or
pecuniary losses must be cured or satisfied under any of the Potentially Assigned Agreements in
10    order for such contract or lease to be assumed and assigned or (ii) object to the assumption and
assignment of any Potentially Assigned Agreements on any other basis (except for objections based
11    on adequate assurance of future performance), must file an objection (the "Assumption/Assignment
Objection") that (a) is in writing, (b) sets forth the specific monetary amount the objector asserts
12    to be due, and the specific types of the alleged defaults, pecuniary losses, accrued amounts and
13    conditions to assignment and the support therefor, (c) is filed with the Clerk of the Bankruptcy
Court and (d) is served so as to be actually received by (1) Debtor; (2) Debtor's counsel; (3) counsel
14    to the Committee; (4) counsel to any postpetition lender; and (5) counsel to Comvest (collectively,
the "Notice Parties"), by February 18, 2018 at 4:00 p.m. (prevailing Pacific Time) (the
15    "Assumption/Assignment Objection Deadline").

16           5.       The Debtor shall file a notice identifying the Successful Bidder and Next Best
17    Bidder with the Bankruptcy Court and serve such notice upon parties in interest that request a copy
of such notice in writing from Debtor's counsel and the deadline for objecting to the assignment of
18    the Potentially Assigned Agreements to such Successful Bidder or Next Best Bidder on the basis of
adequate assurance of future performance shall be the commencement of the Sale Hearing. In
19    addition, within 48 hours of the Auction, the Debtor shall provide financial information to
20    demonstrate that any Successful Bidder or Next-Highest Bidder, as applicable, can provide adequate
assurance of future performance under section 365 of the Bankruptcy Code to those counterparties
21    who have (i) submitted a written request (which may be by email to Debtor's counsel) for such
information and (ii) confirmed in writing (by e-mail is acceptable) their agreement to keep such
22    information strictly confidential and use  it solely for the purpose of evaluating whether the bidder
has provided adequate assurance of future performance under the counterparty's contract or lease;
23    provided, however, that the Successful Bidder or Next-Highest Bidder, as applicable, may require
24    the counterparties to execute confidentiality agreements prior to the remittance of any confidential,
non-public information.

25           6.       Unless an Assumption/Assignment Objection is filed and served before the
26    Assumption/Assignment Objection Deadline, all parties shall (i) be forever barred from objecting
to the Cure Amount and from asserting any additional cure or other amounts with respect to the
27    Potentially Assigned Agreements, and the Debtor and the Successful Bidder or Next Best Bidder
28    shall be entitled to rely solely upon the Cure Amount; (ii) be deemed to have consented to the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

assumption and assignment; and (iii) be forever barred and estopped from asserting or claiming against the Debtor or the Successful Bidder or Next Best Bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Potentially Assigned Agreements or that there is any objection or defense to the assumption and assignment of such Potentially Assigned Agreements (other than with respect to adequate assurance of future performance).

7.    Any hearings with respect to the Assumption/Assignment Objections may be held (i) at the Sale Hearing, or (ii) at such other date as the Bankruptcy Court may designate upon motion by the Successful Bidder and the Debtor.  Where a nondebtor counterparty to a Potentially Assigned Agreement files an objection asserting a cure amount higher than the proposed Cure Amount, (the "Disputed Cure Amount"), then (i) to the extent that the parties are able to consensually resolve the Disputed Cure Amount prior to the Sale Hearing, the Debtor shall promptly provide the Notice Parties and the other parties in interest notice and opportunity to object to such proposed resolution, or (ii) to the extent the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then the amount to be paid under section 365 of the Bankruptcy Code with respect to such Disputed Cure Amount will be determined at the Sale Hearing or at such other date and time as may be fixed by the Bankruptcy Court.  All other objections to the proposed assumption and assignment of a Potentially Assigned Agreement will be heard at the Sale Hearing.

8.    The Debtor's decision to assume and assign the Potentially Assigned Agreements is subject to Bankruptcy Court approval and consummation of the sale of the Assets. Accordingly, the Debtor shall be deemed to have assumed and assigned each of the Assigned Agreements as of the date of, and effective only upon, the closing of the sale of the Assets, and absent such closing, each of the Potentially Assigned Agreements shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code.

**Inclusion of any document on the list of Potentially Assigned Agreements shall not constitute or be deemed to be a determination or admission by the Debtor or the Successful Bidder that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are being expressly reserved.**

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# EXHIBIT A

## LEASES

| Landlord Name / Address | Address of Subject Property | Cure Amount |
| --- | --- | --- |

## EXECUTORY CONTRACTS

| Counterparty Name / Address | Description of Contract | Cure Amount |
| --- | --- | --- |

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

CKW\ 2618338.3

0083

# EXHIBIT C

## Auction and Hearing Notice

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

CKW\ 2618338.3

0084

David S. Kupetz (CA Bar No. 125062)
  *dkupetz@sulmeyerlaw.com*
Asa S. Hami (CA Bar No. 210728)
  *ahami@sulmeyerlaw.com*
Claire K. Wu (CA Bar No. 295966)
  *ckwu@sulmeyerlaw.com*
SulmeyerKupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California  90071-1406
Telephone: 213.626.2311

Attorneys for Debtor and Debtor in Possession
Shiekh Shoes, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:17-bk-24626-VZ |
| SHIEKH SHOES, LLC<br>a California limited liability company, | Chapter 11 |
| Debtor. | **NOTICE OF AUCTION AND SALE HEARING** |

**NOTICE OF AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

      1.      Commencing on November 29, 2017, Shiekh Shoes, LLC, (the "<u>Debtor</u>"),

filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code (the

"<u>Bankruptcy Code</u>").

CKW\ 2618338.3

0085

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

2.     On January 18, 2018, the Debtor filed a motion (the "<u>Bidding Procedures and Sale Motion</u>"), pursuant to sections 363 and 365 of the Bankruptcy Code, and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>"), seeking entry of an order (the "<u>Bidding Procedures Order</u>") (a) scheduling an auction (the "<u>Auction</u>") for the sale of certain of the Debtor's assets (the "<u>Assets</u>") for February 23, 2018 and a hearing to approve the sale of the Assets (the "<u>Sale Hearing</u>") for March 1, 2018; (b) approving procedures (the "<u>Bidding Procedures</u>") for submitting competing bids for the Assets or alternative proposals; (c) approving the form and manner of the notice of the Auction and the Sale Hearing; and (d) approving procedures for the assumption, assignment and sale of the Assumed and Assigned Agreements (as defined in the Bidding Procedures Order) to any purchaser(s) of the Assets, and/or to resolve any objections thereto.

3.     On _____, 2018, the United States Bankruptcy Court for the Central District of California entered the Bidding Procedures Order.  Pursuant to the Bidding Procedures Order, if two or more Qualified Bids (as defined in the Bidding Procedures Order) in respect of overlapping Assets are received by the Bid Deadline, the Debtor will conduct the Auction. The Auction will take place at the offices of SulmeyerKupetz, at 10:00 a.m. (prevailing Pacific Time) on February 23, 2018.  Only parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, by no later than February 20, 2018 at 4:00 p.m. (prevailing Pacific Time) (the "<u>Bid Deadline</u>") may bid at the Auction.  Any party that wishes to take part in this process and submit a bid for any portion of the Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

4.     The Sale Hearing to consider approval of the sale of the Assets to the Successful Bidder(s) at the Auction, free and clear of all liens, claims and encumbrances, will be held before the Honorable Vincent Zurzolo, United States Bankruptcy Judge, Courtroom 1368, 255 E. Temple Street, Los Angeles, CA 90012 on March 1, 2018 at _____ a.m./p.m. (prevailing Pacific

1    Time), or at such other time thereafter as counsel may be heard.  The Sale Hearing may be adjourned

2    from time to time without further notice to creditors or parties in interest other than by announcement

3    of the adjournment in open court on the date scheduled for the Sale Hearing.

4    　　　　　5.    Objections, if any, to the sale, must: (a) be in writing; (b) comply with the

5    Bankruptcy Rules and Local Rules; and (c) be filed with the Bankruptcy Court for the Central

6    District of California, on or before February 18, 2018 (prevailing Pacific Time); and be served

7    upon (a) Debtor's counsel; (b) the U.S. Trustee; (c) the Debtor's secured lenders; and (d) counsel to

8    the Committee, **so as to be received no later than such date.**  UNLESS AN OBJECTION IS

9    TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE

10   CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY

11   GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.

12   　　　　　6.    This Notice of Auction and Sale Hearing is subject to the complete terms

13   and conditions of the Bidding Procedures and Sale Motion and the Bidding Procedures Order, with

14   such Bidding Procedures Order controlling in the event of any conflict, and the Debtor encourages

15   parties-in-interest to review such documents in their entirety.  Parties interested in receiving more

16   information regarding the sale of the Assets and/or copies of any related document, the Bidding

17   Procedures and Sale Motion, or the Bidding Procedures Order, may make a request to:

18   _____.

19   DATED:  January ____, 2018          **Sulmeyer**Kupetz

20                                      A Professional Corporation

21

22

23   　　　　　　　　　　　　　　　　　　By: _____

24                                         Asa S. Hami
                                          Attorneys for Debtor and Debtor in Possession
25                                        Shiekh Shoes, LLC

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## **EXHIBIT D**

**Form of Sale Order**

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1
2
3
4
5
6
7
8

David S. Kupetz (CA Bar No. 125062)
  *dkupetz@sulmeyerlaw.com*
Asa S. Hami (CA Bar No. 210728)
  *ahami@sulmeyerlaw.com*
Claire K. Wu (CA Bar No. 295966)
  *ckwu@sulmeyerlaw.com*
SulmeyerKupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California 90071-1406
Telephone: 213.626.2311

Attorneys for Debtor and Debtor in Possession
Shiekh Shoes, LLC

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

9
10
11
12

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| In re | Case No. 2:17-bk-24626-VZ |
|---|---|
| SHIEKH SHOES, LLC<br>a California limited liability company,<br><br>    Debtor. | Chapter 11<br><br>**ORDER ON DEBTOR'S MOTION (I) APPROVING THE SALE OF ASSETS; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**<br><br>Date:       March 1, 2018<br>Time:      [TBD]<br>Place:     Courtroom 1368 |

13
14
15
16
17
18
19
20
21
22
23
24
25
26

Upon the motion [Dkt. No. ___]  (the "**Sale Motion**")[1] of Shiekh Shoes, LLC (the "**Debtor**"), for, *inter alia*, entry of an order, pursuant to sections 105, 363, 365, 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), (i) approving the sale by the Debtor

27
28

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion or the Agreement (defined below) as applicable.

CKW\ 2618338.3

0089

1  of certain assets (the "**Purchased Assets**") free and clear of all Interests (defined below) to

2  [_____] ("Buyer") (except those expressly assumed by the Buyer) pursuant to an

3  asset purchase agreement (the "**Agreement**"), and (ii) authorizing the assumption by the Debtor

4  and assignment to the Buyer of certain executory contracts free and clear of all Interests (except

5  those expressly assumed by the Buyer), and (iii) granting certain related relief; and the Court

6  having held a hearing on March 1, 2018 (the "**Sale Hearing**") to approve the Sale Motion; and the

7  Court having reviewed and considered (a) the Sale Motion, (b) the objections to the Sale Motion,

8  if any, and (c) the arguments of counsel made, and the evidence proffered or adduced at the Sale

9  Hearing; and it appearing that the relief requested in the Sale Motion is in the best interests of the

10  Debtor, its estate and creditors and other parties in interest; and upon the record of the Sale

11  Hearing and after due deliberation thereon; and good cause appearing therefore,

12  　　　　　IT IS HEREBY FOUND AND DETERMINED THAT:

13  　　　　　A.　　This Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C.

14  §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core

15  proceeding under 28 U.S.C. §157(b)(2)(A), (M), (N) and (O). The statutory predicates for the

16  relief requested in this Sale Motion are Sections 105, 363, 365, 503 and 507 of the Bankruptcy

17  Code.

18  　　　　　B.　　The findings and conclusions set forth herein constitute the Court's findings

19  of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

20  proceeding pursuant to Bankruptcy Rule 9014.

21  　　　　　C.　　Proper, timely, adequate and sufficient notice of the Sale Motion, the hearing

22  on the Sale Motion and the Debtor's assumption and assignment of the contracts listed on Exhibit

23  "B" hereto (the "**Assigned Contracts**") to the Buyer has been provided in accordance with

24  sections 102(1), 363, 365, 503 and 507 of the Bankruptcy Code and Federal Rules of Bankruptcy

25  Procedure (the "**Bankruptcy Rules**") 2002, 6004, 6006, 9008 and 9014 and the order of this Court

26  dated _____, 2018 (the "**Bidding Procedures Order**"), and no other or further notice of

27  the Sale Motion, the hearing on the Sale Motion, or of the entry of this Order is required.

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    D.    A reasonable opportunity to object or be heard regarding the relief

2 requested in the Sale Motion has been afforded to all interested persons and entities, including:

3 [_____].

4    E.    The Debtor also caused notice of the Sale Motion to be published in the

5 national edition of the Los Angeles Times, which notice by publication is reasonable and

6 sufficient to bind holders of claims against the Debtor whose identity was not known to the Debtor

7 as of the date notice of the Sale Motion was provided pursuant to the Bidding Procedures Order to

8 the terms of this Order.

9    F.    The Debtor has full corporate power and authority to execute the

10 Agreement and all other documents contemplated thereby and consummate the transactions

11 contemplated therein and the sale of the Purchased Assets and assumption and assignment to the

12 Buyer of the Assigned Contracts (defined below) (collectively, the "**Sale**") has been duly and

13 validly authorized by all necessary corporate action of the Debtor and no consents or approvals,

14 other than the approval of this Court, are required for the Debtor to consummate such transactions.

15    G.    The Buyer is not a successor to or mere continuation of the Debtor or its

16 estate.

17    H.    The bidding procedures established pursuant to the Bidding Procedures

18 Order afforded a full, fair and reasonable opportunity for any entity to make a higher or better

19 offer to purchase the Purchased Assets and Assigned Contracts and no higher or better offer has

20 been made.

21    I.    The Debtor has demonstrated that it is an exercise of its sound business

22 judgment to assume and assign the Assigned Contracts and sell the Purchased Assets to the Buyer

23 in connection with the consummation of the Agreement, and that approval of the Agreement and

24 the Sale pursuant thereto is in the best interests of the Debtor, its estate, and its creditors.

25    J.    The Sale must be completed immediately in order to preserve the Debtor's

26 going concern value and, as a result, good and sufficient business justification exists for the

27 immediate sale of the Purchased Assets and assumption and assignment of the Assigned Contracts

28

1   to the Buyer outside of a plan of reorganization.

2       K.      The Buyer is not an insider, as that term is defined in the Bankruptcy Code,

3   of the Debtor.  Furthermore, no insiders of the Debtor are receiving or retaining any benefit,

4   property or payments in connection with the Sale except to the extent (i) such insiders have

5   allowed claims against or equity interests in the Debtor and, as a result, may participate in a

6   distribution of Sale proceeds, (ii) such insiders are to be employed by the Buyer following closing,

7   as disclosed on the record at the hearing on the Sale Motion, or (iii) otherwise disclosed on the

8   record at the hearing on the Sale Motion.

9       L.      The Agreement was negotiated, proposed and entered into by the Debtor

10  and Buyer without collusion, in good faith, and as a result of arm's-length bargaining.  The Buyer

11  is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to

12  the protections afforded thereby.  Neither the Debtor nor the Buyer have engaged in any conduct

13  that would cause or permit the Agreement to be avoided under section 363(n) of the Bankruptcy

14  Code.

15      M.      In the absence of a stay pending appeal, the Buyer will be acting in good

16  faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions

17  contemplated by the Agreement at any time after the entry of this Order, provided the Buyer shall

18  not be obligated to close until all applicable conditions to closing under such Agreement have

19  been satisfied or waived as provided in such Agreement.

20      N.      The consideration provided by the Buyer for the Purchased Assets being

21  purchased, including the Assigned Contracts, pursuant to the Agreement, constitutes the best and

22  highest offer for the Purchased Assets and the Assigned Contracts and reasonably equivalent value

23  and fair consideration under the Bankruptcy Code and under the laws of the United States, any

24  state, territory, possession thereof, and the District of Columbia.

25      O.      The Debtor may sell the Purchased Assets and Assigned Contracts free and

26  clear of all Interests (including, without limitation, (i) that purport to give to any party a right or

27  option to effect any forfeiture, modification or termination of the Debtor's or the Buyer's interest

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  in the Purchased Assets and/or Assigned Contracts and, (ii) in respect of Taxes), because each

2  entity with an Interest in any of the Purchased Assets and/or Assigned Contracts has consented to

3  the Sale, is deemed to have consented to the Sale, has a claim which is subject to a bona fide

4  dispute, or could be compelled in a legal or equitable proceeding to accept a money satisfaction of

5  such Interest.

6          P.      The Debtor has good title to the Purchased Assets and Assigned Contracts

7  and, accordingly, the transfer of the Purchased Assets and Assigned Contracts to the Buyer

8  pursuant to the Agreement will be a legal, valid, and effective transfer of the Purchased Assets and

9  Assigned Contracts.

10          Q.      Neither the transfer of the Purchased Assets nor the assignment of the

11  Assigned Contracts pursuant to the Agreement will subject the Buyer to any liability (except those

12  expressly assumed by the Buyer pursuant to the Agreement (the "**Assumed Liabilities**")) for

13  claims against the Debtor or the Debtor's predecessors or affiliates of any kind or character,

14  whether known or unknown, now existing or hereafter occurring, whether fixed or contingent,

15  based, in whole or in part, directly or indirectly, on any theory of law, including, without

16  limitation, any theory of successor, vicarious or transferee liability.

17          R.      The Buyer has provided adequate assurance of future performance under the

18  Assigned Contracts, as required by Section 365(b)(1)(C) of the Bankruptcy Code.

19          S.      Upon the assumption and assignment of the Assigned Contracts, as

20  provided herein, the Buyer shall succeed to all of the right, title and interest of the Debtor under

21  the Assigned Contracts including, without limitation, the right to exercise renewal options which,

22  pursuant to the terms of the applicable Assigned Contract, are not exercisable by assignees of the

23  Debtor, the Court having found that such provisions constitute unenforceable restrictions on

24  assignment pursuant to Section 365(f)(3) of the Bankruptcy Code.

25          NOW, THEREFORE, IT IS HEREBY ADJUDGED, ORDERED, AND

26  DECREED THAT:

27          1.      The Sale Motion, and the relief sought therein (including approval of the

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

0093

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    Sale) is GRANTED, in all respects.

2    2.    All objections to the Sale Motion or the relief requested therein that have

3    not been withdrawn with prejudice, waived, or settled, and all reservations of rights included

4    therein, are overruled on the merits.

5    3.    The Agreement, and all of the terms and conditions thereof, is hereby

6    approved.

7    4.    Pursuant to Sections 105(a), 363(b) and 365 of the Bankruptcy Code, the

8    Debtor is authorized and directed to take all actions necessary to consummate the Sale pursuant to

9    and in accordance with the terms and conditions of the Agreement.

10    5.    As of the date of closing under the Agreement (the "**Closing Date**"), the

11    Assigned Contracts shall be deemed to have been assumed by the applicable Debtor and assigned

12    to the Buyer pursuant to Section 365(f) of the Bankruptcy Code.  Pursuant to section 365(k) of the

13    Bankruptcy Code, the Debtor and the Debtor's estate shall be relieved from any liability for any

14    breach of an Assigned Contract occurring after the effective date of the Closing Date.

15    6.    On the Closing Date, from the Purchase Price, the Buyer shall (i) pay to the

16    non-debtor party to each Assigned Contract as to which a liquidated cure amount (the

17    "**Liquidated Cure Amount**") is stated on Exhibit "B," the amount of such Liquidated Cure

18    Amount, and (ii) pay to an escrow agent an amount equal to the maximum cure amounts (the

19    "**Maximum Unliquidated Cure Amounts**") claimed by the non-debtor party to each other

20    Assigned Contract, as such Maximum Unliquidated Cure Amounts are stated on Exhibit "B."  For

21    the avoidance of doubt, the Maximum Unliquidated Cure Amounts stated on Exhibit "B" shall be

22    the maximum amount of any subsequently allowed claim to which any non-debtor party to an

23    Assigned Contract shall be entitled pursuant to Section 365(b)(1)(A) of the Bankruptcy Code.

24    The amounts paid by the Buyer to the escrow agent are hereafter referred to as the "**Disputed**

25    **Cure Amounts.**"

26    7.    Upon payment of the Liquidated Cure Amounts to the applicable non-

27    debtor parties, (i) all defaults under the related Assigned Contracts required to be cured pursuant to

28

Section 365(b)(1)(A) of the Bankruptcy Code shall be deemed cured and all amounts due to the non-debtor parties to such Assigned Contracts pursuant to Section 365(b)(1)(B) on account of any pecuniary loss resulting from such defaults shall be deemed paid in full, and (ii) each non-debtor party to such Assigned Contracts shall be forever bound by such Liquidated Cure Amounts and enjoined from seeking to terminate such Assigned Contract or enforce any other remedies under such Assigned Contract against the Buyer on account of defaults by the Debtor, including defaults as to which, pursuant to Section 365(b)(1)(A) of the Bankruptcy Code, cure is not required.

8.      Upon payment by the Buyer of the Maximum Unliquidated Cure Amounts to the Escrow Agent, the non-debtor parties to such Assigned Contracts shall be (i) limited to recourse against the Disputed Cure Amounts on account of all defaults under the related Assigned Contracts required to be cured pursuant to Section 365(b)(1)(A) of the Bankruptcy Code, and all pecuniary loss resulting from such defaults due to such non-debtor party pursuant to Section 365(b)(1)(B) of the Bankruptcy Code, and forever bound by such Maximum Unliquidated Cure Amounts, and (ii) enjoined from seeking (A) recourse against the Debtor or the Buyer on account of any defaults by the Debtor under the related Assigned Contracts required to be cured pursuant to Section 365(b)(1)(A) of the Bankruptcy Code, and/or any pecuniary loss resulting from such defaults due to such non-debtor party pursuant to Section 365(b)(1)(B) of the Bankruptcy Code, and/or (B) to terminate such Assigned Contract or enforce any other remedies under such Assigned Contract against the Buyer on account of defaults by the Debtor, including defaults as to which, pursuant to Section 365(b)(1)(A) of the Bankruptcy Code, cure is not required.

9.      Any provision in any Assigned Contract that purports to declare a breach, default or payment right as result of an assignment or a change of control in respect of the Debtor is unenforceable, and all such Assigned Contracts shall remain in full force and effect, notwithstanding any such provision.  No sections or provisions of any Assigned Contract that purports to provide for additional payments, rent accelerations, assignment fees, increases, payments, charges or any other fees charged to the Buyer or the Debtor as a result of the assumption and the assignment of the Assigned Contracts shall have any force and effect with

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  respect to the transactions contemplated by the Agreement and assignments authorized by this

2  Order, and such provisions constitute unenforceable anti-assignment provisions under Section

3  363(f) of the Bankruptcy Code.  The Buyer shall not be required, pursuant to section 365(l) of the

4  Bankruptcy Code or otherwise, to provide any additional deposit or security with respect to any

5  Assigned Contract to the extent not previously provided by the Debtor.

6          10.    Except for the Assumed Liabilities and Permitted Liens and Encumbrances,

7  pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing under the

8  Agreement, the Purchased Assets and the Assigned Contracts shall be free and clear of all (i)

9  mortgages, security interests, conditional sale or other title retention agreements, pledges, liens,

10  judgments, demands, encumbrances and claims (as that term is defined in the Bankruptcy

11  Code), (ii) rights or options to effect any forfeiture, modification, repurchase, or termination of the

12  Debtor's or Buyer's interest in the Assigned Contracts and/or Purchased Assets, regardless

13  whether such are "claims" as that term is defined in the Bankruptcy Code, (iii) claims in respect of

14  Taxes (including taxes as to which applicable returns have not yet been filed, whether or not

15  overdue), and (iv) easements, restrictions, rights of first refusal or charges of any kind or nature, if

16  any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or

17  other exercise of any attributes of ownership, regardless whether such are "claims" as that term is

18  defined in the Bankruptcy Code (collectively, items (i) to (v) above are referred to as "**Interests**"),

19  with all such Interests to attach to the Net Proceeds of Sale (defined below) in the order of its

20  respective priority, with the same validity, force and effect (if any) which it now has against the

21  Purchased Assets and Assigned Contracts, subject to any claims and defenses the Debtor may

22  possess with respect thereto.  The "**Net Proceeds of Sale**" is the Purchase Price, as adjusted

23  pursuant to the Agreement, minus amounts distributed on account of Liquidated Cure Amounts,

24  and minus the Disputed Cure Amounts (to the extent such Disputed Cure Amounts are paid to

25  counterparties to Assigned Contracts following allowance and payment of applicable cure

26  amounts).  For the avoidance of doubt, the Disputed Cure Amounts shall not be property of the

27  Debtor's estate and no Interests shall attach to the Disputed Cure Amounts unless and until such

28

1  funds are distributed to the Debtor.

2     11. All persons are hereby enjoined from asserting, prosecuting or otherwise

3  pursuing any claim against the Buyer to recover on any claims (regardless of when accrued and

4  regardless whether meeting the definition of "claim" under the Bankruptcy Code) such person had,

5  has or may have (other than an Assumed Liability) against (x) the Debtor, its estate, officers,

6  directors, shareholders, the Purchased Assets or the Assigned Contracts, or (y) the Buyer in

7  connection with the negotiation of, and any agreements contained in, related to or conditioned

8  upon, the Agreement.

9     12. As of the Closing Date, each of the Debtor's creditors is authorized and

10  directed to execute such documents and take all other actions as may be necessary to release its

11  Interests in or claims against the Purchased Assets and Assigned Contracts, if any, as such

12  Interests or claims may have been recorded or may otherwise exist.

13     13. Each and every federal, state and local governmental agency or department

14  shall, and hereby is, directed to accept (i) this Sale Order as sufficient evidence of the transfers of

15  all right, title, and interest in, to, and under the Purchased Assets and the Assigned Contracts, and

16  are authorized to rely on this Sale Order in consummating, or facilitating the consummation of, the

17  transactions contemplated by the Asset Purchase Agreement, and (ii) any and all documents and

18  instruments necessary and appropriate to consummate the transactions contemplated by the

19  Agreement.

20     14. Upon the occurrence of the Closing, all Interests in, against, or upon the

21  Purchased Assets or the Assigned Contracts shall be unconditionally released, terminated, and

22  discharged (but solely as to the Buyer, the Purchased Assets and the Assigned Contracts), without

23  the need for any further action.  Notwithstanding the foregoing, at the Closing, or as soon as

24  practicable thereafter, (x) the Debtor and the Buyer are hereby authorized to execute and file such

25  termination statements, instruments of satisfaction, releases, or other documents to reflect the

26  unconditional release, termination, and discharge of such Interests on behalf of such person or

27  entity with respect to the Purchased Assets and the Assigned Contracts, and (y) the Buyer is

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

0097

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  hereby authorized on behalf of each holder of a purported Interest to file, register, or otherwise

2  record a copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall

3  constitute conclusive evidence of the unconditional release, termination, and discharge of all

4  Interests in, against, or upon the Purchased Assets or the Assigned Contracts.  The provisions of

5  this Order authorizing the sale of the Purchased Assets free and clear of all Interests are self-

6  executing and, notwithstanding the failure of the Debtor, the Buyer or any other party to execute,

7  file or obtain termination statements, instruments of satisfaction, releases, or other documents to

8  reflect the release, termination, and discharge of any such Interests, all such Interests shall be

9  deemed divested immediately upon Closing.

10        15.    All entities that are presently, or on the Closing Date may be, in possession

11  of some or all of the Purchased Assets are hereby directed to surrender possession of the

12  Purchased Assets to the Buyer on the Closing Date.

13        16.    As of the Closing Date, all agreements of any kind whatsoever and all

14  orders of this Court entered prior to the date hereof shall be deemed amended and/or modified to

15  the extent required to permit the consummation of the transactions contemplated by the

16  Agreement.

17        17.    To the extent provided by section 525 of the Bankruptcy Code, no

18  governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar

19  grant relating to the operation of the Purchased Assets or the Assigned Contracts on account of the

20  filing or pendency of this Bankruptcy Case or the consummation of the Sale.

21        18.    To the greatest extent available under applicable law, the Buyer shall be

22  authorized, as of the Closing Date and upon the occurrence of Closing, to operate under any

23  transferred license, permit, registration and governmental authorization or approval of the Debtor

24  with respect to the Purchased Assets, and all such licenses, permits, registrations and

25  governmental authorizations and approvals are deemed to have been, and hereby are, directed to

26  be transferred to the Buyer as of the Closing Date.

27        19.    No law of any state or other jurisdiction relating to bulk sales or similar

28

1  laws shall apply in any way to the transaction contemplated by the Agreement, the Sale Motion,

2  and this Order.

3       20.    For the avoidance of doubt, any privileges, protections or immunities of the

4  Debtor for communications, documents, materials or matters arising at any time, whether before or

5  after the Petition Date, including but not limited to any attorney-client privilege, work product

6  doctrine, common interest or joint defense privilege, relating to any matter whatsoever, including

7  without limitation any matter relating to the negotiation and implementation of the Agreement and

8  any of the transactions contemplated thereby or entered into in connection therewith (collectively,

9  "**Privilege**") shall not be Purchased Assets under the Agreement, and any such Privilege is owned

10  and will continue to be owned by the Debtor, and notwithstanding anything to the contrary herein

11  or in the Agreement, the Buyer shall have no interest in or rights with respect to the Privilege,

12  whether pursuant to this Order, the Agreement, or otherwise.  The Privilege shall remain within

13  the sole control of the Debtor and may not be waived by any other person or entity.

14       21.    The Agreement, as well as other agreements related thereto, may be

15  modified, amended, or supplemented by the Debtor and the Buyer without further order of the

16  Court, provided that any such modification, amendment, or supplement either is (a) not material or

17  (b) not less favorable to the Debtor than the existing applicable provisions.

18       22.    The Debtor is hereby authorized and empowered, upon and in connection

19  with the Closing, to change its corporate name and the caption of this chapter 11 case, consistent

20  with applicable law.  The Debtor shall file a notice of change of case caption, containing the new

21  caption and the new corporate name of the Debtor, within ten (10) business days of any change to

22  its corporate name, and the change of case caption for this chapter 11 case shall be deemed

23  effective as of the date of the Debtor's change of its corporate name.

24       23.    This Court shall retain jurisdiction (a) to enforce and implement the terms

25  and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder

26  and each of the agreements executed in connection therewith, (b) to compel delivery of the

27  Purchased Assets and Assigned Contracts to the Buyer, (c) to resolve any disputes arising under or

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    related to the Agreement, except as otherwise provided therein, and (d) to interpret, implement and

2    enforce the provisions of this Order.

3        24.    Nothing contained in any plan confirmed in this case or the order

4    confirming any plan shall conflict with or derogate from the provisions of the Agreement or the

5    terms of this Order.  Further, the provisions of this Order and any actions taken pursuant hereto

6    shall survive the entry of any order which may be entered confirming any plan or converting the

7    Debtor's case from chapter 11 to a case under chapter 7 of the Bankruptcy Code.

8        25.    The terms and provisions of the Agreement, together with the terms and

9    provisions of this Order, shall be binding in all respects upon, and shall inure to the benefit of, the

10    Debtor, its estate, its creditors, the Buyer and its affiliates, successors and assigns, and any

11    affected third parties including, but not limited to, all persons asserting a claim against or Interest

12    in the Debtor's estate or any of the Assigned Contracts and the Purchased Assets and any trustee

13    appointed for the Debtor under any chapter of the Bankruptcy Code.

14        26.    The Agreement and any related agreements, documents or other instruments

15    may be modified, amended or supplemented by the parties thereto, in a writing signed by both

16    parties, and in accordance with the terms thereof without further order of the Court, provided that

17    any such modification, amendment or supplement is not material.

18        27.    The failure specifically to include any particular provision of the Agreement

19    in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of

20    the Court that the Agreement be authorized and approved in its entirety.

21        28.    The Buyer is a party in interest and shall have standing to appear and be

22    heard on all issues related to or otherwise connected with this Order, the Sale or the Agreement.

23        29.    Notwithstanding the provisions of Fed. R. Bankr. P. 6004 (h), 6006(d),

24    and 7062, this Order shall be effective and enforceable immediately upon entry.

25        Dated: _____

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

CKW\ 2618338.3

0100

**EXHIBIT "A"**

**ASSET PURCHASE AGREEMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

CKW\ 2618338.3

0101

**EXHIBIT "B"**

| CONTRACT DESCRIPTION | LIQUIDATED CURE AMOUNT | MAXIMUM UNLIQUIDATED CURE AMOUNT (IF APPLICABLE) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CKW\ 2618338.3

0102